UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEEP SOUTH TODAY, *d/b/a* VERITE NEWS, GANNETT CO., INC., GRAY LOCAL MEDIA, INC., NEXSTAR MEDIA, INC., SCRIPPS MEDIA INC., and TEGNA INC.<br><br>*Plaintiffs*,<br><br>v.<br><br>LIZ MURRILL, *in her official capacity as Attorney General of Louisiana*, ROBERT P. HODGES, *in his official capacity as Superintendent of the Louisiana State Police*, and HILLAR C. MOORE, III, *in his official capacity as District Attorney of East Baton Rouge Parish*,<br><br>*Defendants*. | CASE NO. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. "[T]he press serves and was designed to serve as a powerful antidote to any abuses of power by governmental officials[,] and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve." *Mills v. Alabama*, 384 U.S. 214, 219 (1966).

2. That role is of particular importance in the context of law enforcement, where journalists "guard[] against the miscarriage of justice by

subjecting the police"—and the important public powers they exercise—"to extensive public scrutiny." *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).

3. On May 24, 2024, Louisiana enacted a law that abridges that critical function of the press: HB 173, Act 259 of the 2024 Regular Session ("the Act").

4. In relevant part, the Act makes it a criminal offense to "knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. Rev. Stat. § 14:109 (A).

5. The Act goes into effect on August 1, 2024, *see* La. Const. art. III, § 19, and will be codified at La. Rev. Stat. § 14:109.

6. The Act has grave implications for the ability of reporters and news organizations, including Plaintiffs, to exercise their First Amendment rights.

7. The Act grants law enforcement officers limitless, standardless discretion to prevent journalists from approaching near enough to document the way officers perform their duties in public places. In other words, it provides for unconstitutional "government by the moment-to-moment opinions of a policeman on his beat." *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90 (1965) (quoting *Cox v. Louisiana*, 379 U.S. 536, 579 (1965) (Black, J., concurring)).

2

8. The Act authorizes law enforcement officers to bar journalists (and the public) from reporting—for any reason or no reason—on a wide range of events of public interest, including a parade, a rally, an arrest, or an accident scene.

9. The Act applies with equal force to a reporter gathering the news in a public park, standing on a sidewalk, or lawfully present at a press conference.

10. And the Act provides no exceptions for circumstances where 25 feet is too far—as it will often be— for the press or public to document newsworthy activity, including officers' own performance of their official responsibilities.

11. The breadth and importance of the reporting that will be chilled if the Act goes into effect despite those infirmities are difficult to overstate.

12. Reporters across Louisiana come into close contact with law enforcement officers on a routine basis—when covering everything from crime scenes and press conferences to Mardi Gras and Louisiana State University (LSU) football games. The Act would, in all of those scenarios and more, empower officers to force journalists and members of the public out of sight and earshot—and "[i]f police could stop criticism or filming by asking onlookers to leave," officers would be able to "effectively silence them" and "bypass the Constitution." *Jordan v. Jenkins*, 73 F.4th 1162, 1169–70 (10th Cir. 2023) (citation omitted).

13. Your Complainants are Deep South Today, d/b/a Verite News; Gannett Co., Inc.; Gray Local Media, Inc.; Nexstar Media, Inc.; Scripps Media,

3

Inc.; and TEGNA Inc.—organizations whose journalists exercise the right to gather and publish the news in Louisiana.

14. Plaintiffs bring this action to redress the constitutional harms the Act threatens to inflict on their ability to gather and report news in Louisiana.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343.

16. Venue is proper in the Middle District of Louisiana under 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

17. Deep South Today is a is a nonprofit network of local newsrooms. In Louisiana, Deep South Today operates the New Orleans-based Verite News ("Verite"). Verite employs full-time reporters who gather news on matters of public concern on a routine daily basis, including news about law enforcement gathered through the use of audiovisual recording equipment.

18. Gannett Co. Inc. ("Gannett") is the largest local newspaper company in the United States. It has more than 200 local daily brands in 43 states. In Louisiana, Gannett owns and operates through its subsidiaries the Houma *Courier*; the *Daily Comet* in Thibodaux; the Alexandria *Town Talk*; the Monroe News-Star;

4

the *Shreveport Times*; *the Daily Advertiser* in Lafayette; and *Daily World* in Opelousas.  These publications employ full-time reporters who gather news on matters of public concern on a routine daily basis, including news about law enforcement gathered through the use of audiovisual recording equipment.

19. Gray Local Media, Inc. ("Gray") is a multimedia company headquartered in Atlanta, Georgia. The company is the nation's largest owner of top-rated local television stations and digital assets serving 113 television markets that collectively reach approximately 36 percent of US television households. Gray's presence in Louisiana includes television stations KALB (Alexandria), KNOE (Monroe-El Dorado), KPLC (Lake Charles), KSLA (Shreveport), WAFB (Baton Rouge) and WVUE (New Orleans) as well as Gray's national investigative unit, InvestigateTV.  Gray employs full-time reporters who gather news on matters of public concern on a routine daily basis, including news about law enforcement gathered through the use of audiovisual recording equipment.

20. Nexstar Media Inc. ("Nexstar") is a leading diversified media company that leverages localism to bring new services and value to consumers and advertisers through its traditional media, digital, and mobile media platforms.  In Louisiana, Nexstar owns and operates WGNO and WNOL in New Orleans; KTAL, KMSS, and KSHV in Shreveport; WGMB and WVLA in Baton Rouge; KLFY in Lafayette; KARD and KTVE in Monroe; and WNTZ in Alexandria.

5

Nexstar employs full-time reporters who gather news on matters of public concern on a routine daily basis, including news about law enforcement gathered through the use of audiovisual recording equipment.

21. Scripps Media, Inc. ("Scripps") is the nation's fourth-largest local TV broadcaster, operating a portfolio of 61 stations in 41 markets. In Louisiana, Scripps owns and operates KATC in Lafayette. Scripps employs full-time reporters who gather news on matters of public concern on a routine daily basis, including news about law enforcement gathered through the use of audiovisual recording equipment.

22. TEGNA Inc. ("TEGNA") owns or services (through shared service agreements or other similar agreements) 64 television stations in 52 markets. In Louisiana, TEGNA owns and operates WWL and WUPL in New Orleans. TEGNA employs full-time reporters who gather news on matters of public concern on a routine daily basis, including news about law enforcement gathered through the use of audiovisual recording equipment.

23. Defendant Liz Murrill is the Attorney General of Louisiana. Under the Louisiana Constitution, she is "the chief legal officer of the state" and may, "upon the written request of a district attorney, . . . advise and assist in the prosecution of any criminal case." La. Const. art. IV, § 8. In February, Murrill signed a cooperative endeavor agreement with the Orleans Parish District Attorney

6

that gives the Attorney General the authority "to prosecute any and all criminal matters in Orleans Parish resulting from an arrest or investigation conducted by Louisiana State Police." Metia Caroll, *Louisiana AG Liz Murrill and Orleans DA Williams Execute Agreement to Make New Orleans Safe*, WDSU (Feb. 6, 2024), https://perma.cc/L2Y6-YEA7. Murrill is sued in her official capacity.

24. Defendant Robert P. Hodges is the Superintendent of the Louisiana State Police. The State Police, under his supervision and control, have a duty to "prevent and detect crime, apprehend criminals, enforce the criminal and traffic laws of the state, [and] keep the peace and good order in the state in the enforcement of the state's police powers." La. Rev. Stat § 40:1379(A). Among other responsibilities, the State Police accompany the Governor of Louisiana at public appearances, provide security at LSU football games, and have recently established a permanent officer presence in New Orleans. Members of the State Police are "peace officer[s]" within the meaning of the Act. La. Rev. Stat. § 14:109 (B); *id.* § 40:2402(3). Hodges is sued in his official capacity.

25. Defendant Hillar C. Moore, III is the District Attorney for East Baton Rouge Parish. Under the Louisiana Constitution, he has "charge of every criminal prosecution by the state in his district." La. Const. art. V, § 26(B). He is sued in his official capacity.

7

## **FACTUAL ALLEGATIONS**

26. Plaintiffs are organizations that gather and publish the news and represent the interests of journalists and news organizations working in Louisiana.

27. Plaintiffs' journalists and photographers routinely document the manner in which law enforcement officers perform their official duties in public places. Plaintiffs are in the business of regularly publishing newsworthy information and all employ journalists assigned to cover the activities of Louisiana law enforcement, including the Louisiana State Police, on a regular basis.

28. At each year's Carnival, for instance, journalists and members of the public from around the state cover the celebration of Mardi Gras from twelfth night to Ash Wednesday. On Lundi Gras and Mardi Gras, in addition to the weekends prior that include permitted and organized celebratory parading on Louisiana's public streets, Plaintiffs' reporters repeatedly come into close contact with officers from a range of law enforcement agencies that provide crowd control and direct traffic for the festivities. *See* Kenny Kuhn, *WWL Mardi Gras Parade Coverage from New Orleans*, WWL (Feb. 13, 2024), https://perma.cc/4W3Z-2VQL.

29. Plaintiffs' journalists likewise routinely encounter members of the State Police in Baton Rouge when covering press conferences held by the Governor, *see* Ange Toussaint, *Governor Jeff Landry Signs Education Reform Bill*, KATC (June 19, 2024), https://perma.cc/J658-655E, developments at the

8

statehouse, Michael Scheidt, *Louisiana Gov. Jeff Landry Signs Health Care Bills Into Law*, WGNO (June 25, 2024), https://bit.ly/3S9ivmF, and LSU football games where State Police provide security, Jessica Knox, *Heavy Police Presence Planned for LSU vs. Southern Game*, BRProud (Sept. 8, 2022), https://bit.ly/3LoBm9j.

30. Civil disturbances also bring Plaintiffs' reporters into close contact with peace officers. Plaintiffs reported extensively on protests and civil unrest in June 2020,[1] and more recently covered the clearing of a pro-Palestine encampment on the campus of Tulane University. *See, e.g.*, Raeven Poole, *Law Enforcement Agencies Raid Pro-Palestine Protest on Tulane University Campus*, WGNO (May 1, 2024), https://bit.ly/3XYmE0o; *see also* Michelle Liu, *After Protest Crackdown, Some Students and Faculty Criticize Tulane's Approach to Pro-Palestinian Speech*, Verite News (May 6, 2024), https://perma.cc/Z6ZB-DP82.

31. All of that coverage required close contact with members of law enforcement and often relied on videos or photographs captured within 25 feet.

32. A broad range of other assemblies, rallies, and newsworthy public events similarly bring Plaintiffs' reporters into close contact with members of

---

[1] *See, e.g.*, Emily Enfinger, *Hundreds Participate in Shreveport Black Lives Matter March*, Shreveport Times (May 31, 2020), https://perma.cc/BVK7-8TZ3; *Police in Support of Peaceful Protests Planned in St. Martinville*, KATC News (July 9, 2020), https://perma.cc/7EUC-B677; *NOPD Uses Tear Gas to Disperse Protesters After Nights of Peaceful Marches*, WWL–TV (June 3, 2020), https://perma.cc/XWJ9-8AM9; Peyton LoCicero Trist, *New Orleanians Rally for Justice*, WGNO (May 31, 2020), https://bit.ly/3zHXXLx.

9

Louisiana law enforcement on a routine basis—and will continue to do so for the foreseeable future. *See, e.g.*, Jordan Lippincott, *Preparations Underway for Super Bowl LIX in New Orleans*, WGNO (Feb. 21, 2024), https://bit.ly/3WoThlF.

33. Reporting within a 25-foot radius of law enforcement officers performing official responsibilities is likewise essential in other contexts, including at crime scenes[2] and in interviews and press conferences held by law enforcement.[3]

34. During the 2024 Regular Session, Rep. Bryan Fontenot proposed—and both houses of the Louisiana Legislature passed—legislation that will put Plaintiffs' reporters at risk of arrest in the course of their routine newsgathering.

35. On May 24, 2024, Governor Jeff Landry signed the Act into law, creating the following, new criminal offense at La. Rev. Stat. § 14:109:

> No person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat.

36. The Act goes into effect on August 1. *See* La. Const. art. III, § 19.

---

[2] *See e.g.*, Curt Sprang, *Two Dead in Mandeville Following Welfare Check Turned Police Shooting*, WGNO (July 6, 2024), https://bit.ly/4f5TcLS; Mario Villafuerte and Makenzie Boucher, *Cat Stands Guard at Shreveport Crime Scene*, Shreveport Times (Apr. 7, 2022), https://bit.ly/4cT5GFj.

[3] *See, e.g.*, Michael Scheidt and Trinity Velazquez, *Police Chief Puts More Cops on the Street After Baton Rouge Had 28 Shootings in March*, BR Proud (Mar. 25, 2024), https://perma.cc/2ELH-Y2BF; Jazmin Thibodeaux, *Black History: LPD Remembers First Two African-American Officers on the Force*, KATC (Feb. 21, 2024), https://perma.cc/UDG2-5QZC; Clarissa Sosin and Daryl Khan, *In the Dark: Investigating Baton Rouge Police Department*, Verite News (2023), https://veritenews.org/in-the-dark-series/.

37. The Act will directly burden the exercise of First Amendment rights.

38. Under existing law, Plaintiffs' reporters endeavor to avoid obstructing law enforcement officers doing their jobs, and Plaintiffs' journalists are compliant with reasonable requests by law enforcement officers to allow them to perform their important work. But law enforcement officers have also asked Plaintiffs' journalists, at times, to move unreasonably far away or have attempted to debilitate or deter non-obstructive newsgathering. In those circumstances, Plaintiffs' journalists—knowing their rights under the law—have declined to withdraw.

39. Once the Act goes into effect, whenever one of Plaintiffs' journalists is told to withdraw while standing within 25 feet of law enforcement, that reporter will be put to a choice between committing a crime or forgoing newsgathering.

40. For visual journalists, in particular, 25 feet is often too far to obtain a clear line of sight to newsworthy events, especially at crowded public events like Mardi Gras, significant festivals, and major sports games.

41. That distance also is too great to reliably capture audio recordings. *See Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 377–78 (1997) (nothing that a 15-foot buffer is beyond "normal conversational distance").

42. Without audio, video may give the public a misleading or incomplete understanding of an event. When an officer is making an arrest, for instance,

11

Plaintiffs' reporters would not be able to hear at 25 feet whether an officer identified themselves as law enforcement or provided *Miranda* warnings.

43. A 25-foot distance is likewise too great for Plaintiffs' journalists to conduct interviews and ask questions of officers or witnesses present at an event.

44. For journalists and news organizations, there is no adequate substitute for first-hand audio or visual recordings: "uniquely reliable and powerful methods of preserving and disseminating news and information about events that occur in public." *Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012).

45. Plaintiffs and their journalists also fear that complying with the Act is not practically possible under the circumstances in which reporters often work.

46. Especially at fast-moving crowd scenes, journalists cannot reliably determine whether they are within 25 feet of a particular officer. *See Schenck*, 519 U.S. at 378 n.9 (noting that it would be "quite difficult" to tell whether speaker attempting to obey 15-foot buffer zone "actually strayed to within 14 or 13 feet").

47. Reporters also cannot comply when told to withdraw when there is no way to retreat through a densely packed crowd, where there is not enough space to withdraw without trespassing on private property, or where multiple officers have issued overlapping instructions. *See Id.* at 378–79 (noting the difficulty that speakers would face in "know[ing] how to remain in compliance" with floating 15-foot buffer zones surrounding multiple individuals). But the Act provides a

defense only when an instruction cannot be heard or understood—not when it cannot physically be followed.  *See* La. Rev. Stat. § 14:109(C).

48. Plaintiffs' journalists have asked newsroom leadership for guidance on complying with the law, but editors do not know how to provide useful instructions for scenarios in which complying would be practically impossible.

49. As a result, the Act will burden and chill Plaintiffs' exercise of their First Amendment rights to document and report on matters of public concern, discouraging Plaintiffs—as well as members of the public across Louisiana—from approaching the scene of newsworthy events for fear of arrest or criminal liability.

50. The Act is unconstitutional.

51. The Act violates the First Amendment by "vest[ing] unbridled discretion in a government official over whether to permit or deny expressive activity." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755 (1988).

52. The Act authorizes officers to issue a dispersal order even if an individual's presence is not obstructive and poses no risk to any legitimate interest.

53. The Act does not require that dispersal orders be tailored to accommodate the First Amendment right to report on government activity.

54. Lawmakers made no findings to support the choice of a 25-foot buffer or the need for the Act in light of existing laws that already prohibit obstruction.[4]

55. In addition, the Act is unconstitutionally vague because it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" and "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

56. In each of those respects, because a journalist in Louisiana can "stand on a public sidewalk . . . only at the whim of any police officer of that city," the Act poses an "ever-present potential for arbitrarily suppressing First Amendment liberties," including the liberty of the press to document what public officials do with public power in public spaces. *Shuttlesworth*, 382 U.S. at 90–91.

57. Plaintiffs respectfully ask this Court to issue a declaration that the Act violates the Constitution and an injunction against its enforcement by Defendants.

## COUNT I
### Violation of the First Amendment (As Applied)

58. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of the Complaint.

---

[4] *See* La. Rev. Stat. § 14:108 (resisting an officer); La. Rev. Stat. § 14:130.1 (obstruction of justice); La. Rev. Stat. § 14:329 (interfering with a law enforcement investigation); La. Rev. Stat. § 14:329.3 (failure to comply with dispersal order).

59. Plaintiffs intend to engage in peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers performing their duties in public spaces.

60. Plaintiffs' proposed course of conduct is protected by the First Amendment. The Constitution safeguards "the right to gather news," *In re Express-News Corp.*, 695 F.2d 807, 809 (5th Cir. 1982), including by capturing images where reporters are lawfully present, *see Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 789 (5th Cir. 2024), and by "filming the police" in particular, *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017).

61. Plaintiffs' proposed course of conduct is proscribed by the Act.

62. "[A]n inhibition of press news-gathering rights must be necessitated by a compelling governmental interest, and narrowly tailored to serve that interest," *In re Express-News Corp.*, 695 F.2d at 808–09 (internal quotation marks and alteration omitted), but criminalizing peaceful, nonobstructive newsgathering advances no legitimate government interest, *see, e.g.*, *Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011) (newsgathering "that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation").

63. Because the Act's scope is untethered to any of the interests that purportedly justify it, the statute is not narrowly tailored. *See Moore v. Brown*, 868 F.3d 398, 404 (5th Cir. 2017) ("[I]f a substantial portion of the burden on speech does not advance the goals of the rule, the rule is not narrowly tailored.").

15

64. The Act's 25-foot sweep is far broader than necessary to protect any legitimate interest. *See Perkins v. Hart*, No. 22-30456, 2023 WL 8274477, at *7 (5th Cir. Nov. 30, 2023) (individual who was "clearly close" while filming did not, without more, "impede the [officers'] ability to perform their duties"); Richard A. Webster, *Video of Mother's Arrest Raises Questions About 25-Foot Buffer Law*, La. Illuminator (June 9, 2023), https://perma.cc/L4TC-YADT (noting that the prevailing plaintiff in *Perkins* was six feet from officers and that the defendants unsuccessfully proposed a 21-foot buffer); *Glik*, 655 F.3d at 80, 84 (individual filming "roughly ten feet away" is at "a comfortable remove" (citation omitted)).

65. The Act fails to leave open "alternative observation opportunities," *Reed v. Lieurance*, 863 F.3d 1196, 1212 (9th Cir. 2017), when 25 feet is too great a distance for Plaintiffs to visually observe or capture audio of newsworthy events.

66. The Act is therefore unconstitutional as applied to Plaintiffs' peaceful, nonobstructive efforts to document officers performing duties in public spaces.

## COUNT II
### Violation of the First Amendment (Facial Overbreadth)

67. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of the Complaint.

68. On its face, the Act "restricts access to traditional public fora" and authorizes officers to regulate a sweeping volume of First Amendment activity, including lawful newsgathering. *McCullen v. Coakley*, 573 U.S. 464, 476 (2014).

16

69. In its "inevitable effect," the Act is a content-based restriction on newsgathering designed to prevent members of the press and public from exercising the right to document policing and is therefore subject to strict scrutiny. *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 565 (2011) (citation omitted).

70. The Act is not narrowly tailored to a compelling government interest.

71. Whatever interest Louisiana intended to advance by enacting it, the Act contains no standards channeling officers' discretion toward that interest. Instead, the Act "vests unbridled discretion in a government official over whether to permit or deny expressive activity," *City of Lakewood*, 486 U.S. at 755, and its 25-foot sweep is far broader than necessary to accommodate any legitimate government interest.

72. Even if construed as a content-neutral time, place, or manner restriction or a law that also targets conduct, the Act would remain overbroad because it sweeps in an enormous breadth of protected speech and newsgathering.

73. Because the Act is substantially overbroad relative to any legitimate sweep that it might have, the statute violates the First Amendment on its face.

## COUNT III
### Violation of the Fourteenth Amendment (Void for Vagueness)

74. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of the Complaint.

17

75.    The Act "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" and "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago*, 527 U.S. at 56.  In both of those respects, the Act is unconstitutionally vague.

76.    Because the Act authorizes officers to order an individual to withdraw for any reason (or for no reason at all), it fails to "give adequate warning of the boundary between the permissible and the impermissible." *Id.* at 59.

77.    The Act likewise fails to provide fair notice and an opportunity to comply because reporters cannot workably determine whether they are within the 25-foot bubble in many cases, as when gathering news at a crowded public event.

78.    The Act is independently void for vagueness because the law "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

79.    The Act contains no standards of any kind to guide law enforcement officers in deciding who should be ordered to withdraw.

80.    In each respect, the Act violates the Fourteenth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request from this Court:

1)      A declaratory judgment that the Act violates the First and Fourteenth Amendments of the Constitution on its face and as applied to Plaintiffs' peaceful, nonobstructive efforts to document officers performing duties in public space;

2)      An injunction restraining Defendants from enforcing the Act;

3)      An award of attorney's fees pursuant to 42 U.S.C. § 1988;

4)      Costs of suit; and

5)      Such other and further relief as the Court may deem just and proper.

Dated:  July 31, 2024

**STERNBERG NACCARI & WHITE LLC**

By:   */s/ Scott L. Sternberg*
Scott L. Sternberg, La. Bar No. 33390
M. Suzanne Montero, La. Bar No. 21361
935 Gravier Street, Suite 2020
New Orleans, LA 70112
Phone: (504) 324-1887
Fax: (504) 534-8961
scott@snw.law | suzy@snw.law

Katie Townsend*
ktownsend@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Fax: 202.795.9310

*Attorneys for Plaintiffs Deep South Today, d/b/a Verite News, Gannett Co., Inc., Gray Local Media, Inc. Nexstar Media, Inc., Scripps Media Inc., and TEGNA Inc.*

*\* Pro hac vice application forthcoming*