UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEEP SOUTH TODAY, *d/b/a* VERITE NEWS, GANNETT CO., INC., GRAY LOCAL MEDIA, INC., NEXSTAR MEDIA, INC., SCRIPPS MEDIA INC., and TEGNA INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>LIZ MURRILL, *in her official capacity as Attorney General of Louisiana*, ROBERT P. HODGES, *in his official capacity as Superintendent of the Louisiana State Police*, and HILLAR C. MOORE, III, *in his official capacity as District Attorney of East Baton Rouge Parish*,<br><br>*Defendants*. | CASE NO. 3:24-cv-00623 |

## DECLARATION OF CURTIS SPRANG

I, Curtis Sprang, declare as follows:

1. I am over the age of 18. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction in the above-captioned matter. I have personal knowledge of the matters stated herein.

2. I am a News Anchor at WGNO in New Orleans, a broadcast television station owned by Nexstar, Inc. I have worked at WGNO for 28 years.

1

Before becoming a News Anchor at WGNO, I was a general assignment reporter and a weekend anchor.

3. I have often come into close contact with law enforcement officers while doing my job, most often at crime scenes or parades and other big events in New Orleans.

4. When reporting on law enforcement, I try to get as close as I can without causing problems so that I can pick up good-quality audio of what the officer is saying. I want to be able to hear the officer announcing himself, reading someone their rights, and asking someone questions, since that might be important information for the public later. The optimal distance depends heavily on what I am trying to record—I don't need to be five feet away to record fireworks, but if a police officer is saying something to someone on a scene, I need to be within a conversational distance. The same goes for getting an unobstructed view.

5. There are stories that I know I would not have been able to report on if I had not been within twenty-five feet of a law enforcement officer.

6. For example, I recently covered the aftermath of a police chase that ended with a police car from the Kenner Police Department in a bayou. When I arrived at the scene that evening, the car was already in the water; officers from Louisiana State Police and the New Orleans Police Department were also present. I identified myself to the officers at the scene and approached to ask what had

happened. Since there was no perimeter or tape set up, I was within a few feet of the officers.

7. I started recording and taking pictures with my phone, which I frequently use while doing my job. Because it was dark and my phone cannot zoom very effectively, I had to get close to the car to get usable images—within fifteen feet or so. We ran a story about this incident, and my photographs were published with it. *See* Curt Sprang, *Kenner Police Chase Ends With Police Car in Bayou St. John*, WGNO (July 3, 2024), https://bit.ly/3Sbo2sH.

8. At a distance of twenty-five feet, I would not have been able to speak to the responding officers or capture photos of the chase's aftermath.

9. Shootings are another context where I commonly have contact with officers. For instance in one recent incident, I went to the scene of an officer-involved shooting outside a home in Mandeville, on the north shore of Lake Pontchartrain.

10. I got there several hours after the shooting, around midnight, to take some photos and record video with my phone from the sidewalk. When I got there, a Mandeville Police officer told me that there was an area where they wanted me to stand, located on a street corner about fifty feet away from where I was. I understood him to be asking me to go to a designated media staging area, even though no other media were present at that hour.

11. When I responded that there was no tape up and that I was on the public sidewalk, the officer backed off his request that I go to the designated area.

12. Many of the officers at the scene were at times just a few feet away from me, and it was already difficult at that distance in the dark to get video that we could use. If I had been confined to the media staging area even farther away, it would have been impossible to capture the images we ultimately ran. *See* Curt Sprang, *2 Dead in Mandeville Following Welfare Check/Police Shooting*, WGNO (July 6, 2024), https://bit.ly/3SnczGz.

13. In addition to crime scenes, I find myself in close contact with law enforcement when covering parades and other big events in New Orleans.

14. In New Orleans, people sometimes get shot and killed on parade routes. Things get very chaotic very quickly when that happens, but I am very experienced at this point at covering what is happening around me while staying out of the way of law enforcement officers who are doing their jobs. It would rarely be possible, though, to see what is going on in those situations while staying at least twenty-five feet away from all of the officers on the parade route.

15. If HB 173 is allowed to go into effect, I expect to face more situations where an officer asks me to move to a place that obstructs my view— but now with the threat of arrest.

16. There's an expression I have heard often in Louisiana: "You might beat the charge, but you won't beat the ride." Even if criminal charges wouldn't stand up, or if I can't tell if a request is an order or not, I risk enduring the process of being handcuffed, transported in the back of a police car, and waiting in jail for hours. I do not want to be in that situation just for doing my job, so I would comply with an officer's request to move even though I am not interfering with or obstructing officers, even if it means that I cannot gather the news.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 13, 2024 in New Orleans, Louisiana.

Curtis Sprang

Prepared by:

Katie Townsend
Reporters Committee for Freedom of the Press
1156 15th St. NW Suite 1020
Washington, D.C. 20005