UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEEP SOUTH TODAY, *d/b/a* VERITE NEWS, GANNETT, CO., INC., GRAY MEDIA, INC., NEXSTAR MEDIA, INC., SCRIPPS MEDIA INC., and TEGNA INC.,<br><br>*Plaintiffs,*<br><br>v.<br><br>LIZ MURRILL, *in her official capacity as Attorney General of Louisiana,* ROBERT P. HODGES, *in his official capacity as Superintendent of the Louisiana State Police,* and HILLAR C. MOORE, III, *in his official capacity as District Attorney of East Baton Rouge Parish,*<br><br>*Defendants.* | CASE NO. 3:24-cv-00623-RLB-SDJ |

## DECLARATION OF KATHERINE JANE FERNELIUS

I, Katherine Jane Fernelius, declare as follows:

1. I am over the age of 18. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction in the above-captioned matter. I have personal knowledge of the matters stated herein.

2. I am the Local Government Reporter at Verite News in New Orleans, Louisiana, a non-profit news outlet operated by Deep South Today. I have been in

1

my current position for approximately eight months. Prior to working at Verite News, I worked as a freelance journalist and podcast producer for eight years.

3. It is my job to cover any part of local government that touches a New Orleans resident's life. I report on a wide range of local government entities, including law enforcement. I also encounter law enforcement when covering other parts of local government, including at city council meetings, events like parades and protests, and when reporting from city jails and courthouses.

4. Although my contact with law enforcement officers may increase or decrease depending on the season and the news cycle, I would estimate that, on average, I come into contact with law enforcement officers as a part of my job on a weekly basis.

5. When I am covering the activities of law enforcement, I need to be able to understand who's involved and what's being said. You can't get a name or a badge number from far away, so I get as close as I can. I also cannot capture good-quality audio and video from a distance, and I do both while reporting for fact-checking purposes—to make sure I get quotes and details right.

6. Based on my experience in podcasting, I know that to get good quality audio you typically need to be within five feet of someone. I try to get at least that close, while also trying to stay safe and avoid interrupting or interfering with what is happening.

7. When I am out in the field, I try not to carry too much with me, so I usually just record using my phone; I will use a mic and headphones to record audio.

8. I occasionally publish my audio and video footage along with my written reporting on the Verite News website, and I also often post audio and video from my reporting on my profile on the social media platform "X."

9. Often, I could not do my job at a distance. Many of my encounters with law enforcement involve crowds, for example, and when officers are doing crowd control, it's very difficult to avoid getting very close to them. Recently, I witnessed law enforcement officers arrest a person and their spouse at a city council meeting I was covering. The couple had interrupted the meeting by making disruptive comments and then refused to leave after being asked.

10. As the arrests were happening, the officers told me and the other people I was standing with in the council chambers to stay back, and we gave them a reasonable berth of five to ten feet. If the officers had asked me to move twenty-five feet from them, it would have been challenging for me to comply and stay inside the room because of the room's layout. I needed to record what was happening because I was covering the incident, so I did not want to stand back further—let alone leave the room—and risk losing my opportunity to document the arrest.

11. In another recent example, I was covering a pro-Palestinian encampment at Tulane University in the hours before law enforcement moved in to make arrests. There was already a large law enforcement presence, including Tulane police officers, New Orleans Police Department officers, and Louisiana State Police troopers, and I needed to approach several officers to ask questions and interview them about what was going on.

12. In 2020, when I was covering racial justice protests, I was similarly trying to see how law enforcement officers were responding to the demonstrations and what tactics they were using. I couldn't do that without getting close.

13. I first heard about HB 173 from a Verite News colleague who was covering the proposal, before it was enacted.

14. HB 173 will have a devastating effect on our ability to do journalism in public places. It automatically puts me and other Verite journalists in danger of arrest in many of the circumstances we find ourselves in on a weekly basis.

15. It is also very hard for me to visualize twenty-five feet, and it would be hard for me to figure out where it would be safe to stand when I am in close proximity to law enforcement officers. I am not at all confident in my ability to accurately estimate twenty-five feet when out in the field. In fact, I recently measured the distance with my husband so I could try to visualize it. Doing so

made me realize how frequently I come within twenty-five feet of law enforcement officers while doing my job.

16. There are law enforcement officers everywhere when I do my job, so HB 173 is making me second-guess if I can gather news in certain spaces. There are some parts of the French Quarter in New Orleans, for example, where it might be impossible to comply if you are standing on the street because the streets are narrow.

17. I want to avoid getting arrested and continue to gather news. But under HB 173, there will be circumstances where it will be impossible for me to strike that balance.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 13, 2024 in New Orleans, Louisiana.

*Katherine Fernelius*

Katherine Jane Fernelius

Prepared by:

Katie Townsend
Reporters Committee for Freedom of the Press
1156 15th St. NW Suite 1020
Washington, D.C. 20005