UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEEP SOUTH TODAY, *d/b/a* VERITE NEWS, GANNETT CO., INC., GRAY LOCAL MEDIA, INC., NEXSTAR MEDIA, INC., SCRIPPS MEDIA INC., and TEGNA INC.,<br><br>*Plaintiffs,*<br><br>v.<br><br>LIZ MURRILL, *in her official capacity as Attorney General of Louisiana,* ROBERT P. HODGES, *in his official capacity as Superintendent of the Louisiana State Police,* and HILLAR C. MOORE, III, *in his official capacity as District Attorney of East Baton Rouge Parish,*<br><br>*Defendants.* | CASE NO. 3:24-cv-00623-RLB-SDJ |

### DECLARATION OF PATRICK THOMAS

I, Patrick Thomas, declare as follows:

1. I am over the age of 18. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction in the above-captioned matter. I have personal knowledge of the matters stated herein.

2. I am the Chief Photographer at WGNO in the New Orleans, Louisiana area, a broadcast television station owned by Nexstar Media, Inc. I have been in

1

my current role since November 2005. Before joining WGNO, I worked as a news photographer at two other stations in Lafayette: KLFY and KATC.

3. As Chief Photographer at WGNO, my work is a mix of supervising other journalists and going out into the field myself. I supervise nine people—including news photographers, editors, and news center operators.

4. I personally come into contact with law enforcement officers on the job frequently—at least once a month—usually when covering a crime scene or a press conference. I also come into close contact with officers when covering events with big crowds where officers are present for crowd control, like Mardi Gras, Jazz Fest, and other parades or protests.

5. When I encounter officers, I typically need to be pretty close to them to do my job—usually about 5 to 10 feet away. When there are many officers at a scene, I would struggle not to be within twenty-five feet of at least one officer.

6. In my experience, officers sometimes ask reporters to move away from a scene to stop us from capturing audio or video they don't want made public.

7. For example, in mid-July, I was covering a crash scene in Jefferson Parish where police chased a suspect and ran the suspect off the road. By the time I arrived, the police were putting the suspect in an ambulance. The suspect was saying something about the police officers, and I got closer to try to hear what was being said.

8. I was standing about five from the officers when I heard the suspect say that he had been punched in the mouth and tased six times, that he was a businessman just trying to collect scooters, and that "not all Jefferson Parish officers are bad officers, just that one." I could not tell from the context which officer the suspect was referring to.

9. An officer then came over and told me and another journalist from a different station to move back.

10. We both stepped back several feet, but the officer then asked us to move across the street on the other side of an active lane of traffic. I was reluctant to cross, including out of concern for my own safety, but the officer was insistent. He kept telling me over and over again to cross the street, even though I was not interfering with anything that was happening at the scene and he never suggested that I was.

11. From what I could tell, it seemed like I was being ordered to move back because the officer had a negative reaction to the suspect's criticism.

12. The officer seemed ready to arrest me if he could find a reason to. But I have been in this job for twenty years, and I know how to cover crime scenes without interfering with the activities of law enforcement. I knew that I was already far enough away and not doing anything to hamper the investigation.

13. If HB 173 was in effect when this happened, though, I would have been forced to comply rather than keep gathering the news.

14. I have a SONY camera and a decent microphone that I carry around with me when I'm in the field, and it would be challenging for me to capture usable audio and video for broadcast if I were twenty-five feet away from my subject. To record audio of an ordinary conversation, you need to be at least within ten to fifteen feet, often closer depending on the situation and the background noise.

15. I would also struggle to comply with an order to stay back twenty-five feet in practice, since it is hard for me to determine how long of a distance that would be in the field. When our newsroom heard about HB 173, I had our engineering team measure out twenty-five feet for me and I was stunned at what a long distance it was.

16. I would likewise have trouble complying if multiple officers enforced HB 173 against me at once, or if the officers themselves were moving. I am not sure whether I would have to keep backing up if an officer continued coming closer to me. And the problem would be especially nerve-wracking in a large crowd, where it would be challenging to comply without obstructing my view of the officer and my ability to report on the officer's actions.

17. I always try to abide by orders from law enforcement, but I also know my rights; I know that I am allowed to record what an officer is doing so long as I am not interfering or impeding their active investigation. If HB 173 is allowed to go into effect, it will make my job more dangerous. Covering law enforcement requires getting close to see and hear what is going on. I cannot do that safely if I am confronting the risk of arrest when gathering news that the public has the right to see.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 13, 2024 in New Orleans, Louisiana.

*Patrick Thomas* (signature)

Patrick Thomas

Prepared by:

Katie Townsend
Reporters Committee for Freedom of the Press
1156 15th St. NW Suite 1020
Washington, D.C. 20005