UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEEP SOUTH TODAY, *d/b/a* VERITE NEWS, GANNETT CO., INC., GRAY LOCAL MEDIA, INC., NEXSTAR MEDIA, INC., SCRIPPS MEDIA INC., and TEGNA INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> LIZ MURRILL, *in her official capacity as Attorney General of Louisiana*, ROBERT P. HODGES, *in his official capacity as Superintendent of the Louisiana State Police*, and HILLAR C. MOORE, III, *in his official capacity as District Attorney of East Baton Rouge Parish*, <br><br> *Defendants*. | CASE NO. 3:24-cv-00623 |

### DECLARATION OF RICHARD ERBACH

I, Richard Erbach, declare as follows:

1. I am over the age of 18. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction in the above-captioned matter. I have personal knowledge of the matters stated herein.

2. I am the News Director at WGNO in New Orleans, Louisiana, a broadcast television station owned by Nexstar, Inc. I have been in my current position for approximately fifteen years. I have worked in media, supervising and

1

engaging in newsgathering for 47 years. Prior to becoming News Director at WGNO, I was the News Director at Meredith Corp's Atlanta station WGCL, Vice President of Sales & Public Relations for NewSource for CNN, and the Vice President of News for KTVI in St. Louis, Missouri.

3. In my role as News Director at WGNO, I manage a staff of 45, including six reporters, five anchors, and seven photographers. I make decisions about where to allocate newsroom resources across our different coverage areas.

4. I oversee the work of reporters, anchors, and photojournalists who cover breaking news in Louisiana and who, as part of that work, come into close contact with law enforcement officers on a daily basis.

5. Our recent coverage of a pro-Palestinian encampment on the Tulane University campus, for instance, involved interacting with officers from the New Orleans Police Department and Louisiana State Police and taking video from within twenty-five feet of officers. *See* Raeven Poole, *Law Enforcement Agencies Raid Pro-Palestine Protest on Tulane University*, WGNO (May 1, 2024), https://bit.ly/3XYmE0o.

6. Our reporters also routinely encounter officers at press conferences, including availabilities held by the Governor, and at events like Mardi Gras, Jazz Fest, the Thibodaux Fireman's Fair, or professional, college, and high school sports games.

2

7. When I train reporters and photographers, I advise them to get as close as they can without putting themselves or others at risk in order to get usable audio and video for broadcast. I also make clear that they should comply with all law enforcement requests and avoid becoming part of the scene.

8. From my experience working in newsroom management, I know that in order to capture usable audio of an event unfolding at a conversational volume reporters must typically be no more than five feet away to make recordings that can be used in a broadcast. To capture usable audio and video without risking an obstructed view, our journalists must usually be within ten to fifteen feet away.

9. I first learned about HB 173 when it passed in the Louisiana House of Representatives through reporting by other news organizations. I am concerned that the law will make it harder for WGNO reporters and photographers to gather the news safely and effectively. I also worry about officers enforcing the law unfairly, applying it to some members of the media but not others, or to some members of the media and not the public.

10. Many law enforcement officers understand that we need to be able to do our jobs, but I have personal experience with some officers discouraging lawful reporting by singling out members of the press and asking journalists to leave the scene of newsworthy events.

11. In March or April of 2023, for instance, I was coming home from a photography shoot on a Sunday morning when I saw several fire vehicles and police cars. I parked and walked down to the sidewalk corner to see what was taking place. Soon, I saw that law enforcement officers were securing the scene of a motorcycle accident; the victims had already been taken away from the area.

12. WGNO routinely covers traffic incidents because of their importance to public safety. *See, e.g.*, Rachel Hernandez, *Man Killed in Motorcycle Crash on I-10 in New Orleans East*, WGNO (May 24, 2024), https://bit.ly/3SjZlKF.

13. From the public sidewalk, I started shooting video and audio of the scene with my iPhone from a distance of about ten feet from the crash. A Jefferson Parish Sheriff's Deputy then came up and told me to stop shooting. Knowing that I was within my rights to be present and recording, I refused, telling him that I was a member of the media.

14. Next, the lieutenant came over and demanded my press credentials. After I showed my ID, he called me a "ghoul" and again asked me to move back. The deputies backed off only after I offered to call the Sheriff to settle the issue.

15. While this was unfolding, there was another woman—not a member of the press but a member of the general public—who was there taking photos right next to me from the same distance I was. The deputies never said anything to

4

her or asked her to move back. My impression was that I was being singled out because the deputies believed I was a journalist.

16. They seemed ready to arrest me, but I knew that I had the right be there. If HB 173 had been effect at the time, though, I would have been forced to comply with their requests rather than document the scene.

17. Based on my own experience and the experiences of the WGNO journalists I supervise, I would estimate that a member of the WGNO newsroom is similarly asked to step back or move away from an officer around once a week.

18. If HB 173 goes into effect, I will need to work with other members of newsroom leadership to explain the law to our reporters. I will ask reporters to comply with the law and always prioritize their own safety, but I do not know how to measure twenty-five feet in practice or what to do if multiple officers standing in different places attempt to enforce the law against them at the same time.

19. Because WGNO's coverage areas will continue to bring our reporters and photojournalists within twenty-five feet of law enforcement officers virtually every day for the foreseeable future, I am concerned that HB 173 will be used to arbitrarily prevent our journalists' from getting close enough to gather the information they need to inform the public, despite the fact that our journalists are careful not to obstruct law enforcement officers' ability to carry out their official duties.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2024 in New Orleans, Louisiana.

Richard Erbach

Prepared by:

Katie Townsend
Reporters Committee for Freedom of the Press
1156 15th St. NW Suite 1020
Washington, D.C. 20005