**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

DEEP SOUTH TODAY, et al.,

                            PLAINTIFFS,

      v.

ELIZABETH B. MURRILL, et al.,

                         DEFENDANTS.

Civil Action No. 3:24-cv-623

Judge: JWD - SDJ

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' CONSOLIDATED MOTION TO DISMISS AND**
**OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

LEGAL STANDARDS ............................................................................................................... 4

ARGUMENT .............................................................................................................................. 5

   I. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE 12(B)(1)
     FOR LACK OF SUBJECT MATTER JURISDICTION. ......................................................... 6

     A.   Plaintiffs' Claims Are Not Ripe. ........................................................................ 6

     B.   Plaintiffs Lack Article III Standing. ................................................................... 7

        1.   Plaintiffs Do Not Have Standing For Their As-Applied Claim (Count I). ........................ 8

        2.   Plaintiffs Do Not Have Standing For Their Facial Overbreadth Claim (Count II).......... 9

        3.   Plaintiffs Do Not Have Standing For Their Due Process Claim (Count III).................. 10

     C.   Attorney General Murrill and Colonel Hodges Are Entitled to Sovereign Immunity........ 11

  II. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE 12(B)(6)
     FOR FAILURE TO STATE A CLAIM FOR RELIEF. ....................................................... 14

     A.   Plaintiffs' First Amendment As-Applied Claim Fails (Count I). ............................ 15

     B.   Plaintiffs' Facial-Overbreadth Claim Fails (Count II). ............................................ 20

     C.   Plaintiffs' Void-for-Vagueness Claim Fails (Count III). ........................................ 24

  III.  THE COURT SHOULD DENY PLAINTIFFS' PRELIMINARY-INJUNCTION MOTION. .................. 25

PRAYER FOR RELIEF ........................................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*Allied Marketing Grp., Inc. v. CDL Marketing, Inc.,*
  878 F.2d 806 (5th Cir. 1989) ...........................................................................5

*Ariz. Broads. Ass'n v. Brnovich,*
  626 F. Supp. 3d 1102 (D. Ariz. 2022) ...........................................................16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................................4

*Ass'n of Club Executives of Dallas, Inc. v. City of Dallas,*
  83 F.4th 958 (5th Cir. 2023),
  *cert. denied,* 144 S. Ct. 1064 (2024) ...........................................................18

*Bell v. Keating,*
  697 F.3d 445 (7th Cir. 2012) .........................................................................24

*Benfield v. Magee,*
  945 F.3d 333 (5th Cir. 2019) ...........................................................................5

*Bezet v. United States,*
  276 F. Supp. 3d 576 (E.D. La.),
  *aff'd,* 714 F. App'x 336 (5th Cir. 2017) ........................................................25

*Book People, Inc. v. Wong,*
  91 F.4th 318 (5th Cir. 2024) .............................................................................6

*Braidwood Mgmt., Inc. v. EEOC,*
  70 F.4th 914 (5th Cir. 2023) .............................................................................6

*Branzburg v. Hayes,*
  408 U.S. 665 (1972) ..................................................................................16, 17

*Brown v. Kemp,*
  86 F.4th 745 (7th Cir. 2023) ...........................................................................18

*Burkette v. E. Feliciana Par. Sheriff,*
  2024 WL 1253594 (M.D. La. Mar. 22, 2024) .................................................13

*Burkette v. Travis,*
  2024 WL 1253920 (M.D. La. Feb. 23, 2024) .................................................13

*Burson v. Freeman,*
  504 U.S. 191 (1992) .......................................................................................23

*Carney v. Adams*,
   592 U.S. 53 (2020) ..................................................................................................7

*Case v. Ivey*,
   542 F. Supp. 3d 1245 (M.D. Ala. 2021),
   *aff'd*, 2022 WL 2441578 (11th Cir. July 5, 2022)............................................25

*Casillas v. Madison Ave. Assocs., Inc.*,
   926 F.3d 329 (7th Cir. 2019) ..................................................................................9

*Choice Inc. of Tex. v. Greenstein*,
   691 F.3d 710 (5th Cir. 2012) .............................................................................. 6, 7

*City of Alexandria v. FEMA*,
   781 F. Supp. 2d 340 (W.D. La. 2011) ...............................................................26

*City of Austin v. Paxton*,
   943 F.3d 993 (5th Cir. 2019) .......................................................................... 11, 14

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
   596 U.S. 61 (2022) ................................................................................................17

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ................................................................................................24

*City of Houston v. Hill*,
   482 U.S. 451 (1987) ..............................................................................................16

*Coates v. City of Cincinnati*,
   402 U.S. 611 (1971) ..............................................................................................25

*Couhig v. Brown*,
   538 F. Supp. 1086 (E.D. La. 1982) ........................................................................7

*Doe v. Jindal*,
   2011 WL 3664496 (M.D. La. Aug. 19, 2011) .....................................................13

*Donnellon v. Jordan*,
   144 S. Ct. 1343 (2024)..........................................................................................22

*E.T. v. Paxton*,
   19 F.4th 760 (5th Cir. 2021).................................................................................27

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ........................................................................................... 8, 9

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ..............................................................................................25

*Hamilton v. Dallas Cnty.,*
   79 F.4th 494 (5th Cir. 2023) ................................................................................4

*Hill v. Colorado,*
   530 U.S. 703 (2000) ..........................................................................................25

*Hines v. Pardue,*
   No. 23-40483, __ F.4th __, 2024 WL 4297014 (5th Cir. Sept. 26, 2024) ......... 15, 17

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
   143 F.3d 1006 (5th Cir. 1998) ..........................................................................4

*In re Express-News Corp.,*
   695 F.2d 807 (5th Cir. 1982) ...........................................................................16

*In re FEMA Trailer,*
   668 F.3d 281 (5th Cir. 2012) ...........................................................................4

*In re Great Lakes Dredge & Dock Co. LLC,*
   624 F.3d 201 (5th Cir. 2010) ...........................................................................4

*Jordan v. Jenkins,*
   73 F.4th 1162 (10th Cir. 2023) ........................................................................22

*Justice v. Hosemann,*
   771 F.3d 285 (5th Cir. 2014) .............................................................8, 9, 10, 21

*Kling v. Hebert,*
   60 F.4th 281 (5th Cir. 2023) ............................................................................4

*Kolender v. Lawson,*
   461 U.S. 352 (1983) ..........................................................................................24

*Little v. KPMG LLP,*
   575 F.3d 533 (5th Cir. 2009) ...........................................................................4

*LLEH, Inc. v. Wichita Cnty.,*
   289 F.3d 358 (5th Cir. 2002) ...........................................................................18

*McCullen v. Coakley,*
   573 U.S. 464 (2014) ..........................................................................................17

*McLin v. Twenty-First Jud. Dist.,*
   79 F.4th 411 (5th Cir. 2023) ............................................................................4

*McRorey v. Garland,*
   99 F.4th 831 (5th Cir. 2024) ............................................................................5

v

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent,*
    466 U.S. 789 (1984) ................................................................................................21

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
    760 F.2d 618 (5th Cir. 1985) ....................................................................................5

*Miss. State Democratic Party v. Barbour,*
    529 F.3d 538 (5th Cir. 2008) ...................................................................................10

*Moody v. NetChoice, LLC,*
    144 S. Ct. 2383 (2024)........................................................10, 20, 21, 22, 23, 24

*Morgan v. White,*
    964 F.3d 649 (7th Cir. 2020) ...................................................................................15

*Munaf v. Geren,*
    553 U.S. 674 (2008) ............................................................................................5, 26

*Munn v. City of Ocean Springs,*
    763 F.3d 437 (5th Cir. 2014) ..................................................................................24

*Murthy v. Missouri,*
    144 S. Ct. 1972 (2024)..........................................................................................8, 9

*Nat'l Press Photographers Ass'n v. McCraw,*
    90 F.4th 770 (5th Cir. 2024)........................................................................10, 14, 16

*Nat'l Press Photographers v. Higgins,*
    No. 23-1105, __ S. Ct. __, 2024 WL 4426550 (U.S. Oct. 7, 2024) ...............10, 11

*Nebbia v. People of New York,*
    291 U.S. 502 (1934) ................................................................................................23

*Nicodemus v. City of S. Bend, Indiana,*
    No. 3:23-cv-744, 2024 WL 139248 (N.D. Ind. Jan. 12, 2024) ....................8, 16, 17, 18, 19

*NiGen Biotech, L.L.C. v. Paxton,*
    804 F.3d 389 (5th Cir. 2015) ...........................................................................11, 12

*Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.,*
    579 F.3d 502 (5th Cir. 2009) ..................................................................................18

*Perkins v. Hart,*
    No. 22-30456, 2023 WL 8274477 (5th Cir. Nov. 30, 2023).....................................20

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ....................................................................................4

*Robicheaux v. Caldwell*,
  986 F. Supp. 2d 749 (E.D. La. 2013) ........................................................................... 13

*Roho, Inc. v. Marquis*,
  902 F.2d 356 (5th Cir. 1990) ........................................................................................ 5

*Sessions v. Morales-Santana*,
  582 U.S. 47 (2017) ....................................................................................................... 9

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ................................................................................................... 15

*Speaks v. Kruse*,
  445 F.3d 396 (5th Cir. 2006) ..................................................................................... 10

*Tanner v. City of Virginia Beach*,
  674 S.E.2d 848 (Va. 2009) ......................................................................................... 25

*Texas All. for Retired Americans v. Scott*,
  28 F.4th 669 (5th Cir. 2022) ........................................................................... 11, 12, 13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................................. 8, 9

*Turner Broad. Sys., Inc. v. F.C.C.*,
  512 U.S. 622 (1994) ................................................................................................... 18

*Turner v. Lieutenant Driver*,
  848 F.3d 678 (5th Cir. 2017) ..................................................................................... 16

*United States ex rel. Johnson v. Raytheon Co.*,
  93 F.4th 776 (5th Cir. 2024) ........................................................................................ 4

*United States v. Bonin*,
  932 F.3d 523 (7th Cir. 2019) ..................................................................................... 21

*United States v. Hansen*,
  599 U.S. 762 (2023) .............................................................................................. 21, 23

*United States v. Williams*,
  553 U.S. 285 (2008) .............................................................................................. 21, 24

*Urb. Devs. LLC v. City of Jackson*,
  468 F.3d 281 (5th Cir. 2006) ....................................................................................... 4

*Villarreal v. City of Laredo*,
  94 F.4th 374 (5th Cir. 2024) .................................................................................. 16, 17

*Virginia v. Hicks,*
   539 U.S. 113 (2003) ................................................................................... 15, 21

*Vivint La., LLC v. City of Shreveport,*
   213 F. Supp. 3d 821 (W.D. La. 2016) ...........................................................19

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) .......................................................................................24

*White Hat v. Landry,*
   475 F. Supp. 3d 532 (M.D. La. 2020) ...........................................................13

*Williams v. Davis,*
   No. 22-30181, 2023 WL 119452 (5th Cir. Jan. 6, 2023) ...............................12

*Williamson v. Tucker,*
   645 F.2d 404 (5th Cir. May 1981) ..................................................................4

**Statutes**

La. R.S. 14:109 ..............................................................................2, 10, 16, 17, 21, 25

La. R.S. 40:1379 ...................................................................................................13

**Other Authorities**

2024 La. Sess. Law Serv.
   Act 259 (H.B. 173) ..........................1, 2, 3, 6, 7, 8, 9, 10, 12, 13, 15, 16, 17, 18, 19, 20, 22, 24, 25, 26

Ind. Code § 35-44.1-2-14 ....................................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................4, 6, 26

Fed. R. Civ. P. 12(b)(6) ......................................................................................4, 14

**Constitutional Provisions**

La. Const. art. IV § 8 ......................................................................................12, 13

La. Const. art. V § 26........................................................................................13

**INTRODUCTION**

Like other States, Louisiana has been facing a public safety problem. In 2024, the Louisiana Legislature tackled those public safety concerns, in part, by enacting Act 259 to protect peace officers and the public, alike. The law prohibits bystanders, after being ordered to stand back, from approaching within 25 feet of an officer lawfully engaged in his duties. Failure to comply may result in an arrest and a fine. With Act 259, officers can now operate safely and effectively, prevent interference or distractions while executing their duties, and protect witness and victim privacy and confidentiality. Yet a group of legacy media organizations complain the law targets their newsgathering. The Court should dismiss their suit for lack of jurisdiction or for failure to plausibly state a claim for relief and so deny their competing motion for preliminary injunction as moot.

*First*, the cleanest resolution here is dismissal for want of jurisdiction. Plaintiffs' claims have an overarching ripeness problem: There has been no Act 259 order, arrest, or prosecution by any of these Defendants. That same consideration bleeds over into Plaintiffs' standing theories as to each claim, and it is especially troublesome for Plaintiffs' "*as-applied*" claim without any allegation of an *application* of Act 259. Finally, Attorney General Murrill and Colonel Hodges are both plainly entitled to sovereign immunity and the *Ex parte Young* exception offers no refuge.

*Second*, if the Court is inclined to reach the merits, Plaintiffs have failed to state a plausible First Amendment or Due Process claim. That is principally because Plaintiffs repeatedly ignore the text of Act 259 altogether. But the Act's plain text makes clear that it is no more than a conduct-regulating general criminal law of neutral applicability. Because Act 259 does not concern speech or newsgathering within the means of law, the First Amendment is simply not implicated. And even if the Act somehow regulated speech, it satisfies intermediate scrutiny given the slew of substantial interests it furthers. Those defects also extend to the facial-overbreadth claim—namely, Plaintiffs cannot show that a substantial amount of the Act's applications are unconstitutional compared to its

plainly legitimate sweep. Last, Plaintiffs' void-for-vagueness claim likewise fails because there is nothing vague about "25 feet," and officer discretion is an element of every criminal law.

Dismissal is plainly warranted. With it, the Court should deny Plaintiffs' motion for a preliminary injunction as moot or, at the very least, on its merits.

## BACKGROUND

This session, Louisiana lawmakers prioritized protecting peace officers lawfully engaged in law enforcement duties. *See* 2024 La. Sess. Law Serv. Act 259 (H.B. 173) (codified at La. R.S. 14:109) ("Act 259"). Act 259 criminalizes a "person [] knowingly or intentionally approach[ing] within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat," La. R.S. 14:109(A), unless the defendant "neither received nor understood" "the lawful order or command," which was not "capable of being received or understood under the conditions," La. R.S. 14:109(C). Act 259 violations carry a fine of "not more than five hundred dollars" and no more than "sixty days" of prison time. La. R.S. 14:109(D).

Plaintiffs are a collection of legacy media organizations—operators of newspapers and radio and television stations—who claim to "represent the interest of journalists" that they employ to "cover the activities of Louisiana law enforcement." ECF No. 1 (Compl.) ¶¶ 26–27. On July 31, 2024, they sued Louisiana Attorney General Elizabeth Murrill, Superintendent of Louisiana State Police Colonel Robert P. Hodges, and East Baton Rouge Parish District Attorney Hillar C. Moore, III, all in their official capacities, to declare Act 259 unconstitutional and to enjoin its enforcement. *Id.* ¶¶ 23–25. The next day, on August 1, 2024, the Act went into effect.

Plaintiffs claim they "intend to engage in peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers performing their duties in public spaces," like Mardi Gras, the Super Bowl, crime scenes, and public official press conferences. Compl. ¶ 59; *see id.* ¶¶ 17–33. With

Act 259, in Plaintiffs' view, their employees could not decline an officer's order "to move unreasonably far away" or an attempt "to debilitate or deter non-obstructive newsgathering." *Id.* ¶¶ 38–39. That matters, Plaintiffs say, because "25 feet is often too far to obtain a clear line of sight to newsworthy events" and "to reliably capture audio recordings," conduct "interviews," or "ask questions of officers or witnesses." *Id.* ¶¶ 40–41, 43. Without clear audio and video, Plaintiffs fear that reporters could "mislead[]" the audience into believing an arrest was legally sound. *Id.* ¶ 42. Plaintiffs separately complain that compliance might be impossible with "fast-moving crowd scenes" and "no way to retreat through a densely packed crowd where there is not enough space to withdraw without trespassing on private property, or where multiple officers have issued overlapping instructions." *Id.* ¶¶ 45–47. Plaintiffs presume their "proposed course of conduct is proscribed by the Act," *id.* ¶ 61, and so the Act will "burden the exercise of First Amendment rights," *id.* ¶ 37.

The Complaint contains three § 1983 claims: an "As Applied" First Amendment claim (Count I), a "Facial Overbreadth" First Amendment claim (Count II), and a "Void for Vagueness" claim based on the Fourteenth Amendment (Count III). Compl. at 14–18. The Complaint seeks a declaration that "the Act violates the First and Fourteenth Amendments of the Constitution on its face and as applied to Plaintiffs' peaceful, nonobstructive efforts to document officers performing duties in public spaces." *Id.* at 19. They also ask for injunctive relief "restraining Defendants from enforcing the Act." *Id.*

Neither Plaintiffs themselves nor any of their employees have been the subject of an order to stop approaching or to retreat, an arrest for failure to comply with such an order, or a prosecution under Act 259 by anyone—much less these Defendants. Ex. A (Burns Decl.) ¶¶ 9–10; Ex. B (Moore Decl.) ¶ 8. Nonetheless, Plaintiffs filed a preliminary-injunction motion, which seeks injunctive relief along the same lines as the Complaint. ECF Nos. 19 (PI Mot.), 19-1 (PI Mem.).

For the following reasons, the Court should dismiss the entirety of Plaintiffs' Complaint and deny the Motion for Preliminary Injunction as moot or, at the very least, on its own merit.

## LEGAL STANDARDS

**Dismissal for Lack of Jurisdiction.** Rule 12(b)(1) permits a party to raise fatal jurisdictional defects early. *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *In re FEMA Trailer*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). When "a Rule 12(b)(1) motion is filed," "the court first considers its jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). Ripeness, standing, and sovereign immunity are all jurisdictional questions to be considered first when raised in a Rule 12(b)(1) motion. *See Urb. Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006) (ripeness); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (standing); *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (sovereign immunity).

Plaintiffs, as "the part[ies] asserting jurisdiction," "constantly bear[] the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see, e.g.*, *United States ex rel. Johnson v. Raytheon Co.*, 93 F.4th 776, 783 (5th Cir. 2024). On a factual attack under Rule 12(b)(1), as here, "no presumptive truthfulness attaches to the [] allegations." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. May 1981).

**Dismissal for Failure to State a Claim.** Dismissal is also proper where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs' "conclusory allegations, unwarranted factual inferences, or legal conclusions" are "not accept[ed] as true"—only "well-pleaded facts" receive that presumption. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (internal citations and

quotations omitted). Once the complaint is stripped to its "well-pleaded facts," those alone "must make relief plausible, not merely possible." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019).

**Preliminary Injunction.** "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal citations and quotations omitted); *see Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (calling it "the exception rather than the rule"). The preliminary-injunction elements are well-treaded: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest." *McRorey v. Garland*, 99 F.4th 831, 836 (5th Cir. 2024) (citation omitted); *see Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (failure to prove just one can be dispositive). Plaintiffs, as movants, must "clearly carr[y] the burden of persuasion with respect to all four factors." *Allied Marketing Grp., Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

## ARGUMENT

The Court need do no more than dismiss Plaintiffs' Complaint, without prejudice, for lack of subject matter jurisdiction because the Complaint is directly foreclosed by precedent governing ripeness, standing, and sovereign-immunity. If the Court were inclined to reach the merits, dismissal would still be proper because Plaintiffs fail to state a claim for relief. Either would warrant summary denial of Plaintiffs' preliminary-injunction motion as moot. If the Court nonetheless declines to dismiss the lawsuit, the Court should deny the preliminary-injunction motion because Plaintiffs are, at the very least, unlikely to succeed on the merits; they will not suffer irreparable harm; and the equities and the public interest cut in Defendants' favor.

I.    **The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(1) For Lack of Subject Matter Jurisdiction.**

The Court lacks jurisdiction to hear Plaintiffs' claims because (A) none of Plaintiffs' claims are ripe, (B) they lack Article III standing, and (C) Attorney General Murrill and Colonel Hodges are entitled to sovereign immunity.

A.    **Plaintiffs' Claims Are Not Ripe.**

Dismissal of Plaintiffs' claims—and especially the as-applied claim—is warranted most clearly on ripeness grounds. The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (citation omitted). To determine whether a claim is ripe, courts look to two factors: (1) "the fitness of the issues for judicial decision"; and (2) "the hardship to the parties of withholding court consideration." *Book People, Inc. v. Wong*, 91 F.4th 318, 333 (5th Cir. 2024) (citation omitted). Plaintiffs' claims fail on each factor.

*First*, this case is not yet fit for judicial decision. "[A] claim is 'fit for judicial decision' if it presents a pure question of law that needs no further factual development." *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 930 (5th Cir. 2023). But, "if a claim is contingent on future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe." *Id.* (cleaned up).

Plaintiffs' claims are littered with contingencies. Everyone agrees that Act 259 has never actually been enforced against Plaintiffs or their employees—not a prosecution, not an arrest, and not even an order to retreat. Burns Decl. ¶¶ 9–10; Moore Decl. ¶ 8. More, with any reasonable prosecutorial triage, it is entirely speculative that Act 259 would ever result in a prosecution. Moore Decl. ¶¶ 6, 11. Those contingencies especially plague the fitness of Plaintiffs' as-applied claim. For how does the Court even begin to conduct that fact-intensive, context-specific analysis for a law never applied to these Plaintiffs in the first place? That is a black-letter fitness issue.

6

*Second*, even if Plaintiffs could overcome the first ripeness factor, dismissal would remain in order because they face no hardship from dismissal. *See Choice Inc.*, 691 F.3d at 715 ("even where an issue presents purely legal questions," there must be a "hardship to the parties of withholding court consideration" (citation omitted)). "The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being forced to modify one's behavior in order to avoid future adverse consequences." *Id.* (cleaned up).

Act 259 indisputably creates no legal rights or obligations, nor does it force anyone to modify behavior absent a specific, yet-issued order to do so. Until then, Plaintiffs' only articulated harm is a self-imposed newsgathering chilling effect. But "the mere fact that plaintiffs allege a first amendment chilling effect and shiver in court does not thereby establish a case or controversy." *Couhig v. Brown*, 538 F. Supp. 1086, 1088 (E.D. La. 1982) (citation omitted). As Plaintiffs allege, they "routinely encounter members of the State Police" and "come into close contact with peace officers as often as once a day depending on the news cycle," PI Mem. at 4, 6, yet nothing about that has changed since Act 259 took effect. Nor is there any practical impediment to Plaintiffs filing suit if and when an officer issues an Act 259 order to one of their employees. Accordingly, even on the hardship prong, dismissal remains warranted without prejudice to a filing by a future plaintiff, in a future case, subject to a future Act 259 order.

### B. Plaintiffs Lack Article III Standing.

The same considerations cut against Plaintiffs' standing here. Plaintiffs "bear[ ] the burden of establishing standing as of the time [they] brought th[e] lawsuit and maintaining it thereafter." *Carney v. Adams*, 592 U.S. 53, 59 (2020). Thus, as of July 31, 2024 (the date of the Complaint), each Plaintiff "must show that [they] [have] suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"

7

*Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (citation omitted). And that showing must extend to "'*each* claim that they press' against *each* defendant, 'and for *each* form of relief that they seek.'" *Id.* at 1988 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)) (emphases added). That also means Plaintiffs' standing for their as-applied claim and their facial claim must be evaluated independently. *Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014). For each of Plaintiffs' claims, they fall flat on all three standing requirements.

### 1.    Plaintiffs Do Not Have Standing For Their As-Applied Claim (Count I).

Plaintiffs lack standing to sustain an as-applied challenge to Act 259. That is foremost because the Complaint does not allege any application of Act 259, so it cannot carry Plaintiffs' burden to establish a "*concrete*, *particularized*, and *actual or imminent*" injury. *Murthy*, 144 S. Ct. at 1986 (emphases added). That is fatal because a "developed factual record is essential" to as-applied First Amendment challenges. *Justice*, 771 F.3d at 292. So "even when a group of plaintiffs has general standing to challenge the constitutionality of a statute, the plaintiffs might not have developed a sufficiently concrete record to sustain their as-applied challenge." *Id.* When "the record is bereft of facts," "the scope of [any] as-applied ruling [will] necessarily [be] vague, and the hallmarks of a traditional as-applied remedy—dependability and a limited scope—[will be] entirely absent." *Id.* at 294. Without "a sufficiently specific record," courts "decline[] to issue as-applied remedies." *Id.* (collecting cases). The Court should decline the same invitation here. *Compare* Burns Decl. ¶¶ 9–10; Moore Decl. ¶ 8; *with Nicodemus v. City of S. Bend, Indiana*, No. 3:23-cv-744, 2024 WL 139248, at *1 (N.D. Ind. Jan. 12, 2024) ("police officers moved [plaintiff] back from a shooting investigation in town, referencing [the] new law").

Plaintiffs' failure to allege an injury-in-fact means that they also have failed to show "any concrete link between their injuries and the [D]efendants' conduct," *Murthy*, 144 S. Ct. at 1997, a "heavily fact-dependent" determination, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

Although Plaintiffs ultimately attack Act 259 itself, they correctly do not suggest that Defendants—state officials uninvolved in the passage of legislation—somehow "caused" Act 259 or its application. Indeed, one of the most striking aspects of the Complaint is that eight pages of "Factual Allegations" never mention a single Defendant. *See* Compl. ¶¶ 26–57. And even in the omnibus injunction request, the Complaint "treat[s] the defendants[ and] plaintiffs … as a unified whole," even though the Supreme Court's "decisions make clear that 'standing is not dispensed in gross.'" *Murthy*, 144 S. Ct. at 1988 (quoting *TransUnion*, 594 U.S. at 431). That causal link is even more attenuated by Plaintiffs' *only* theory of standing depending on the alleged injury of their journalist employees—third-parties to this suit. *See Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) ("Ordinarily, a party must assert its own legal rights and cannot rest its claim to relief on the legal rights of third parties." (cleaned up)).

So, too, for redressability. *See FDA*, 602 U.S. at 380 ("The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" (citation omitted)). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 594 U.S. at 427 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019). When a defendant has not harmed the plaintiff, "there is no injury for a federal court to redress." *Casillas*, 926 F.3d at 332. And that is the case here. The Complaint fails to allege an Article III injury-in-fact, let alone an injury traceable to a particular Defendant. Accordingly, "there is no injury for [this] federal court to redress." *Id.*

### 2.   Plaintiffs Do Not Have Standing For Their Facial-Overbreadth Claim (Count II).

Plaintiffs cannot sustain a facial challenge for much the same reasons. But the pre-enforcement facial challenge calls for a distinct standing inquiry. *See Justice*, 771 F.3d at 292. "To prove standing to raise a First Amendment facial challenge," "a plaintiff must produce evidence of 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by

statute.'" *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006)). Generally, "[i]n First Amendment pre-enforcement challenges, chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Justice*, 771 F.3d at 291 (citation and internal quotation omitted). Insufficient for Article III, though, is alleging "subjective chill"—instead, it requires a showing that Plaintiffs are "seriously interested in disobeying," and Defendants are "seriously intent on enforcing, the challenged measure." *Id.* (citation and internal quotation omitted). That is because facial challenges already "strain the limits of the federal courts' constitutional authority to decide only actual 'Cases' and 'Controversies.'" *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2428 (2024) (Alito, J., concurring).

At best, Plaintiffs allege Act 259 proscribes their newsgathering. But Act 259 does not "proscribe[]" *that* conduct. *See Barbour*, 529 F.3d at 545. Act 259 says only: "No person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A). There is *zero* mention of newsgathering—recording, photographing, interviewing, monitoring, or otherwise observing peace officers. *Infra* Section II.A, B. An Article III injury that is not. And the Complaint, too, fails to link *these* Defendants to Plaintiffs' alleged chilling harm or demonstrate how it might be redressed for the same reasons—a wholesale failure to raise *any* allegations related to a single named Defendant. *See* Compl. ¶¶ 26–57.

**3.    Plaintiffs Do Not Have Standing For Their Due Process Claim (Count III).**

Fifth Circuit precedent also slams the door shut on Plaintiffs' void-for-vagueness standing theory. A plaintiff who has "never been arrested or prosecuted for violating" a criminal statute "lack[s] standing to preemptively challenge [it] under the Due Process Clause." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024), *cert. denied sub nom. Nat'l Press Photographers v. Higgins*, No. 23-1105, __ S. Ct. __, 2024 WL 4426550 (U.S. Oct. 7, 2024). In other words, when "the available

evidence suggests that Defendants have never enforced [the statute] against Plaintiffs (or anybody else)," "[t]he issue of whether the [challenged] provisions are unlawfully vague in their proscriptions is therefore a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id.* So here. Without evidence of any arrest or prosecution (especially as of July 31, 2024), Plaintiffs lack standing to assert their vagueness claim. *See* Burns Decl. ¶¶ 9–10; Moore Decl. ¶ 8.

### C. Attorney General Murrill and Colonel Hodges Are Entitled to Sovereign Immunity.

**1.** The claims against Attorney General Murrill and Colonel Hodges must be dismissed because both are entitled to sovereign immunity. "In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). That jurisdictional bar extends to "suits against state officials or agencies that are effectively suits against a state," including official-capacity claims. *Id.* Thus, "unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit." *Id.*

Sovereign immunity bars this suit against Attorney General Murrill and Colonel Hodges. Each is a state official sued only in his or her "official capacity." Compl. ¶¶ 23 (Murrill), 24 (Hodges). Accordingly, the claims against these Defendants "are effectively suits against a state," which are barred under the Eleventh Amendment. *City of Austin*, 943 F.3d at 997.

**2.** Plaintiffs could avoid that bar only by invoking the *Ex parte Young* equitable exception, which "permits plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law." *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022). But they cannot satisfy that exception for at least two independent reasons.

*First*, Plaintiffs do not allege an "ongoing violation[] of federal law," *id.*—and that is fatal. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ("It is true that a complaint must allege that the defendant *is violating* federal law."). Indeed, Plaintiffs concede they sued before Act 259

had any effect. *See* Compl. ¶ 5. Their repeated claim that Act 259 "*will* directly burden the exercise of First Amendment rights," Compl. ¶¶ 37, 39, 49 (emphasis added), effectively admits that there is no *ongoing* violation of federal law right now. That independently forecloses any invocation of *Ex parte Young* here. *See NiGen Biotech*, 804 F.3d at 394 n.5 (distinguishing the "similar but not identical" Article III standing requirement that a plaintiff show "ongoing harm *or* a threat of imminent harm" (emphasis added)); *see, e.g.*, *Williams v. Davis*, No. 22-30181, 2023 WL 119452, at *6 (5th Cir. Jan. 6, 2023) (per curiam) (no allegation of "ongoing conduct" in the pleadings, so case could not proceed against Louisiana State Police Superintendent).

*Second*, Plaintiffs do not allege that Attorney General Murrill and Colonel Hodges have the requisite authority to enforce Act 259. To invoke *Ex parte Young*, a plaintiff must allege that "the officer sued has *some* connection with the enforcement of the challenged act." *Scott*, 28 F.4th at 672 (cleaned up). Although the Fifth Circuit's conception of "how much of a 'connection' has been hard to pin down," "some guideposts have emerged": (1) "an official must have more than the general duty to see that the laws of the state are implemented"; (2) "the official must have the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty"; and (3) "enforcement means compulsion or constraint." *Id.* (cleaned up). As to the last requirement, "[i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.* The Complaint fails under each of these guideposts.

Beginning with Attorney General Murrill, the Complaint emphasizes that she is the Attorney General and chief legal officer of the state, and so may, "upon the written request of a district attorney, … advise and assist in the prosecution of any criminal case." Compl. ¶ 23 (quoting La. Const. art. IV § 8). But these are just allegations that Attorney General Murrill has a "general duty to see that the laws of the state are implemented," which is insufficient in the Fifth Circuit. *Scott*, 28 F.4th at 672. Indeed, "the Attorney General only has the authority to advise and assist in the prosecution of a

12

criminal case upon request of a district attorney, and/or when authorized for cause by a court which would have original jurisdiction." *White Hat v. Landry*, 475 F. Supp. 3d 532, 549 (M.D. La. 2020) (citing La. Const. art. IV § 8, art. V § 26); *see Doe v. Jindal*, 2011 WL 3664496, at *3 (M.D. La. Aug. 19, 2011) (similar); *Robicheaux v. Caldwell*, 986 F. Supp. 2d 749, 752 (E.D. La. 2013) ("The Attorney General's sweeping responsibility to enforce the laws of the State of Louisiana lacks the *Ex parte Young* specificity nexus between the Attorney General and the alleged unconstitutional provisions that is essential to defeat sovereign immunity.").

Skirting that commonsense conclusion, Plaintiffs claim that in February, the Attorney General entered a cooperative endeavor agreement with the Orleans Parish District Attorney that would give her authority to "to prosecute any and all criminal matters in Orleans Parish resulting from an arrest or investigation conducted by Louisiana State Police." Compl ¶ 23. But that is a far cry from an allegation that Attorney General Murrill has a "particular *duty* to enforce" *this* Act through "compulsion or constraint." *Scott*, 28 F.4th at 672 (emphasis added); *see, e.g.*, *Burkette v. Travis*, 2024 WL 1253920, at *9 (M.D. La. Feb. 23, 2024) ("he had no duty to get involved"), *report and recommendation adopted sub nom. Burkette v. E. Feliciana Par. Sheriff*, 2024 WL 1253594 (M.D. La. Mar. 22, 2024). That means Attorney General Murrill "is not a proper defendant under *Ex parte Young*" and the claims against her must be dismissed. *Scott*, 28 F.4th at 672.

So, too, with Colonel Hodges. The Complaint emphasizes Colonel Hodges is the Superintendent of the Louisiana State Police, who is charged to "prevent and detect crime, apprehend criminals, enforce the criminal and traffic laws of the state, [and] keep the peace and good order in the state in the enforcement of the state's police powers." Compl. ¶ 24 (citing La. R.S. 40:1379(A)). But again, such allegations of a "general duty to see that the laws of the state are implemented" are insufficient. *Scott*, 28 F.4th at 672. Plaintiffs do not allege that Colonel Hodges would implement Act 259 through "compulsion or constraint." *Id.* Their allegations stray afield from ordinary examples

13

of compulsion and constraint like "prohibiting payment of claims under [an] abortion statute," "rate-setting," "sending letters threatening formal enforcement," or a "threat of criminal prosecution." *City of Austin*, 943 F.3d at 1001–02 (collecting cases). These examples underscore that *Ex parte Young* does not save Plaintiffs' claims against Colonel Hodges.

As a final point, neither Attorney General Murrill nor Colonel Hodges have shown "a demonstrated willingness" to exercise any duty to enforce Act 259. On all fours is *National Press Photographers Association v. McCraw*. Like there, Plaintiffs here do not even allege that Defendants or their agencies actually enforced the Act or attempted to prosecute anyone for an alleged violation of the Act—"not even a scintilla of enforcement. Not even an iota of a scintilla. Zilch." 90 F.4th at 786; *see* Burns Decl. ¶¶ 9–10; Moore Decl. ¶ 8. Even if "the *assumed* substantial threat of future enforcement" qualifies as an injury-in-fact under the Article III standing analysis, *supra* Section I.B., such a conclusion "does not necessarily conflict with the fact that Defendants have not shown a demonstrated willingness to exercise [any alleged] enforcement duties under *Ex parte Young.*" *Nat'l Press Photographers*, 90 F.4th at 786. Put otherwise: The *Ex Parte Young* analysis does not relax for a First Amendment case. *See id.* Attorney General Murrill and Colonel Hodges are plainly entitled to sovereign immunity and dismissal of Plaintiffs' claims against them.

*     *     *

The Court lacks jurisdiction. The proper course, then, is to dismiss without prejudice and proceed no further.

## II.    The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6) For Failure To State A Claim For Relief.

If the Court proceeds to the merits, Plaintiffs' failure to state a claim for relief under the First Amendment (Counts I and II) or the Fourteenth Amendment (Count III) also warrants dismissal with prejudice of their Complaint.

14

### A. Plaintiffs' First Amendment As-Applied Claim Fails (Count I).

Plaintiffs cannot state a plausible as-applied First Amendment claim. Strikingly, Plaintiffs failed to allege any application of Act 259 at all, *supra* Section I.A, B, and no one in Defendants' orbit has even issued an order, made an arrest, or prosecuted a case under Act 259. Burns Decl. ¶¶ 9–10; Moore Decl. ¶ 8. No matter the hypothetical application, though, Plaintiffs' claim fails for at least three reasons: (1) the Act does not regulate speech or expressive conduct; (2) if it did, the Act would still be a content-neutral reasonable time, place, and manner restriction; and (3) in all events, the Act survives even intermediate scrutiny.

**1.** Act 259 regulates conduct, not speech. The First Amendment protects "the freedom of speech." U.S. Const. amend. 1. Although sometimes "generally applicable regulations of conduct" may raise expressive-conduct or speech issues, that is only when "a particular act constitutes protected speech, rather than unprotected conduct." *Hines v. Pardue*, No. 23-40483, __ F.4th __, 2024 WL 4297014, at *4 (5th Cir. Sept. 26, 2024) (cleaned up). That means, even for an as-applied challenge, the first step is identifying whether the law primarily affects speech or unprotected conduct "by looking at what triggers coverage under the statute." *Id.* at *5 (cleaned up). That laws "regulating conduct often have incidental effects on speech" "does not require courts to treat them as if they were regulations of speech." *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020); *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."). To be subject to First Amendment scrutiny, the law must be "specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Under the plain terms of Act 259, "what triggers coverage" is physical encroachment— "approach[ing]" into a buffer zone—not speech. *See Hines*, 2024 WL 4297014, at *5. Again, the text of the Act provides: "No person shall knowingly or intentionally *approach* within twenty-five feet of a

15

peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A) (emphasis added). So the Act applies to anyone who "approaches" an officer after being told to stay back. *Id.* No more, no less.

What the Act does *not* say tells the rest of the story. Nothing in the Act mentions newsgathering, recording, photographing, or documenting. *Contra* PI Mem. at 17. The Act does not ban "verbal interruptions of police officers," *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), or "forbid[] any person to interview" an officer, bystander, or victim, *In re Express-News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982). The Act does not give officers license to confiscate a journalist's camera, physically block the journalist, or arrest a journalist for recording. Nor does the text of the Act prohibit "mak[ing] a video recording of law enforcement activity." *Ariz. Broads. Ass'n v. Brnovich*, 626 F. Supp. 3d 1102, 1105 (D. Ariz. 2022). Like the buffer zone law in *Nicodemus*, "[n]ever once does [the Act] permit law enforcement to stop the public's ability to record." 2024 WL 139248 at *7.

In truth, there is nothing inherently expressive about what the Act *does* proscribe— "approach[ing] within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties." La. R.S. 14:109(A). Nor do Plaintiffs say otherwise. Act 259 is thus nothing more than a movement restriction, not a speech restriction. *See Nat'l Press Photographers*, 90 F.4th at 788 ("These are flight restrictions, not speech restrictions."). Because Act 259 has "nothing to do with speech or even expressive activity," it does "not implicate the First Amendment" at all. *Id.* The Court's analysis can end there.

Sidestepping that threshold inquiry entirely, Plaintiffs complain that their ability to effectively record and newsgather may be hampered by Act 259. The right to record and gather news, though, "is not absolute," *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017), and the right extends only to "news gathering by 'means within the law,'" *Villarreal v. City of Laredo*, 94 F.4th 374, 396 (5th Cir. 2024) (en banc) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681–82 (1972)). And that certainly does

not include "a right to put a mic at the officer's mouth, or that of a victim, suspect, informant, arrestee, or witness, or to put a camera in their faces." *Nicodemus*, 2024 WL 139248 at *7.

To the extent Plaintiffs claim some special status as "journalists" or "newsgatherers," the Supreme Court "has been unequivocal that there is no journalist privilege or immunity from prosecution under generally applicable law." *Villarreal*, 94 F.4th at 396. "Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal." *Id.* (quoting *Branzburg*, 408 U.S. at 684–85). Nor are Plaintiffs entitled to some heightened status here.

**2.** If the First Amendment were implicated (and it is not), the Act is plainly a content-neutral law with only incidental impact on speech (if any). Here, the neutrality inquiry is easy because Act 259's text "is agnostic as to content." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022). Again, the Act's text says only that "[n]o person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A). It is plainly content neutral with minimal incidental effects on speech.

On Plaintiffs' telling (at 14–15), the Act is content-based because it "inevitably will discourage filming the police." That is just wrong. Generally applicable buffer zones laws are content-neutral when a violation of "the Act depends not on *what* [people] say, but simply on *where* they say it." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (cleaned up) (emphases added). And "a facially neutral law" like Act 259 "does not become content based simply because it may disproportionately affect speech on certain topics." *Id.* at 480.

**3.** Even accepting Plaintiffs' flawed theory, at most, intermediate scrutiny applies to Act 259 as a content-neutral restriction. *See Hines*, 2024 WL 4297014 at *3 n.22 (courts "apply intermediate

17

scrutiny only if the law regulates speech directly (and in a content-neutral way), not merely incidentally"). Indeed, Plaintiffs do not contend that Act 259 constitutes a viewpoint-discriminatory law besides a fleeting citation to *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023). Nor could they.

The Act satisfies the intermediate scrutiny rubric. It need only "further[] an important or substantial governmental interest" that is "unrelated to the suppression of free expression" and that incidentally burdens First Amendment speech "no greater than is essential to the furtherance of that interest." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994) (cleaned up). Act 259 "need not be the least speech-restrictive means of advancing the Government's interests," so long as it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (cleaned up).

Begin with the incidental burden. Sure, Act 259 might "prevent[] a recording within the 25-foot radius, but not every recording." *Nicodemus*, 2024 WL 139248 at *7. Given today's technology, "it seems rather strained to argue that citizens will suffer a substantial burden on their ability to record meaningfully." *Id.* And imposing what amounts to the "width of a two-car garage, or the length of a typical garden hose, or just small steps beyond an NBA three-point line, isn't a substantial burden on the right to record." *Id.*

That incidental effect is the molehill next to the mountain of substantial government interests motivating Act 259. To start, perhaps most obviously, Act 259 protects peace officers lawfully engaged in their duties. Burns Decl. ¶¶ 6–7; *see, e.g.*, *Ass'n of Club Executives of Dallas, Inc. v. City of Dallas*, 83 F.4th 958, 966 (5th Cir. 2023) (substantial interest in lowering violence and crime rates), *cert. denied*, 144 S. Ct. 1064 (2024); *Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 511 (5th Cir. 2009) (substantial interest in "providing a safer and orderly learning environment"); *LLEH, Inc. v. Wichita Cnty.*, 289 F.3d 358, 366 (5th Cir. 2002) (substantial interest in "protecting the health, safety, and welfare of SOB patrons and County citizens"); *Vivint La., LLC v. City of Shreveport*, 213 F. Supp. 3d

18

821, 825 (W.D. La. 2016) (substantial interest in protecting safety and privacy of residents from uninvited solicitors). And Plaintiffs, too, seem to all but concede that plainly important state interest, albeit one they believed better addressed by other laws. *See* PI Mem. at 20, 22 (Louisiana has justifiable "concerns about safety or obstruction" but could have "achieved its interests by relying on already available generic criminal statutes").

Moreover, Act 259, like Indiana's buffer zone law, (1) "affords law enforcement officers the uninterrupted and unimpeded ability to do their jobs, including as examples the need to investigate, secure evidence and statements, and conduct other official police business safely"; (2) "protects the integrity of government processes as well as suspects, victims, witnesses, and other citizens interacting with law enforcement from harms"; (3) "promotes officer and public safety by ensuring that someone at a close distance cannot harm or hinder those charged with and engaged in their lawful duties"; (4) "protects arrestees, suspects, victims, informants, witnesses, and other citizens from harm and inappropriate disclosure of confidential investigative facts" by "dissipat[ing] the risk of exposure or marginalization of a victim who might be endangered or embarrassed from immediately adjacent recording" and "protect[ing] the privacy interests of third-parties who might be targeted (but not charged) or who might be witnesses or informants"; (5) "mitigates impairing law enforcement's ability to acquire information effectively or endangering their safety by distracting them from their official duties with happenings in their immediate vicinity"; and (6) aids in "effectuating arrests and the like." *Nicodemus*, 2024 WL 139248, at *4–5 (citing Ind. Code § 35-44.1-2-14). Any and all of these substantial government interests justify Act 259 under an intermediate scrutiny framework.

Taking an axe to a strawman, Plaintiffs claim that "criminalizing peaceful, nonobstructive newsgathering advances no legitimate—let alone compelling—government interest." PI Mem. at 15. But that crumbles under an ounce of pressure from the above mountain of reasons the State may

19

legitimately want to prevent encroachment on an officer performing his duties. The State's interests are plainly important, substantial, and achieved effectively by Act 259.

Off the mark, too, is Plaintiffs' reliance on *Perkins v. Hart*, No. 22-30456, 2023 WL 8274477, at *7 (5th Cir. Nov. 30, 2023). There, the Fifth Circuit panel considered a First Amendment retaliation claim against an officer who had "verbally taunted and shoved" a plaintiff and "intentionally moved from side to side to block [the plaintiff] from recording the arrest." *Id.* at *6–7. Nowhere does the opinion say anything about a maximum perimeter for buffer zones. At most, the unpublished opinion's fact section notes the plaintiff "was clearly close to the arrest scene" and not impeding the officer's actions. *Id.* at *7. That is a far cry from some broad legal principle about a maximum allowable perimeter for law enforcement to carry out its duties that Plaintiffs try to make it out to be.

\*     \*     \*

Summed up: Act 259 does not implicate the First Amendment and, at most, is warranted as a content-neutral reasonable time, place, and manner restriction, plainly justified by the State's interest in officers' and the public's safety. Plaintiffs thus fail to plausibly allege an as-applied First Amendment claim.

### B.  Plaintiffs' Facial-Overbreadth Claim Fails (Count II).

Plaintiffs also cannot maintain a facial challenge to Act 259. "[F]acial challenges are disfavored." *Moody*, 144 S. Ct. at 2408–09. All nine Justices recently emphasized this point. *See id.* at 2409 (Barrett, J., concurring) (emphasizing "the dangers of bringing a facial challenge"); *id.* at 2411 (Jackson, J., concurring in part and concurring in the judgment) ("[A]s all Members of the Court acknowledge, plaintiffs bringing a facial challenge must clear a high bar."); *id.* at 2428 (Alito, J., concurring in the judgment) ("Such challenges are strongly disfavored."). Plaintiffs' choice to litigate their case as a facial challenge thus "comes at a cost" because the Supreme Court "has made facial challenges hard to win." *Id.* at 2397 (maj. op.).

To successfully mount such a challenge, "the question is whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody*, 144 S. Ct. at 2397 (cleaned up); *see also United States v. Williams*, 553 U.S. 285, 292 (2008) (requiring plaintiff to establish that a statute "prohibits a substantial amount of protected speech," "relative to [its] plainly legitimate sweep"); *see United States v. Hansen*, 599 U.S. 762, 770 (2023) ("To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."). "This is a high hurdle to overcome." *Justice*, 771 F.3d at 296. "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *United States v. Bonin*, 932 F.3d 523, 536–37 (7th Cir. 2019) (cleaned up). Plaintiffs here have failed in satisfying that burden. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 802 (1984) ("It would therefore be inappropriate . . . to entertain an overbreadth challenge" where plaintiffs "have simply failed to demonstrate" the requisite imbalance.).

**1.** "The first step in the proper facial analysis is to assess the [Act's] scope." *Moody*, 144 S. Ct. at 2398. This means the Court "must evaluate the full scope of the law's coverage" by asking, "What activities, by what actors, do the laws prohibit or otherwise regulate?" *Id.* at 2409, 2398. So start with the text: "No person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A).

As detailed at length above, Act 259 prohibits "approach[ing]" inside 25 feet after being ordered to retreat or to stop approaching by a peace officer. *Id.* That the Act proscribes conduct only makes this an easy case: "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Virginia*, 539 U.S. at 124. In all events, given that sweep, it can apply to anyone within 25 feet

of a peace officer executing his lawful duties. *See supra* Section II.A. Under the Act, so long as the

individual is not "approach[ing]" after an order, onlookers are free to otherwise record and newsgather

just as much as they remain free to yell obscenities at an officer performing his lawful duties—

reprehensible as that may be. *See Jordan v. Jenkins*, 73 F.4th 1162, 1168 (10th Cir. 2023), *cert. denied sub*

*nom. Donnellon v. Jordan*, 144 S. Ct. 1343 (2024).

So onto the plainly legitimate sweep when Act 259 might apply. Consider just a few examples

of the Act possibly in action:

- An officer investigates a gas leak downtown and asks nearby pedestrians to stay clear.

- An officer responds to a domestic disturbance call and asks a concerned neighbor for room.

- An officer maintains order around a fallen power line after a storm, directing people to keep their distance from the hazardous area.

- An officer establishes a safety boundary at a festival when an intoxicated person becomes aggressive, keeping others at a safe distance.

- An officer sets up a perimeter around a wildlife rescue effort in a residential area, asking residents to keep back to avoid startling the animal.

- An officer detains a rowdy Saints fan outside the Superdome and orders tailgaters to step back.

- An officer instructs parade goers to keep their distance from a broken-down Mardi Gras float.

- An officer pulls over a vehicle and instructs a curious fellow motorist to stay back.

- An officer assists paramedics at a crowded bus terminal and instructs onlookers to step away.

- An officer investigates a suspicious bag left outside the Capitol and instructs curious passersby to keep clear.

These are just a few of innumerable ways Act 259 furthers the public good without an ounce of speech

or expressive conduct implicated, much less burdened in any substantial way.

**2.** The Court's second consideration is then "to decide which of the [Act's] applications violate

the First Amendment, and to measure them against the rest." *Moody*, 144 S. Ct. at 2409. "In the absence

of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case." *Hansen*, 599 U.S. at 770. That requires stacking up "the numerator (the number of unconstitutional applications)" to the "denominator (the total number of possible applications)." *Moody*, 144 S. Ct. at 2430 (Alito, J., concurring).

As detailed above, the vast swath of the Act's applications have no First Amendment impact. On "the other side of the ledger, we find it pretty much blank." *Hansen*, 599 U.S. at 782 (emphasizing claimant's inability "to identify a single prosecution" since law's inception); *see Moody*, 144 S. Ct. at 2409. Indeed, Plaintiffs' list of unconstitutional applications of the Act begins and ends with their own newsgathering rights. Compl. ¶ 14. Even on their best telling, Plaintiffs say that the Act "burden[s]" only "a *narrow* category of disfavored speech." PI Mem. at 19 (emphasis added). That proves the facial-challenge defect: An alleged *narrow* infringement on Plaintiffs' rights (albeit dubious) cannot outweigh the Act's abundant lawful applications. Without the requisite imbalance, Plaintiffs cannot succeed on their facial-overbreadth challenge.

Nor is it true *or* relevant to the facial-overbreadth analysis that other criminal statutes "already prohibit[] conduct that in fact interferes or threatens to interfere with law enforcement." PI Mem. at 15. *For one*, it is hard to imagine how Louisiana's obstruction laws already covered approaching an animal during a wildlife rescue or a drunken assailant at a music festival. *See supra* Section II.B.1. *Two*, that objection is to the wisdom of the law, not its constitutionality. *See Nebbia v. People of New York*, 291 U.S. 502, 537 (1934) ("With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal."). That wrong conclusion thus has nothing to do with the proper First Amendment analysis. *Cf. Burson v. Freeman*, 504 U.S. 191, 206–07 (1992) (holding a polling place buffer zone law was not overinclusive simply because voter intimidation laws exist).

Plaintiffs cannot carry their burden to demonstrate "a substantial number" of Act 259's "applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody*, 144 S. Ct. at 2397. Accordingly, their facial-overbreadth claim must also fail.

### C. Plaintiffs' Void-for-Vagueness Claim Fails (Count III).

Even beyond the obvious jurisdictional defects, *supra* Section I.B.3, Plaintiffs' vagueness claim also fails on its merits. "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause" requirement "that a law provide sufficient guidance such that a man of ordinary intelligence would understand what conduct is being prohibited." *Munn v. City of Ocean Springs*, 763 F.3d 437, 439 (5th Cir. 2014). The vagueness doctrine, though, is not implicated merely from "the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved." *Williams*, 553 U.S. at 306. Indeed, "perfect clarity and precise guidance have never been required." *Id.* at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). A criminal law is void for vagueness only if it (1) "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or (2) "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Plaintiffs lightly press both theories to no avail.

*First*, the fair notice argument: The Act precisely defines "the behavior that prompts a lawful dispersal order"—knowingly approaching within 25 feet of a law enforcement officer that has issued an order to stand back. *Bell v. Keating*, 697 F.3d 445, 462 (7th Cir. 2012). There are no surprises: The Act contains objective, easy-to-understand terms explaining what conduct it proscribes.

Plaintiffs contend that the distance of "twenty-five feet" is vague in practice. PI Mem. at 23. But it is hard to imagine how the Legislature could have been more clear, precise, or detailed in defining that distance. Indeed, much like Covid social-distancing mandates, "there is nothing vague about what the [buffer] provision requires—[25] feet of separation." *Case v. Ivey*, 542 F. Supp. 3d 1245,

1271 (M.D. Ala. 2021), *aff'd,* 2022 WL 2441578 (11th Cir. July 5, 2022). In fact, "it is difficult to envision a requirement with more mathematical precision." *Id.* Were there any doubt about how far is 25 feet, scienter kicks in: The Act criminalizes only "knowingly or intentionally" encroaching that 25-foot zone *and* provides a statutory defense for misunderstandings. La. R.S. 14:109(A), (C); *see Hill v. Colorado*, 530 U.S. 703, 732 (2000) ("[T]he first concern [regarding fair notice of prohibited conduct] is ameliorated by the fact that [the statute] contains a scienter requirement.").

*Second*, the arbitrary and discriminatory enforcement argument: Plaintiffs complain that an officer may give a retreat order for any or no reason without any standards. That ignores the reality of law enforcement in regards to *every* criminal statute: "As always, enforcement requires the exercise of some degree of police judgment." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). So, too, does Act 259. That independent judgment does not render the law unconstitutionally vague.

Nor does Act 259 contain some subjective call for an officer to make. Plaintiffs' cited cases illustrate the point. The Act does not require an officer to determine whether the bystander at issue is "annoying" or disruptive, *see Coates v. City of Cincinnati*, 402 U.S. 611 (1971), or deem a sound level excessive in his view, *see Tanner v. City of Virginia Beach*, 674 S.E.2d 848, 853 (Va. 2009) (invalidating ordinance because officers may differ in their perception of what levels of sound may exceed the rule's limits). Indeed, Plaintiffs' proposed exception for newsgathering would only inject the sort of subjectivity they claim to oppose.

## III.    The Court Should Deny Plaintiffs' Preliminary-Injunction Motion.

If the Court dismisses Plaintiffs' Complaint (on any ground), the most efficient path forward is to deny Plaintiffs' preliminary-injunction motion as moot. *See, e.g.*, *Bezet v. United States*, 276 F. Supp. 3d 576, 579 (E.D. La.) ("Because the Court finds that the Government's motion to dismiss should be granted, the Court will deny as moot Plaintiff's motion for partial preliminary injunction."), *aff'd*, 714 F. App'x 336 (5th Cir. 2017); *see also City of Alexandria v. FEMA*, 781 F. Supp. 2d 340, 342 n.1 (W.D.

La. 2011) (ordering that a pending Rule 12(b)(6) motion and preliminary-injunction motion be "denied as moot" upon dismissing for lack of subject matter jurisdiction under Rule 12(b)(1)). Accordingly, the Court should deny the motion as moot.

If the Court addresses the preliminary-injunction motion on the merits, it should deny the motion because Plaintiffs do not satisfy the ordinary factors warranting this "extraordinary" relief. *Munaf*, 553 U.S. at 689–90.

*First*, for all the reasons expressed above and incorporated by reference here, Plaintiffs are not likely to succeed on the merits of their claims. Specifically, this Court lacks subject matter jurisdiction for various reasons ranging from ripeness, to lack of standing, to sovereign immunity. *Supra* Section I. Even if the Court reached the merits, dismissal would be warranted because Plaintiffs have failed to state a claim for relief. *Supra* Section II. Assuming *arguendo*, however, that Plaintiffs could avoid dismissal, they are—*at the very least*—unlikely to succeed on the merits of their claims, particularly given the clear jurisdictional problems and the disfavored nature of Plaintiffs' facial challenge.

*Second*, Plaintiffs will not suffer any irreparable harm from the absence of an injunction. Plaintiffs' motion dedicates only one sentence to the issue—and that sentence simply invokes the merits. *See* PI Mem. at 24–25. For the same reasons that this case is not ripe, Plaintiffs lack standing, and Plaintiffs fail to state a claim, they also have not identified imminent irreparable harm. And to be specific: That Plaintiffs cannot point to any instance when Act 259 has been implemented against them, much less in an unconstitutional way, underscores Plaintiffs' inability to show any imminent irreparable harm. *See* Burns Decl. ¶¶ 9–10; Moore Decl. ¶ 8.

*Third*, for similar reasons, the equities and the public interest cut against an injunction. As explained, Plaintiffs face no imminent irreparable harm. On the other side of the ledger, both the State of Louisiana and the public would suffer from an injunction, particularly one that affects the implementation of Act 259 and its public safety benefits. *See, e.g.*, *E.T. v. Paxton*, 19 F.4th 760, 770 (5th

26

Cir. 2021) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." (cleaned up)). For these reasons, the equities and the public interest plainly counsel against an injunction.

The Court should deny the preliminary-injunction as moot or, alternatively, on the merits.

**PRAYER FOR RELIEF**

Defendants respectfully request that this Court grant Defendants' motion to dismiss and dismiss Counts I, II, and III of Plaintiffs' Complaint. The Court should also deny Plaintiffs' motion for a preliminary injunction as moot or, alternatively, on its merits.

Dated: October 15, 2024                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Caitlin Huettemann*
　　　　　　　　　　　　　　　　　　　　　　　CAITLIN HUETTEMANN (La #40402)
　　　　　　　　　　　　　　　　　　　　　　　  *Assistant Solicitor General*
　　　　　　　　　　　　　　　　　　　　　　　ZACHARY FAIRCLOTH (La #39875)
　　　　　　　　　　　　　　　　　　　　　　　  *Principal Deputy Solicitor General*
　　　　　　　　　　　　　　　　　　　　　　　OFFICE OF THE LOUISIANA ATTORNEY GENERAL
　　　　　　　　　　　　　　　　　　　　　　　1885 North Third Street
　　　　　　　　　　　　　　　　　　　　　　　Baton Rouge, LA 70804
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (225) 326-6766
　　　　　　　　　　　　　　　　　　　　　　　Facsimile:　(225) 326-6795
　　　　　　　　　　　　　　　　　　　　　　　huettemannc@ag.louisiana.gov
　　　　　　　　　　　　　　　　　　　　　　　fairclothz@ag.louisiana.gov

　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants Liz Murrill, in her official capacity as Attorney General of Louisiana, Robert P. Hodges, in his official capacity as Superintendent of the Louisiana State Police, and Hillar C. Moore, III, in his official capacity as District Attorney of East Baton Rouge Parish*