UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

DEEP SOUTH TODAY, *d/b/a* VERITE
NEWS, GANNETT CO., INC., GRAY
LOCAL MEDIA, INC., NEXSTAR MEDIA,
INC., SCRIPPS MEDIA INC., and TEGNA
INC.,

                *Plaintiffs*,

    v.

LIZ MURRILL, *in her official capacity as
Attorney General of Louisiana*, ROBERT P.
HODGES, *in his official capacity as
Superintendent of the Louisiana State Police*,
and HILLAR C. MOORE, III, *in his official
capacity as District Attorney of East Baton
Rouge Parish*,

                *Defendants*.

CASE NO. 3:24-cv-00623

**COMBINED OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
AND REPLY IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION**

**STERNBERG NACCARI & WHITE LLC**
Scott L. Sternberg, La. Bar No. 33390
M. Suzanne Montero, La. Bar No. 21361
935 Gravier Street, Suite 2020
New Orleans, LA 70112
Phone: (504) 324-1887
Fax: (504) 534-8961
scott@snw.law | suzy@snw.law

Katie Townsend*
ktownsend@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Fax: 202.795.9310

*\* admitted pro hac vice*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................................................. ii

SUMMARY OF ARGUMENT ............................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.    This Court has jurisdiction to consider Plaintiffs' challenge to HB 173. ........................... 2

    A.    Plaintiffs' constitutional challenges to the Act are ripe. .......................................... 3

    B.    Plaintiffs have standing to challenge the Act. ......................................................... 5

        i.    Plaintiffs have standing to bring a facial First Amendment claim. .............. 6

        ii.    Plaintiffs have standing to bring an as-applied First Amendment claim. ................................................................................................. 7

        iii.    Plaintiffs have standing to challenge the Act on vagueness grounds. ................................................................................................ 9

    C.    All Defendants are proper parties. ....................................................................... 10

II.    HB 173 is void for vagueness. ......................................................................................... 13

    A.    HB 173 violates the First Amendment. ................................................................ 16

    B.    HB 173 violates the First Amendment as applied to Plaintiffs' peaceful, nonobstructive newsgathering within twenty-five feet of a peace officer. ........... 16

    C.    HB 173 violates the First Amendment on its face. ............................................... 22

III.    A preliminary injunction should issue. ............................................................................ 24

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Agnew v. District of Columbia,*
    920 F.3d 49 (D.C. Cir. 2019) ............................................................... 14

*Am. C.L. Union of Ill. v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012) .................................................. 5, 8, 9, 20

*Ariz. Broads. Ass'n v. Brnovich,*
    626 F. Supp. 3d 1102 (D. Ariz. 2022) ........................................... 21, 24

*Ashcroft v. Am. C.L. Union,*
    542 U.S. 656 (2004)............................................................................ 5

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979)............................................................................ 9

*Bell v. Keating,*
    679 F.3d 445 (7th Cir. 2012) ........................................ 4, 15, 18, 22, 23

*Blitch v. City of Sidell,*
    260 F. Supp. 3d 656 (E.D. La. 2017) ................................................. 5

*Book People, Inc. v. Wong,*
    91 F.4th 318 (5th Cir. 2024) ....................................................... 13, 24

*Brown v. Kemp,*
    86 F.4th 745 (7th Cir. 2023) ................................................... 7, 17, 19

*Calhoun v. Collier,*
    78 F.4th 846 (5th Cir. 2023) ............................................................ 11

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
    596 U.S. 61 (2022)........................................................................... 19

*City of Chicago v. Morales,*
    527 U.S. 41 (1999)......................................................... 2, 13, 14, 15

*City of Houston v. Hill,*
    482 U.S. 451 (1987)......................................................................... 19

*City of Lakewood v. Plain Dealer Publ'g Co.,*
    486 U.S. 750 (1988)....................................................................... 2, 22

*Comput. & Commc'ns Indus. Ass'n v. Paxton,*
    No. 1:24-cv-849, 2024 WL 4051786 (W.D. Tex. Aug. 30, 2024) ............ 11, 12, 13

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022)................................................................................................. 9

*Doe 1 v. Landry*,
   909 F.3d 99 (5th Cir. 2018) .................................................................................... 22

*Doe v. Bolton*,
   410 U.S. 179 (1973)................................................................................................. 9

*Forsyth County v. Nationalist Movement*,
   505 U.S. 123 (1992)............................................................................................... 18

*Freedom from Religion Found. v. Abbott*,
   955 F.3d 417 (5th Cir. 2020) .................................................................................. 22

*Freedom Path, Inc. v. Internal Rev. Serv.*,
   913 F.3d 503 (5th Cir. 2019) .................................................................................... 4

*Garden Dist. Book Shop, Inc. v. Stewart*,
   184 F. Supp. 3d 331 (M.D. La. 2016).............................................................. 5, 22

*Glik v. Cunniffe*,
   655 F.3d 78 (1st Cir. 2011)........................................................................ 20, 21, 24

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010).......................................................................................... *passim*

*Hudson v. City of New Orleans*,
   174 F.3d 677 (5th Cir. 1999) .................................................................................. 10

*Hulbert v. Pope*,
   70 F.4th 726 (4th Cir. 2023) ................................................................................... 16

*In re Express News-Corp.*,
   695 F.2d 807 (5th Cir. 1982) .............................................................................. 7, 20

*Jordan v. Jenkins*,
   73 F.4th 1162 (10th Cir. 2023) ............................................................................ 7, 17

*Justice v. Hoseman*,
   771 F.3d 285 (5th Cir. 2014) ................................................................................. 7, 8

*Kolender v. Lawson*,
   461 U.S. 352 (1983)..................................................................................... 1, 15, 16

*Marcavage v. City of Chicago*,
   659 F.3d 626 (7th Cir. 2011) .................................................................................. 16

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ................................................................................ 17, 23

*Mi Familia Vota v. Ogg*,
    105 F.4th 313 (5th Cir. 2024) .............................................................. 11

*Moody v. NetChoice*,
    144 S. Ct. 2383 (2024) .......................................................................... 22

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2024) ........................................... 9, 11, 12, 17

*Netflix, Inc. v. Babin*,
    88 F.4th 1080 (5th Cir. 2023) .............................................................. 24

*Perkins v. Hart*,
    No. 22-30456, 2023 WL 8274477 (5th Cir. Nov. 30, 2023) .......................................... 21, 24

*Pouillon v. City of Owosso*,
    206 F.3d 711 (6th Cir. 2000) .............................................................. 16

*Randall v. Sorrell*,
    548 U.S. 230 (2006) .............................................................................. 23

*Reed v. Lieurance*,
    863 F.3d 1196 (9th Cir. 2017) ...................................................... 16, 20

*Reps. Comm. for Freedom of the Press v. Rokita*,
    No. 1:23-cv-1805, 2024 WL 4333137 (S.D. Ind. Sept. 27, 2024) ............................... *passim*

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) .............................................................. 4

*Seals v. McBee*,
    898 F.3d 587 (5th Cir. 2018) .......................................................... 3, 6

*Serafine v. Branaman*,
    810 F.3d 354 (5th Cir. 2016) .............................................................. 20

*Shuttlesworth v. City of Birmingham*,
    382 U.S. 87 (1965) ............................................................ 1, 16, 17, 24

*Smith v. Exec. Dir. of Ind. War Mem'ls Comm'n*,
    742 F.3d 282 (7th Cir. 2014) .............................................................. 18

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .............................................................................. 19

iv

*Speech First, Inc. v. Fenves*,
 979 F.3d 319 (5th Cir. 2020) ...................................................... 6

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) ................................................................... 3

*Terrell v. Allgrun*,
 114 F.4th 428 (5th Cir. 2024) ............................................. 20, 24

*Thornhill v. Alabama*,
 310 U.S. 88 (1940) ..................................................................... 2

*Turner v. Lieutenant Driver*,
 848 F.3d 678 (5th Cir. 2017) ..................................................... 1

*Turtle Island Foods, S.P.C. v. Strain*,
 65 F.4th 211 (5th Cir. 2023) ...................................................... 6

*United States v. Stevens*,
 559 U.S. 460 (2010) ................................................................... 2

*Virginia v. Am. Booksellers Ass'n*,
 484 U.S. 383 (1988) ................................................................... 3

*White Hat v. Landry*,
 475 F. Supp. 3d 532 (M.D. La. 2020) ..................................... 12

*World Wide Street Preachers Fellowship v. Town of Columbia*,
 245 F. App'x 336 (5th Cir. 2007) ............................................ 16

**Statutes:**

La. R.S. 14:97 .............................................................................. 20

La. R.S. 14:108 ............................................................................ 19

La. R.S. 14:109 ........................................................................ 1, 12

La. R.S. 14:329 ...................................................................... 19, 24

La. R.S. 40:1379 .......................................................................... 12

La. R.S. 40:2402 .......................................................................... 12

**Other Authorities:**

Louisiana Attorney General's Office and Orleans Parish District Attorney's Office
 Cooperative Endeavor Agreement (Feb. 5, 2024) ................... 13

## SUMMARY OF ARGUMENT

Every state faces an obligation to ensure both the public's safety and the free exercise of First Amendment rights, including the "undoubted right to gather news." *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017) (citation omitted).  Louisiana is one of just two states that, upsetting that balance, has enacted "a twenty-five-foot forcefield" within peace officers may order members of the public—including journalists engaged in lawful newsgathering—to leave for any reason or for no reason at all.  *Reps. Comm. for Freedom of the Press v. Rokita* (*Reporters Committee*), No. 1:23-cv-1805, 2024 WL 4333137, at *11 (S.D. Ind. Sept. 27, 2024). Only Louisiana's law is in effect as of this filing, because a federal court in Indiana recently concluded that an identical law passed in that state was "void for vagueness and therefore unconstitutional," *id.* at *10.

This Court should do the same.  Under the plain text of La. R.S. 14:109 (hereinafter "HB 173" or the "Act"), the press and public may "stand on a public sidewalk" in Louisiana "only at the whim of any police officer," *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90 (1965)—a result that violates both the First Amendment and the Due Process Clause under settled Supreme Court and Circuit precedent.  Remarkably, rather than dispute the conclusion that the Act cedes authority to restrain the exercise of First Amendment rights to the "moment-to-moment judgment of the policeman on his beat," *Kolender v. Lawson*, 461 U.S. 352, 360 (1983) (citation omitted), Defendants choose to embrace it.  The crux of their opposition brief is that standardless discretion is, in their view, just "the reality of law enforcement," ECF No. 30-1 at 25 (hereinafter, "Defs.' Opp."), and that "reasonable prosecutorial triage" will spare Plaintiffs reporters' the threat of arrest and imprisonment under a law that—by its plain terms— criminalizes First Amendment activity they engage in every day, *id.* at 6.

1

But that is not how our Constitution works.  The Supreme Court has squarely held that a dispersal-order statute that "does not provide any guidance to the officer deciding whether such an order should issue" is invalid.  *City of Chicago v. Morales*, 527 U.S. 41, 62 (1999).  And whether the issue is Plaintiffs' standing to challenge HB 173 or the merits of their challenge, the First Amendment does not license a federal court to "uphold an unconstitutional statute merely because the Government promise[s] to use it responsibly," *United States v. Stevens*, 559 U.S. 460, 462 (2010); the suggestion that officials "will act in good faith and adhere to standards absent from the ordinance's face . . . is the very presumption that the doctrine forbidding unbridled discretion disallows," *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988).  Instead, where only "unbridled discretion in a government official over whether to permit or deny expressive activity" stands between a plaintiff and the loss of their rights, *id.* at 755, "courts must entertain an immediate facial attack on the law," *id.* at 759.  Waiting for "[p]roof of an abuse of power" in a "particular case" would only serve to inflict an irreparable chill on vital newsgathering and speech.  *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).

That black-letter rule controls here.  To safeguard the exercise of First Amendment rights in Louisiana—including Plaintiffs' right to gather the news and inform the public about the work of law enforcement—Plaintiffs respectfully urge this Court to deny Defendants' motion to dismiss and enter a preliminary injunction against enforcement of HB 173.

## ARGUMENT

## I.     This Court has jurisdiction to consider Plaintiffs' challenge to HB 173.

Because the merits of this case are straightforward, *see Reporters Committee*, 2024 WL 4333137, at *11, Defendants lodge a grab-bag of objections to reaching them, the thrust of which is that the Act "has never actually been enforced against Plaintiffs" by these Defendants, Defs.' Opp. at 6.  That description fits, by definition, every pre-enforcement challenge to a statute's

constitutionality. *But see Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (finding standing to bring "as-applied preenforcement challenge" to statute that had never been enforced against plaintiffs); *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392–93 (1988) (finding standing to bring "pre-enforcement facial challenge" to statute not yet in effect). Plaintiffs are already being injured by the Act—injuries that would be redressed by restraining Defendants from enforcing the law against them—and they are entitled to seek just that relief in this Court.

    A.    <u>Plaintiffs' constitutional challenges to the Act are ripe.</u>

Defendants first couch their objection that the Act "has never actually been enforced against Plaintiffs" as a ripeness issue. Defs.' Opp. at 6. To the extent the label matters, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (noting that ripeness and Article III standing "boil down to the same question" in pre-enforcement challenges (internal citation omitted)), the requirements of ripeness "are easily satisfied here," *id.* at 167 (so holding in as-applied pre-enforcement challenge under the First Amendment); *see also Reporters Committee*, 2024 WL 4333137, at *7 (challenge to identical law in identical posture was ripe).

The analysis of that issue starts with the hardship of denying Plaintiffs prompt review—a question that largely duplicates the injury inquiry for purposes of standing. If Plaintiffs can obtain review only *after* the Act is enforced against them, they will be "forc[ed] to choose between refraining from core political speech on the one hand," by obeying an unconstitutional order that prevents them from gathering the news, or "risking . . . criminal prosecution on the other[.]" *Susan B. Anthony List*, 573 U.S. at 168. But both the Supreme Court and Fifth Circuit have made clear that a plaintiff need not "bet the farm" or risk being "arrested in connection with violating [a] statute" that, by its terms, regulates them in order to obtain judicial review—even when the statute has "never been applied." *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018)

3

(internal citation omitted); *see also Reporters Committee*, 2024 WL 4333137, at *3 (plaintiffs need not have received an order under identical Indiana law to bring pre-enforcement challenge).

After all, the fact "that the ordinance applies only if triggered does not attenuate [Plaintiffs'] likelihood of prosecution under [it] or subvert the concreteness of [Plaintiffs'] chilling injury," because "when one cannot know what triggers the ordinance such that it will be enforced, he may fairly assume that it can and will always be enforced." *Bell v. Keating*, 679 F.3d 445, 455 (7th Cir. 2012). As Plaintiffs explain in their declarations, because officers might or might not—at their sole discretion—opt to trigger the prospect of criminal liability any time Plaintiffs' journalists approach, the Act *already* requires them to change their behavior and discourages them from covering events that can only be documented from within 25 feet. *See* Decl. of Richard Erbach ("Erbach Decl."), ECF No. 19-1 ¶¶ 7–9; Decl. of Patrick Thomas ("Thomas Decl."), ECF No. 19-1 ¶¶ 13, 17; Decl. of Curtis Sprang ("Sprang Decl."), ECF No. 19-1 ¶ 16; Decl. of Jazmin Thibodeaux Chretien ("Thibodeaux Decl."), ECF No. 19-1 ¶ 10.

The second prong of the ripeness inquiry—whether further factual development would be necessary—is likewise straightforward. Here, all of the questions presented by Plaintiffs' claims are "purely legal." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008). Whether the statute is void for vagueness, for instance, turns exclusively on its text, as the federal district court in Indiana underlined in striking down that state's identical law. *See Reporters Committee*, 2024 WL 4333137, at *11. The question whether the Act violates the First Amendment on its face likewise has nothing to do with the facts of any individual enforcement action. *See Freedom Path, Inc. v. Internal Rev. Serv.*, 913 F.3d 503, 508 (5th Cir. 2019) ("On a facial challenge, however, we do not look beyond the text.").

4

Measuring HB 173's constitutionality against a proposed course of conduct for Plaintiffs'
as-applied claim—asking, in other words, "is there a legally sufficient basis for [Defendants] to
place a burden on [P]laintiffs' First Amendment rights?"—likewise "presents a legal question[.]"
*Blitch v. City of Sidell*, 260 F. Supp. 3d 656, 663 (E.D. La. 2017).  The Seventh Circuit's
decision in *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012), is
instructive because it also involved an as-applied pre-enforcement challenge predicated on a
proposed course of newsgathering about law enforcement performing their duties in public.
There, the court found no need for any factual development to determine that the government has
no legitimate interest in prohibiting proposed newsgathering that "will be otherwise lawful—that
is, not disruptive of public order or safety, and carried out by people who have a legal right to be
in a particular public location and to watch and listen to what is going on around them."  *Id.* at
606.  The same holds true here.[1]  Plaintiffs' constitutional challenges to the Act are ripe.

    B.    Plaintiffs have standing to challenge the Act.

    That the Act was not enforced against Plaintiffs before they brought a pre-enforcement
challenge is likewise unpersuasive when repackaged as a standing argument.  *See Reporters
Committee*, 2024 WL 4333137, at *3 (finding standing to bring pre-enforcement challenge to
identical law in an identical posture).  Plaintiffs have standing to bring each of their claims.

---

[1]    Despite their insistence that this Court needs more facts, Defendants never identify or
explain what facts they think would be relevant to evaluating the Act's constitutionality.  And to
the extent Defendants would like a richer record *supporting* their assertion that the Act passes
constitutional muster, it was their burden to develop one.  *See Garden Dist. Book Shop, Inc. v.
Stewart*, 184 F. Supp. 3d 331, 337–38 (M.D. La. 2016) (even in preliminary-injunction posture,
"the State bears the burden of proving" that a statute survives the relevant degree of First
Amendment scrutiny); *Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 666 (2004) (same).

i.    <u>Plaintiffs have standing to bring a facial First Amendment claim.</u>

Plaintiffs' standing to bring a facial First Amendment challenge to the Act is straightforward. Fifth Circuit precedent makes clear that "[i]t is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech," *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020), that no history of enforcement against *anyone* is required, *see id.* at 336, and that "the mere existence of an allegedly vague and broad [law] can be sufficient injury to support standing," *id.* (internal citation omitted). Thus it is Defendants' burden to identify "compelling contrary evidence" that the Act will not be enforced if its text even arguably covers Plaintiffs' proposed course of conduct—which it its plain text does. *Id.* But Defendants carefully refrain from arguing that Plaintiffs will not be arrested and prosecuted if, in the course of newsgathering, they do not stay more than 25 feet away from a law enforcement officer; on the contrary, Defendants strenuously insist the Act has no "exception for newsgathering," Defs. Opp. at 25, and the most reassurance they offer is that Defendant Moore may prosecute Plaintiffs' reporters but will not "prioritize" doing so, Decl. of Hillar Moore ("Moore Decl."), ECF No. 30-3 ¶ 11. (Defendants Murrill and Hodges make no such representations.) Moore's "non-committal promise" does not counter the chilling effect of the Act's facial sweep. *Seals*, 898 F.3d at 593; *see also*, *e.g.*, *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023) (non-binding non-enforcement promises insufficient to defeat pre-enforcement standing).

Defendants dispute none of the applicable legal standards, *see* Defs.' Opp. at 9–10; they argue only that Plaintiffs' conduct is not even arguably covered by the Act because it does not mention "recording, photographing, interviewing, monitoring, or otherwise observing peace officers." Defs. Opp. at 10. But the course of conduct that Plaintiffs engage in and plan to continue to engage in—which the Act expressly authorizes officers to proscribe—is

6

"*approaching* the scene of newsworthy events," Compl. ¶ 49 (emphasis added), and "engag[ing] in peaceful, nonobstructive newsgathering *within 25 feet of law enforcement officers*," *id.* ¶ 59 (emphasis added).  Defendants do not (and could not reasonably) dispute that the Act regulates *that* conduct.  And that settles that Plaintiffs have standing to press their facial First Amendment challenge, because, as discussed in more detail below, the First Amendment protects not just documenting an event but also "approaching" it "to carry out plaintiffs' protected monitoring and recording." *Brown v. Kemp*, 86 F.4th 745, 779 (7th Cir. 2023); *see Jordan v. Jenkins*, 73 F.4th 1162, 1170 (10th Cir. 2023) (same).  Further, Plaintiffs' reporters often receive instructions or 'back up' in the course of their reporting, *see, e.g.*, Decl. of Richard Erbach ("Erbach Decl."), ECF No. 19-6 ¶¶ 10, 17; Decl. of Nicole Waivers ("Waivers Decl."), ECF No. 19-7 ¶ 15— interactions now backed by the threat of arrest, *see Reporters Committee*, 2024 WL 4333137, at *4 (finding "fear of enforcement is well-founded" under identical law where plaintiffs preferred evidence that "their journalists ha[d] been asked to move back by law enforcement officers while gathering news" before the law's enactment).  Plaintiffs have standing to challenge a law that regulates protected First Amendment activity that they engage in on a routine daily basis.

ii.     Plaintiffs have standing to bring an as-applied First Amendment claim.

The analysis for Plaintiffs' as-applied First Amendment claim is similar.  Recapitulating their ripeness argument, Defendants claim a "developed factual record" of a particular enforcement action is necessary to adjudicate an as-applied pre-enforcement challenge.  Defs.' Opp. at 8 (quoting *Justice v. Hoseman*, 771 F.3d 285, 292 (5th Cir. 2014)).[2]  But the Supreme

---

[2]     Defendants also make a one-sentence suggestion that Plaintiffs lack prudential standing to raise the rights of their employees.  Even if this argument were sufficiently developed to avoid forfeiture—it is not—Fifth Circuit precedent makes clear that news organizations have standing in their own right to challenge burdens on their journalists.  *See In re Express News-Corp.*, 695 F.2d 807, 808 & n.1 (5th Cir. 1982) (holding that both reporter and employer organization had standing to challenge a court rule that restricted their newsgathering).

Court repeatedly has found that "as-applied preenforcement challenge[s] brought under the First Amendment" are "suitable for judicial review" even where there a statute has never previously been enforced against the plaintiff. *Humanitarian Law Project*, 561 U.S. at 16. The record need only be sufficient to determine whether, "as applied to plaintiffs[,] the conduct triggering coverage under the statute" implicates the protections of the First Amendment, *id.* at 28, and, next, whether the statute satisfies the relevant degree of constitutional scrutiny as applied to "the particular speech plaintiffs propose to undertake," *id.* at 36. The same rule applies here.

Nothing in *Justice v. Hoseman*, 771 F.3d 285 (5th Cir. 2014), suggests otherwise. There, a group of plaintiffs challenged a $200 cap on political donations but refused to say how much they wanted to spend; in fact, the record on that question was not just "scant" but internally "inconsistent." *Id.* at 293. As a result, the court could not know whether an injunction should allow the plaintiffs to spend $300, $500, $800, or some other amount. *See id.* at 294. Here, though, Defendants have identified no "uncertainty" in the Complaint's description of Plaintiffs' proposed course of conduct, *id.* at 294, that would make an as-applied remedy difficult to fashion. Here, the Court's order writes itself: An injunction would prohibit the Defendants from enforcing the Act against Plaintiffs for "peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers performing their duties in public spaces," Compl. ¶ 59, but would preserve Defendants' ability to enforce the Act for "behavior that obstructs or interferes with effective law enforcement or the protection of public safety," *Alvarez*, 679 F.3d at 607 (ordering entry of injunction adopting that distinction for as-applied preenforcement newsgathering claim).

For this claim, too, Defendants' insistence that a more developed factual record is necessary is a red herring; the reality is that the analysis of Plaintiffs' as-applied First Amendment claim is easy, because newsgathering "that is not disruptive of public order or

safety, and carried out by people who have a legal right to be in a particular public location and to watch and listen to what is going on around them" cannot be prohibited consistent with the First Amendment. *Id.* at 606. The existing record before this Court already proves as much.

      iii.      <u>Plaintiffs have standing to challenge the Act on vagueness grounds.</u>

Defendants' challenge to Plaintiffs' standing to bring a claim under the Due Process Clause is likewise meritless. Even setting aside the fact that another federal court, in a virtually identical challenge to an identical law, found that some of the same Plaintiffs here had standing to bring a (successful) vagueness claim, *see Reporters Committee*, 2024 WL 4333137, at *3, Defendants' argument rests on the misplaced insistence that "[a] plaintiff who has 'never been arrested or prosecuted for violating' a criminal statute 'lack[s] standing to preemptively challenge [it] under the Due Process Clause.'" Defs.' Opp. at 10 (quoting *Nat'l Press Photographers Ass'n v. McCraw* (*Press Photographers*), 90 F.4th 770, 782 (5th Cir. 2024)). *Press Photographers* says no such thing, and that rule would flatly violate Supreme Court precedent. *See Humanitarian Law Project*, 561 U.S. at 15–18 (finding preenforcement vagueness challenge "suitable for judicial review," *id.* at 15, and reiterating that plaintiffs "should not be required to await and undergo a criminal prosecution" to demonstrate Article III standing, *id.* at 16 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))).

In *Press Photographers*, plaintiffs could not demonstrate standing because they provided no evidence that the challenged law had been enforced against them "or anybody else," 90 F.4th at 782, even though the law they challenged had been enacted "a decade ago," *id.* at 777—in other words, the statute was moribund. That reasoning does Defendants no good in a challenge to a statute that is "recent and not moribund." *Doe v. Bolton*, 410 U.S. 179, 188 (1973), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)).

On that footing, the most important argument in Defendants' opposition is the one they studiously do not make:  They have "not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do," *Humanitarian Law Project*, 561 U.S. at 16—only that doing so is not Defendants' top priority, *see* Moore Decl.  ¶ 11.  And in insisting that the Act has no "exception for newsgathering," Defs.' Opp. at 25, Defendants have demonstrated a willingness to enforce it against Plaintiffs' proposed course of conduct.  Just as in *Humanitarian Law Project*, that suffices to demonstrate that Plaintiffs' have standing to challenge the Act's vagueness.

      C.     <u>All Defendants are proper parties.</u>

As a last obstacle to reaching the merits, Defendants argue they are the wrong parties to defend the Act, either because they are not responsible for its chilling burdens on Plaintiffs, *see* Defs.' Opp. at 8–9, or because Defendants Murrill and Hodges—but notably not Defendant Moore[3]—are immune from suit, *see* Defs.' Opp. at 11–14.  On each count, Defendants are wrong.

First, Defendants incorrectly insist that the Complaint did not link Plaintiffs' injury to these particular Defendants.  It did.  *See* Compl. ¶¶ 23–25 (identifying Defendants Murrill and Moore as the relevant prosecuting authorities for violations of the Act and describing circumstances in which Defendant Hodges' State Police can enforce the Act against Plaintiffs' journalists).  Throughout the Complaint and their reporters' declarations, Plaintiffs have described situations in which they approach within 25 feet of the State Police and/or other law enforcement officers, including where Defendants Murrill and Moore would be the relevant prosecuting authorities—all of which are circumstances in which the Act now puts Plaintiffs to

---

[3]     *See, e.g.*, *Hudson v. City of New Orleans*, 174 F.3d 677, 679 (5th Cir. 1999) (holding that the Orleans Parish District Attorney's Office is not entitled to sovereign immunity).

an unconstitutional choice between risking arrest or prosecution *by these Defendants* or refraining from exercising their rights. *See, e.g.*, Compl ¶¶ 27–29; Waivers Decl. ¶¶ 8–12; Decl. of Katherine Fernelius ("Fernelius Decl."), ECF No. 19-4 ¶11; Erbach Decl. ¶ 5. An injunction prohibiting each Defendant from enforcing the Act against Plaintiffs would directly redress that injury and relieve the Act's chilling effect on Plaintiffs' newsgathering. *See Press Photographers*, 90 F.4th at 785 (traceability and redressability satisfied where preenforcement challengers to a criminal statute sue "those who would arrest them" and the officials "charged with prosecuting individuals who violate criminal law"). That is textbook traceability and redressability for purposes of Article III.

Defendants' arguments fare no better as a case for immunity for Defendants Murrill and Hodges. Again, Defendants return to the same point: that the Act has not yet been enforced against Plaintiffs. But the Fifth Circuit has held that "[a] history of prior enforcement is not required" to invoke the *Ex Parte Young* exception to sovereign immunity, "especially in the pre-enforcement context that applies here." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024); *see also Calhoun v. Collier*, 78 F.4th 846, 851 (5th Cir. 2023) (holding that "actual threat of or imminent enforcement is not required" to satisfy *Ex Parte Young* in the preenforcement context (citation omitted)). Plaintiffs need only show that Defendants Murrill and Hodges have "a particular duty to enforce the statute in question," *id.* at 325 (citation omitted); "some scintilla" of willingness to do so, *id.* at 329 (citation omitted), which can be shown through a refusal to "disavow[] enforcement," *Comput. & Commc'ns Indus. Ass'n v. Paxton* (*CCIA*), No. 1:24-cv-849, 2024 WL 4051786, at *6 (W.D. Tex. Aug. 30, 2024); and the power to enforce the Act through "compulsion or constraint," *Press Photographers*, 90 F.4th at 786 (citation omitted). All three requirements are satisfied.

Defendant Hodges and the State Police have a specific statutory "dut[y]" to "enforce the criminal and traffic laws of the state," La. R.S. 40:1379(A). This includes the Act, and the Fifth Circuit has squarely held that parallel "heads of Texas law-enforcement agencies" are proper parties in a challenge analogous to this one because "they are *directly* responsible for enforcing Texas's criminal laws." *Press Photographers*, 90 F.4th at 786. Moreover, Defendant Hodges is responsible for enforcing "the particular statutory provision that is the subject of the litigation," *Mi Familia Vota*, 105 F.4th at 327 (citation omitted), because the Act specifically defines him and other members of State Police as "peace officers" authorized to issue orders under the Act, La. R.S. 14:109(B); *id.* 40:2402(3). And, notably, Defendant Hodges has demonstrated willingness to enforce HB 173, refusing in this very litigation to "disavow[] enforcement," *CCIA*, 2024 WL 4051786, at *6, and insisting instead that the Act has no "exception" for newsgathering. Defs. Opp. at 25. The fact that troopers "arrest people for violating [Louisiana] law," meanwhile, satisfies the requirement that he "exercis[e] compulsion or constraint in service of the law." *Press Photographers*, 90 F.4th at 786 (internal quotation marks omitted). Defendant Hodges is a proper defendant in this case.

Defendant Murrill likewise cannot retreat behind sovereign immunity. Defendants emphasize that "the Attorney General only has the authority to advise and assist in the prosecution of a criminal case upon request of a district attorney," Defs.' Opp. at 12–13 (quoting *White Hat v. Landry*, 475 F. Supp. 3d 532, 549 (M.D. La. 2020)), but that is just what has already happened in New Orleans: Defendant Murrill's cooperative agreement with the Orleans Parish District Attorney formally invokes Article IV, Section 8 of the Louisiana Constitution to request that the Attorney General step into the District Attorney's shoes for any cases involving Louisiana State Police. *See* Louisiana Attorney General's Office and Orleans Parish District

Attorney's Office Cooperative Endeavor Agreement at 1 (Feb. 5, 2024), https://perma.cc/7E2Z-W4QP. What's more, that agreement creates not just a power but a duty. In it, Defendant Murrill specifically "agrees to [] prosecute any and all criminal matters that stem from an investigation or arrest made by (or with the assistance of) the Louisiana State Police . . . in the Parish of Orleans." *Id.* at 2. And the same language necessarily makes clear that Defendant Murrill—who, like Defendant Hodges, declines to "disavow[] enforcement," *CCIA*, 2024 WL 4051786, at *6—has demonstrated a willingness to enforce the Act when State Police make arrests under it in New Orleans. She cannot avoid responsibility for her role in enforcing HB 173, and it is easy to identify the "specific actions" of hers "that this Court can enjoin" to prevent a violation of the Constitution, *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024): enforcement of the Act against Plaintiffs for gathering the news within 25 feet of State Police in New Orleans. This Court should set aside Defendants' efforts to avoid a decision on the merits of Plaintiffs' claims.

## II.     HB 173 is void for vagueness.

While HB 173's burdens on Plaintiffs' exercise of First Amendment rights are grave, the most straightforward basis for enjoining enforcement of the Act is vagueness. Defendants do not dispute the governing standard for that analysis, *see* Defs.' Opp. at 24 (agreeing that a criminal statute is unconstitutional "if it (1) 'fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits' or (2) 'authorize[s] and even encourage[s] arbitrary and discriminatory enforcement,'" (quoting *Morales*, 527 U.S. at 56 (plurality opinion)), and the Act cannot survive review under either prong of that test, *see Reporters Committee*, 2024 WL 4333137, at *11 (enjoining an identical statute as void for vagueness).

The Act's fatal vagueness is starkest with respect to the second requirement. As the Supreme Court has explained, a lawful-order statute impermissibly authorizes arbitrary and

discriminatory enforcement—even if one would know how to comply *after* receiving an order—if the law "does not provide any guidance to the officer deciding whether such an order should issue" in the first place. *Morales*, 527 U.S. at 62; *see also Agnew v. District of Columbia*, 920 F.3d 49, 59–60 (D.C. Cir. 2019) (where statute fails to provide guidance for officers in deciding when to issue a move-on order, "[a] person's knowing failure to obey such an order could do nothing either to cure the officer's lawless discretion or to establish the individual's culpability").

Here, Defendants do not appear to dispute that, under HB 173, "an officer may give a retreat order for any or no reason without any standards," Defs.' Opp. at 25. The entirety of their response to that dispositive legal question, worth quoting in full here, is that it:

> ignores the reality of law enforcement in regards to *every* criminal statute: As always, enforcement requires the exercise of some degree of police judgment. So, too, does Act 259.

*Id.* at 25 (internal citation and quotation marks omitted). But that response is nothing more than a concession that Defendants cannot find any "guidance to the officer deciding whether such an order should issue" in the text of the Act itself. *Morales*, 527 U.S. at 62. It is irreconcilable, too, with Defendants' claim, in the same breath, that the Act does not "contain some subjective call for an officer to make." Defs.' Opp. at 25. That is precisely what the Act calls for: Under HB 173, law enforcement officers must find some way to decide which of the staggering number of Louisianans who pass within 25 feet of them at some point each day should be ordered to retreat on pain of arrest and criminal prosecution. *See Reporters Committee*, 2024 WL 4333137, at *8–9. But the Act says nothing about how officers should make that decision. Whether to disperse all, some, or none of the individuals who approach within 25 feet of them—for any reason or no reason—is a question left to the "moment-to-moment judgment of the policeman on his beat."

*Kolender*, 461 U.S.at 360. That failure to "establish minimal guidelines to govern law enforcement" sets forth a textbook Due Process violation. *Id.* at 358 (citation omitted).

If that were not enough, the Act is independently vague for failure to provide fair notice. While Defendants assert the Act "precisely defines 'the behavior that prompts a lawful dispersal order'—knowingly approaching within 25 feet of a law enforcement officer *that has issued an order to stand back*," Defs.' Opp. at 24 (quoting *Bell v. Keating*, 697 F.3d 445, 462 (7th Cir. 2012) (emphasis added)), that formula is circular. It does nothing to notify members of the public, including Plaintiffs' journalists, when an order to stand back will (or won't) issue, and "[s]uch an order cannot retroactively give adequate warning of the boundary between the permissible and the impermissible," *Morales*, 527 U.S. at 59 (plurality opinion); *see also id.* at 69 (Kennedy, J., concurring in part and concurring in the judgment) (where a statute "would reach a broad range of innocent conduct . . . it is not necessarily saved by the requirement that the citizen must disobey a police order to disperse before there is a violation"). Were the law otherwise, a statute that read "do what any officer tells you to do" would provide fair notice of its reach despite affording individuals no ability to conduct themselves so as to avoid receiving an order backed by the threat of arrest and criminal prosecution. Because the Act does not "warn what kind of behavior might cause an officer to issue a stay back order" in the first place, *Reporters Committee*, 2024 WL 4333137, at *8, it fails to provide fair notice in violation of due process.

These basic principles decide this case—even without reference to the Act's serious First Amendment harms. *See Morales*, 527 U.S. at 52–53 (plurality opinion) (noting that the ordinance invalidated as void-for-vagueness in *Morales* did not, as construed by the Illinois Supreme Court, regulate First Amendment activity and was not overbroad in a First Amendment

sense); *see also Reporters Committee*, 2024 WL 4333137, at *8.  This Court need not even reach the question whether the Act regulates First Amendment activity—it does—to conclude that Louisiana lawmakers cannot abdicate their duty to "establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358 (citation omitted).  The Act is void for vagueness.

A.    HB 173 violates the First Amendment.

For related though ultimately independent reasons, the Act is unconstitutional because it poses an "ever-present potential for arbitrarily suppressing First Amendment liberties," *Shuttlesworth*, 382 U.S. at 91, including the peaceful, non-obstructive newsgathering that Plaintiffs' journalists carry out daily.  Defendants' arguments to the contrary are without merit.

B.    HB 173 violates the First Amendment as applied to Plaintiffs' peaceful, nonobstructive newsgathering within twenty-five feet of a peace officer.

Defendants' main defense of the Act is that it regulates conduct rather than speech or newsgathering—that the law is "a movement restriction, not a speech restriction." Defs.' Opp. at 16.  But that distinction has no stakes:  Every court to address the issue, including the Supreme Court, agrees that police orders to move directly implicate the First Amendment even when they make no reference to speech or recording.  *See Shuttlesworth*, 382 U.S. at 90–91 (statute making it "unlawful for any person to stand or loiter upon any street or sidewalk . . . after having been requested by any police officer to move on" posed an "ever-present potential for arbitrarily suppressing First Amendment liberties"); *see also, e.g.*, *World Wide Street Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 341–42 (5th Cir. 2007) (order to move demonstration subject to First Amendment scrutiny).[4]  And for good reason.  What Defendants prefer to call

---

[4]    *See also, e.g.*, *Marcavage v. City of Chicago*, 659 F.3d 626, 631 (7th Cir. 2011) (First Amendment scrutiny applied to "officers' directives to keep moving"); *Reed v. Lieurance*, 863 F.3d 1196, 1211–12 (9th Cir. 2017) (same); *Hulbert v. Pope*, 70 F.4th 726, 733–34 (4th Cir. 2023) (same); *Pouillon v. City of Owosso*, 206 F.3d 711, 717–18 (6th Cir. 2000) (same).

'movement restrictions' also necessarily "restrict[] access to traditional public fora and [are] therefore subject to First Amendment scrutiny." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014).

 The Supreme Court's decision in *McCullen v. Coakley* is controlling.  There, a Massachusetts law that prohibited "knowingly enter[ing] or remain[ing]" within 35 feet of health care facilities was challenged by plaintiffs who wanted to "approach[]" in order to speak to patients.  *Id.* at 471–72.  The Supreme Court explained that "even though the [challenged law] sa[id] nothing about speech on its face," it necessarily "restrict[ed] access to traditional public fora and [was] therefore subject to First Amendment scrutiny."  *Id.* at 476.  But if controlling precedent were not enough, common sense would lead to the same result.  Dispersal-order statutes cannot escape First Amendment review because "if police could stop criticism or filming by asking onlookers to leave, then this would allow the government to simply proceed upstream and dam the source of speech—*i.e.*, it would allow the government to bypass the Constitution." *Jordan*, 73 F.4th at 1170 (citations, alterations, and internal quotation marks omitted).  And for just that reason, courts have consistently concluded that the First Amendment protects not just monitoring or recording as such but also "approaching" a newsworthy event in order "to carry out plaintiffs' protected monitoring and recording."  *Brown*, 86 F.4th at, 779; *see also Jordan*, 73 F.4th at 1169 ("[S]ince the First Amendment protects the right to criticize police, then *a fortiori* it protects the right to remain in the area to be able to criticize the observable police conduct.").[5]

---

[5] *Press Photographers* likewise does nothing to help Defendants on this point.  A statute that prohibits flying a drone "over a prison, sports venue, or critical infrastructure" does nothing to implicate access to (or activities in) traditional public fora, *Press Photographers*, 90 F.4th at 787, while a statute providing that Louisianans may "stand on a public sidewalk . . . only at the whim of any police officer" plainly does, *Shuttlesworth*, 382 U.S. at 90.

Defendants' insistence that the Act does not mention "newsgathering, recording, photographing, or documenting," Defs.' Opp. at 16, therefore misses the point.  Plaintiffs never argued that it did, and it need not to directly threaten the exercise of First Amendment rights.[6]  The Constitution is not as trivially circumvented as Defendants wish; dispersal-order statutes like the Act implicate the First Amendment directly, not incidentally.  *See Bell*, 697 F.3d at 456–57.

Because the Act regulates First Amendment activity, the Court must then determine whether it is content-based or content-neutral.  But Defendants' opposition largely fails to grapple with Plaintiffs' arguments on that question.  For one, they ignore the reality that statutes that delegate standardless discretion to regulate First Amendment activity can never qualify as content-neutral.  *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 n.10 (1992) ("[T]he success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content based manner, but whether there is anything in the ordinance preventing him from doing so."); *see also, e.g.*, *Smith v. Exec. Dir. of Ind. War Mem'ls Comm'n*, 742 F.3d 282, 289 (7th Cir. 2014) (noting that, "[t]o qualify as content-neutral," a law "cannot invest unbridled discretion" that could be used to discriminate on the basis of content (citation and internal quotation marks omitted)).  And, consistent with their failure to identify any limits on officers' discretion in response to Plaintiffs' vagueness claim, Defendants also fail to identify any constraints in the Act that would prevent officers from "exercis[ing] [their] discretion in a content based manner." *Forsyth County*, 505 U.S. at 133 n.10; *cf. Reporters Committee*, 2024 WL 4333137, at *9 (noting that, under identical Indiana statute, "an officer can order reporters

---

[6]    Nor do any of the basic constitutional principles above turn on a "special status" for journalists that Plaintiffs have never asserted, *id.* at 17—*Shuttlesworth* was not a press case.

and others to move back simply because the officer does not want to be recorded, an unacceptable curtailment of First Amendment rights"). The statute therefore triggers strict scrutiny.

The Act also has "a content-based purpose or justification," *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022), an analysis that looks not just to its text but also to its statutory context and "inevitable effect," *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011); *see also City of Houston v. Hill*, 482 U.S. 451, 459–60 (1987) (rejecting characterization of police obstruction statute as "content-neutral" where in practice "the *enforceable* portion of the ordinance . . . prohibit[ed] verbal interruptions of police officers" (emphasis added)). In *Brown v. Kemp*, for instance, the Seventh Circuit considered a First Amendment challenge to a Wisconsin ban on "approaching" hunters. 86 F.4th at 753. Contrary to Defendants' insistence that regulation of physical proximity is never content-based, the Seventh Circuit held the challenged law to be not only content- but also viewpoint-based, because its "*only* evident purpose" in statutory context was "to expand [liability] to reach expressive activity that does not involve physical interference" and thereby discourage observing certain subjects. *Id.* at 782 (emphasis added). The same is true here, where Defendants' list of hypothetical uses of the Act is stuffed with scenarios that are already addressed by existing law because they involve obstruction of either "a lawful arrest, lawful detention, or seizure of property or [service of] any lawful process," La. R.S. 14:108(A), or "investigative work at the scene of a crime or the scene of an accident," La. R.S. 14:329(A).[7] Against that statutory backdrop, the Act serves only one primary purpose: to suppress observation of law enforcement.

---

[7]    *Compare also, e.g.*, Defs.' Opp. at 22 (arguing the Act is necessary for cases where "[a]n officer pulls over a vehicle and instructs a curious fellow motorist to stay back"), *with Terrell v.*

Regardless, Defendants' insistence that HB 173 is not content-based is largely academic because the Act cannot survive any degree of First Amendment scrutiny. Even under intermediate scrutiny, Defendants would need to demonstrate that the Act's application to Plaintiffs' proposed course of conduct is "narrowly tailored to serve a significant government interest," *Reed*, 863 F.3d at 1211, and would leave open "alternative observation opportunities[,]" *id.* at 1212; *see also In re Express-News Corp.*, 695 F.2d at 808–09 ("[A]n inhibition of press news-gathering rights must be necessitated by a compelling governmental interest, and . . . narrowly tailored to serve that interest." (citation and internal quotation marks omitted)). Defendants have not even attempted that showing here: They merely list various government interests they think the Act might implicate on other facts, but the relevant question for Plaintiffs' as-applied challenge is whether the statute advances those interests—and is narrowly tailored to them—as applied to "*the particular speech plaintiffs propose to undertake*," *Humanitarian Law Project*, 561 U.S. at 36 (emphasis added); *see also, e.g.*, *Serafine v. Braneman*, 810 F.3d 354, 361–62 (5th Cir. 2016) (measuring the strength of the state's interest and narrow tailoring relative to the particular plaintiff's speech for purposes of as-applied claim).

Defendants do not—and could not—demonstrate that any of the abstract interests they cite are at stake when Plaintiffs engage in peaceful, nonobstructive newsgathering within 25 feet of peace officers. *See* Defs.' Opp. at 18–19. There is no legitimate interest in criminalizing journalism that is "not disruptive of public order or safety, and carried out by people who have a legal right to be in a particular public location and to watch and listen to what is going on around them." *Alvarez*, 679 F.3d at 606; *see also Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011)

---

*Allgrun*, 114 F.4th 428, 436 (5th Cir. 2024) (upholding arrest under La. R.S. 14:97 where bystander obstructed a roadway in order to record an officer).

("peaceful recording . . . that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation"). Neither can Defendants establish that mere presence within 25 feet of an officer, without more, amounts to obstruction. And despite Defendants' effort to distinguish the case away, the Fifth Circuit has expressly addressed "How close is 'too close' such that the filming, however well-intentioned, becomes hazardous[?]" in *Perkins v. Hart*, No. 22-30456, 2023 WL 8274477, at *7 (5th Cir. Nov. 30, 2023) (citation omitted). There, the court concluded that a bystander who was "just a few feet away," *id.* at *8 (Ho, J., dissenting), was "not too close" and therefore protected by the First Amendment, *id.* at *7 (majority opinion). To Plaintiffs' knowledge, every other court to address the issue has agreed. *See Glik*, 655 F.3d at 84 (individual filming from "roughly ten feet away" was at "a comfortable remove" (citation omitted)); *Ariz. Broads. Ass'n v. Brnovich*, 626 F. Supp. 3d 1102, 1106 (D. Ariz. 2022) (restriction on filming within eight feet not narrowly tailored). And, remarkably, Defendants' opposition brief is entirely silent on the question of why Louisiana picked a twenty-five foot forcefield; the state has submitted no evidence of any kind in support of its preferred distance. It is difficult to imagine a more pronounced failure of narrow tailoring.

Finally, the statute independently fails intermediate scrutiny because it fails to leave open adequate alternative channels of communication, an issue Defendants' opposition does not address. Plaintiffs' uncontested evidence establishes that 25 feet is too great a distance to reliably record audio or conduct interviews, *see* Thibodeaux Decl. ¶ 7; Sprang Decl. ¶ 4; Fernelius Decl. ¶¶ 5–6; *see also Schenk v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 377–78 (1997) (15-feet is beyond "normal conversational distance"), and too great a distance to obtain an unobstructed view, *see* Erbach Decl. ¶ 6; Sprang Decl. ¶ 3; Thomas Decl. ¶ 4; Fernelius Decl. ¶ 9. Having offered no response, Defendants have failed to carry their burden to demonstrate

that the Act can survive any degree of First Amendment scrutiny. *See Garden Dist. Book Shop, Inc.*, 184 F. Supp. 3d at 337–38 (even in preliminary-injunction posture, "the State bears the burden of proving" that a law satisfies First Amendment scrutiny).

C.     HB 173 violates the First Amendment on its face.

Finally, the Act likewise violates the First Amendment on its face—under any plausibly relevant degree of scrutiny—because it "vests unbridled discretion in a government official over whether to permit or deny expressive activity." *City of Lakewood*, 486 U.S. at 755.[8]   That defect infects every application of the Act; that Defendants can imagine a short list of good uses for the statute is irrelevant, because the suggestion that officers "will act in good faith and adhere to standards absent from the ordinance's face" is "the very presumption that the doctrine forbidding unbridled discretion disallows." *Id.* at 770.   And, as the Supreme Court and Fifth Circuit have made clear, precedent *favors* facial challenges in that context, *see id.*, because the chilling effect of standardless discretion "risks self-censorship and creates proof problems in as-applied challenges," *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020).

Regardless, comparing "the number of unconstitutional applications" to "the total number of possible applications," *Moody v. NetChoice*, 144 S. Ct. 2383, 2430 (2024) (Alito, J., concurring), makes the statute's unconstitutionality just as clear.   A more complete list of the Act's applications than the one Defendants offer, *see* Defs.' Opp. at 22, would need to include:

- An officer issues a retreat order because it is Monday;

---

[8]     Defendants frame the question as one of overbreadth, which is a misnomer here. *See Doe 1 v. Landry*, 909 F.3d 99, 108–109 (5th Cir. 2018) (distinguishing overbreadth, where "plaintiffs whose rights are not violated" raise the rights of third parties, from the question whether a statute satisfies the relevant degree of First Amendment scrutiny on its face).   But the point is largely academic, because a statute that does not satisfy intermediate scrutiny—to say nothing of strict scrutiny—is necessarily overbroad. *See id.* at 111; *see also, e.g.*, *Bell*, 697 F.3d at 453 n.2 (when a law fails the relevant degree of First Amendment scrutiny on its face, "there exists no possible application of that law consistent with the First Amendment's guarantees").

- An officer issues a retreat order because it is Friday;

- An officer issues a retreat order because the moon is full;

- An officer issues a retreat order because the tides are low;

- An officer "order[s] reporters and others to move back simply because the officer does not want to be recorded," *Reporters Committee*, 2024 WL 4333137, at *9;

The list could go on. Those unconstitutional applications are infinite because the law contains no standards of any kind to channel law enforcement officers' discretion towards the interests that Defendants claim the Act is intended to serve. Put differently, the Act is unconstitutional on its face because nothing in its plain text asks whether an individual's presence within 25 feet "risk[s] substantial harm or if dispersal is otherwise *necessary*" to serve any legitimate interest. *Bell*, 697 F.3d at 459 (invalidating a dispersal-order statute on its face on that ground).

Even setting *City of Lakewood*'s bar on standardless discretion aside, Defendants have no argument that HB 173 is adequately tailored. They make no attempt to show that "alternative measures that burden substantially less speech would fail to achieve the government's interests." *McCullen*, 573 U.S at 495. Nor have they attempted to demonstrate that Louisiana "seriously undertook to address the problem with less intrusive tools . . . that other jurisdictions have found effective," *id.* at 494, since, as noted above, the only other state to pass a law like Louisiana's— Indiana—has already seen it enjoined, *see Randall v. Sorrell*, 548 U.S. 230, 253 (2006) (plurality opinion) (noting that the fact that there are no "comparable limits in other States" represents a "danger sign[]" that a statute "may fall outside tolerable First Amendment limits"). Defendants have not explained, either, why "available generic criminal statutes" cannot address whatever interest the Act purportedly serves. *McCullen*, 573 U.S. at 492. As canvassed above, Defendants' list of situations in which they imagine the Act would be helpful appears to consist entirely of scenarios covered by other laws. *Compare, e.g.*, Defs.' Opp. at 23 (arguing that

23

background Louisiana law leaves officers with no power to address bystanders approaching "a drunken assailant at a music festival"), *with Terrell*, 114 F.4th at 437 (upholding arrest under La. R.S. 14:329(A) for obstructing law enforcement officers' efforts to deal with an intoxicated individual). And as also already discussed above, Defendants have submitted no evidence of any kind to support the proposition that their 25-foot forcefield is necessary to advance any legitimate government interest they assert, despite the clear weight of authority—in and out of this jurisdiction—holding that an individual's bare proximity to a law enforcement officer does not justify restricting the exercise of First Amendment rights. *See Perkins*, 2023 WL 8274477, at *7; *Glik*, 655 F.3d at 84; *Ariz. Broads. Ass'n*, 626 F. Supp. 3d at 1102.

In sum, because the Act's standardless sweep carries an "ever-present potential for arbitrarily suppressing First Amendment liberties," it violates the First Amendment on its face. *Shuttlesworth*, 382 U.S. at 91. This Court should enjoin the statute's enforcement.

## III. A preliminary injunction should issue.

Where First Amendment rights are at stake, "likelihood of success on the merits"— already "arguably the most important factor" in the analysis, *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1099 (5th Cir. 2023)—is typically dispositive because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and "[i]njunctions protecting First Amendment freedoms are always in the public interest," *Book People, Inc.*, 91 F.4th at 341 (citations omitted); *see also Reporters Committee*, 2024 WL 4333137, at *11 (preliminary-injunction factors favored relief from identical Indiana law in identical posture). Here, Defendants have no arguments against entry of a preliminary injunction that do not simply recapitulate their merits arguments. *See* Defs.' Opp. at 25–27. But as explained in Plaintiffs' initial motion, an injunction against the Act's chilling burdens would

24

serve the public interest by safeguarding the function of a free press in Louisiana.  This Court should issue one.

## CONCLUSION

For the reasons set forth above and in their motion for a preliminary injunction, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss and issue a preliminary injunction prohibiting Defendants from enforcing the Act against Plaintiffs.

Dated: November 14, 2024                Respectfully submitted,

                                        */s/ Katie Townsend*
                                        Katie Townsend (*pro hac vice*)
                                        ktownsend@rcfp.org
                                        Grayson Clary (*pro hac vice*)
                                        gclary@rcfp.org
                                        REPORTERS COMMITTEE FOR
                                          FREEDOM OF THE PRESS
                                        1156 15th Street NW, Suite 1020
                                        Washington, DC 20005
                                        Phone: 202.795.9300
                                        Fax: 202.795.9310

                                        */s/ Scott L. Sternberg*
                                        STERNBERG NACCARI & WHITE LLC
                                        Scott L. Sternberg, La. Bar No. 33390
                                        M. Suzanne Montero, La. Bar No. 21361
                                        935 Gravier Street, Suite 2020
                                        New Orleans, LA 70112
                                        Phone: (504) 324-1887
                                        Fax: (504) 534-8961
                                        scott@snw.law | suzy@snw.law

                                        *Attorneys for Plaintiffs Deep South Today,* d/b/a
                                        *Verite News*, *Gannett Co., Inc., Gray Local Media,*
                                        *Inc., Nexstar Media, Inc.*, *Scripps Media Inc., and*
                                        *TEGNA Inc.*