**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

DEEP SOUTH TODAY, et al.,

PLAINTIFFS,

v.

ELIZABETH B. MURRILL, et al.,

DEFENDANTS.

Civil Action No. 3:24-cv-623

Judge: JWD - SDJ

**REPLY IN SUPPORT OF**
**DEFENDANTS' CONSOLIDATED MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

  I. The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(1)
     For Lack of Subject Matter Jurisdiction. ....................................................................... 2

    A.  Plaintiffs' Claims Are Not Ripe. ........................................................................... 2

    B.  Plaintiffs Lack Article III Standing. ....................................................................... 4

        1.  Plaintiffs Do Not Have Standing For Their As-Applied Claim (Count I). ....................... 4

        2.  Plaintiffs Do Not Have Standing For Their Facial Overbreadth Claim (Count II) ........... 5

        3.  Plaintiffs Do Not Have Standing For Their Due Process Claim (Count III) ................... 6

    C.  Attorney General Murrill and Colonel Hodges Are Entitled to Sovereign Immunity. ......... 8

  II. The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6)
     For Failure To State A Claim For Relief. ....................................................................... 9

    A.  Plaintiffs' First Amendment As-Applied Claim Fails (Count I). ............................... 9

    B.  Plaintiffs' Facial Overbreadth Claim Fails (Count II). ........................................... 12

    C.  Plaintiffs' Void-for-Vagueness Claim Fails (Count III). ......................................... 13

PRAYER FOR RELIEF ........................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Adams v. Askew,*
511 F.2d 700 (5th Cir. 1975) ............................................................................................5

*Bell v. Keating,*
697 F.3d 445 (7th Cir. 2012) ...........................................................................................3

*Book People, Inc. v. Wong,*
91 F.4th 318 (5th Cir. 2024) ............................................................................................2

*Brown v. Kemp,*
86 F.4th 745 (7th Cir. 2023) ..........................................................................................10

*Carney v. Adams,*
592 U.S. 53 (2020) ...........................................................................................................2

*Case v. Ivey,*
542 F. Supp. 3d 1245 (M.D. Ala. 2021),
*aff'd,* 2022 WL 2441578 (11th Cir. July 5, 2022) ........................................................14

*Choice Inc. of Tex. v. Greenstein,*
691 F.3d 710 (5th Cir. 2012) ........................................................................................2, 3

*Comput. & Commc'ns Indus. Ass'n v. Paxton (CCIA),*
2024 WL 4051786 (W.D. Tex. Aug. 30, 2024)) .............................................................8

*Couhig v. Brown,*
538 F. Supp. 1086 (E.D. La. 1982) ...............................................................................2, 5

*Ctr. for Individual Freedom v. Carmouche,*
449 F.3d 655 (5th Cir. 2006) ...........................................................................................5

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) .....................................................................................................7, 8

*Doe v. Bolton,*
410 U.S. 179 (1973) .........................................................................................................7

*Forsyth County v. Nationalist Movement,*
505 U.S. 123 (1992) .......................................................................................................10

*Freedom From Religion Found. v. Abbott,*
955 F.3d 417 (5th Cir. 2020) .........................................................................................11

*Freedom Path, Inc. v. Internal Rev. Serv.*,
 913 F.3d 503 (5th Cir. 2019) ...................................................................................6

*Garden Dist. Book Shop, Inc. v. Stewart*,
 184 F. Supp. 3d 331 (M.D. La. 2016) .......................................................................2

*Grayned v. City of Rockford*,
 408 U.S. 104 (1972) .................................................................................................14

*Holder v. Humanitarian L. Project*,
 561 U.S. 1 (2010) ..............................................................................................11, 14

*In re Express-News Corp.*,
 695 F.2d 807 (5th Cir. 1982) ...................................................................................11

*Jordan v. Jenkins*,
 73 F.4th 1162 (10th Cir. 2023) ..................................................................................9

*Justice v. Hosemann*,
 771 F.3d 285 (5th Cir. 2014) ................................................................................4, 5

*Kleinpeter v. La. State Bd. of Med. Examiners*,
 2011 WL 2413455 (M.D. La. June 10, 2011) .............................................................3

*McCullen v. Coakley*,
 573 U.S. 464 (2014) .................................................................................................10

*Mi Familia Vota v. Ogg*,
 105 F.4th 313 (5th Cir. 2024) ....................................................................................8

*Moody v. NetChoice, LLC*,
 144 S. Ct. 2383 (2024) ..............................................................................1, 5, 12, 13

*Moore v. Brown*,
 868 F.3d 398 (5th Cir. 2017) ...................................................................................10

*Morgan v. White*,
 964 F.3d 649 (7th Cir. 2020) ......................................................................................9

*Murthy v. Missouri*,
 603 U.S. 43 (2024) .....................................................................................................2

*Nat'l Press Photographers Ass'n v. McCraw*,
 90 F.4th 770 (5th Cir. 2024) ...........................................................................1, 7, 9, 10

*Nat'l Press Photographers v. Higgins*,
 No. 23-1105, 2024 WL 4426550 (U.S. Oct. 7, 2024) ................................................7

*NetChoice, L.L.C. v. Paxton,*
   No. 21-51178, 2024 WL 4704574 (5th Cir. 2024) .................................................. 5, 12, 13

*NiGen Biotech, L.L.C. v. Paxton,*
   804 F.3d 389 (5th Cir. 2015) .............................................................................................. 8

*Perkins v. Hart,*
   2023 WL 8274477 (5th Cir. Nov. 30, 2023) .................................................................. 12

*Reed v. Lieurance,*
   863 F.3d 1196 (9th Cir. 2017) .......................................................................................... 11

*Reps. Comm. for Freedom of the Press v. Rokita,*
   No. 1:23-CV-1805-JRS-MG, 2024 WL 4333137 (S.D. Ind. Sept. 27, 2024) ................... 14

*Roark & Hardee LP v. City of Austin,*
   522 F.3d 533 (5th Cir. 2008) .............................................................................................. 3

*Scales v. United States,*
   367 U.S. 203 (1961) ......................................................................................................... 14

*Seals v. McBee,*
   898 F.3d 587 (5th Cir. 2018) .............................................................................................. 3

*Serafine v. Branaman,*
   810 F.3d 354 (5th Cir. 2016) ............................................................................................ 11

*Shuttlesworth v. City of Birmingham,*
   382 U.S. 87 (1965) ............................................................................................................. 9

*Smith v. Exec. Dir. of Indiana War Memorials Comm'n,*
   742 F.3d 282 (7th Cir. 2014) ............................................................................................ 10

*Socialist Labor Party v. Gilligan,*
   406 U.S. 583 (1972) ........................................................................................................... 3

*Speech First, Inc. v. Fenves,*
   979 F.3d 319 (5th Cir. 2020) .......................................................................................... 5, 6

*Speech First, Inc. v. Schlissel,*
   939 F.3d 756 (6th Cir. 2019) .............................................................................................. 5

*Tex. All. for Retired Americans v. Scott,*
   28 F.4th 669 (5th Cir. 2022) .............................................................................................. 8

*Turner Broad. Sys., Inc. v. F.C.C.,*
   512 U.S. 622 (1994) ......................................................................................................... 11

*United States v. Hansen,*
   599 U.S. 762 (2023) ................................................................................................ 12

*United States v. Rafoi,*
   60 F.4th 982 (5th Cir. 2023) ............................................................................ 14, 15

*Virginia v. Hicks,*
   539 U.S. 113 (2003) .................................................................................................. 9

*World Wide St. Preachers Fellowship v. Town of Columbia,*
   245 F. App'x 336 (5th Cir. 2007) ............................................................................ 9

**Statutes**

La. R.S. 14:109 .............................................................................................. 1, 6, 10, 15

**Other Authorities**

2024 La. Sess. Law Serv. Act 259 (H.B. 173) .................... 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14

Br. for Plaintiffs-Appellees/Cross-Appellants,
   *Nat'l Press Photographers Ass'n v. McCraw,*
   2022 WL 17217876 ................................................................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 9

## INTRODUCTION

Act 259 says only: "No person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." 2024 La. Sess. Law Serv. Act 259 (H.B. 173) (codified at La. R.S. 14:109(A)) ("Act 259"). That would be welcome news to a reader of Plaintiffs' opposition, which never once mentions the text of the statute it purports to challenge.

Dismissal for lack of subject matter jurisdiction remains warranted. Everyone agrees: Plaintiffs cannot point to one instance of these Defendants (or indeed, anyone else) asking them to retreat according to Act 259 while newsgathering for the last five months. That concession runs into binding Fifth Circuit precedent that precludes standing and ripeness here—and that is especially so for their "as-applied" claim. And standing for the vagueness claim fares even worse under controlling Fifth Circuit case law. *See Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024). The same considerations entitle Attorney General Murrill and Colonel Hodges to dismissal for sovereign immunity because neither has the requisite authority to enforce Act 259 specifically, and certainly have not demonstrated a willingness to use whatever general authority they do have to do so.

The Court can also dismiss each claim on the merits. Most surprisingly, Plaintiffs' stray vagueness argument—relegated to a single paragraph on the last page of their preliminary injunction motion—has become their frontrunner. *Compare* PI Mem. 24; *with* MTD Opp. 1–2, 13. That is likely because their First Amendment claims fail from the jump. Act 259 regulates conduct, not speech, and any incidental effects on expressive activity fall well within the First Amendment. The overbreadth claim cannot withstand the demanding test in *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024). And the newly crowned vagueness claim is just a redux of those faulty First Amendment claims. That Plaintiffs no longer assert any confusion about what conduct Act 259 proscribes is yet another reason their void-for-vagueness claim is a dud. Accordingly, the Complaint should be dismissed in its entirety.

**ARGUMENT**

I.    **The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(1) For Lack of Subject Matter Jurisdiction.**

Plaintiffs' opposition confirms that the Court should dismiss without prejudice for lack of subject matter jurisdiction. That is principally because all agree that, for five months now, despite interactions with police at least "once a day," PI Mem. at 4, 6, Plaintiffs, which represent every major legacy news outlet in the State, cannot point to a single instance that Act 259 has been applied to them—not an order, not an arrest, not a prosecution. MTD Opp. 3; *see* Burns Decl. at ¶¶ 9–10; Moore Decl. at ¶ 8. That is a damning concession for this Court's subject matter jurisdiction, for which Plaintiffs have and always will have the burden of proof. *See Carney v. Adams*, 592 U.S. 53, 59 (2020).[1]

**A.  Plaintiffs' Claims Are Not Ripe.**

Dismissal of Plaintiffs' claims remains warranted most clearly on ripeness grounds. Far from a mere label, ripeness itself is a constitutional minimum under Article III that requires both that the claim be "fit[]" "for judicial decision" and there be "hardship" from "withholding court consideration." *Book People, Inc. v. Wong*, 91 F.4th 318, 333 (5th Cir. 2024); *see Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (evaluating jurisdiction as to "each claim [plaintiffs] press"). Plaintiffs fumble both.

On the hardship front, it is hard to envision what imminent hardship Plaintiffs face given Act 259 has not been applied to them for nearly five months. *See* MTD Opp. 3; *see Couhig v. Brown*, 538 F. Supp. 1086, 1088 (E.D. La. 1982). That is perhaps why Plaintiffs altogether fail to identify the sort of "legal harms" that they might face from delayed adjudication with a ripened factual record. *See Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012)

---

[1] Plaintiffs cannot seriously contend that *Defendants* bear the burden of *disproving* their claims are justiciable at this stage. *Compare* MTD Opp. 5 n.1, *with Garden Dist. Book Shop, Inc. v. Stewart*, 184 F. Supp. 3d 331, 337–38 (M.D. La. 2016) (the legal question of whether a law satisfies strict scrutiny is the State's burden).

On the fitness front, it is no answer that pre-enforcement challenges *can* be fit for judicial review—when Plaintiffs cannot say how their claims *are* fit. *See, e.g.*, *Choice Inc.*, 691 F.3d at 715 (5th Cir. 2012) (unripe claims pre-enforcement for fitness issues); *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 587–88 (1972) (unripe claims pre-enforcement for fitness issues from slim factual record); *Kleinpeter v. La. State Bd. of Med. Examiners*, 2011 WL 2413455, at *3 (M.D. La. June 10, 2011) ("await[ing] further factual development" to "avoid becoming embroiled in an adjudication that may later turn out to be unnecessary or may require premature examination of issues that time may make easier"); *contra* MTD Opp. 4–5.

Without so much as a single Act 259 order to stand back, Plaintiffs' vagueness and overbreadth claims are plainly unripe. The best example may be the facial challenge in *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008), which Plaintiffs cite approvingly, MTD Opp. 4. In that *post-trial* appeal, the court expressed some ripeness skepticism because "[i]n the context of pre-enforcement review … examining facial vagueness is often difficult, perhaps impossible, because facts are generally scarce." *Id.* As the court clarified, the *only* reason those plaintiffs were able to overcome ripeness is because they had been "charged for violating the ordinance prior to the evidentiary hearing." *Id.* Only "[d]ue to this development" were plaintiffs able to "adduce[] at trial … an adequate record of the ordinance's operation and particularized harmful effect on" the plaintiffs "to permit a determination of whether the [ordinance] [wa]s impermissibly vague in all its applications." *Id.*; *see, e.g.*, *Bell v. Keating*, 697 F.3d 445, 449 (7th Cir. 2012) (plaintiff "was arrested under that ordinance"); *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018) (plaintiff "was arrested" and "legally subject to prosecution"). Here, by contrast, everyone agrees no such charge has occurred. MTD Opp. 3; *see* Burns Decl. at ¶¶ 9–10; Moore Decl. at ¶ 8. That dooms the ripeness of Plaintiffs' facial claims based on both the First and Fourteenth Amendments.

The as-applied claim also fails on ripeness grounds because, perhaps obviously, Act 259 has never been *applied* to these Plaintiffs. MTD Opp. 3. More, it remains entirely speculative whether an Act 259 prosecution would ever occur—especially by the only Defendant who can prosecute such a crime. *See* Moore Decl. ¶¶ 6, 11. To evade that reality, Plaintiffs say even the as-applied claim is "purely legal." MTD Opp. 4. But that flies in the face of the legal landscape. *See Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014) ("a developed factual record is essential"). For much the same reason the Plaintiffs lack standing for their as-applied claim, *infra* Section I.B.1, their premature as-applied claim faces an insurmountable ripeness hurdle.

**B.  Plaintiffs Lack Article III Standing.**

> **1.  Plaintiffs Do Not Have Standing For Their As-Applied Claim (Count I).**

As to standing, Plaintiffs still have no answer for *Justice v. Hosemann*, 771 F.3d 285 (5th Cir. 2014). *See* MTD Opp. at 7–9. Nor could they. There are *no* facts here that would allow this Court to assess an as-applied challenge to Act 259 because Act 259 has never been *applied* to Plaintiffs. *See* MTD Opp. 3; Burns Decl. at ¶¶ 9–10; Moore Decl. at ¶ 8. Applying *Justice*, therefore, Plaintiffs lack standing to sustain an as-applied challenge to Act 259 because "the record is bereft of facts," so "the scope of [any] as-applied ruling [will] necessarily [be] vague, and the hallmarks of a traditional as-applied remedy—dependability and a limited scope—[will be] entirely absent." *Id.* at 294. Indeed, not a single factual allegation in the Complaint links *these* Defendants to Plaintiffs' alleged injury or demonstrate how enjoining *these* Defendants might redress that injury. *See* Compl. ¶¶ 26–57. Without "a sufficiently specific record," the Courts must "decline[] to issue as-applied remedies" that Plaintiffs request. *Id.* (collecting cases).

Regarding *Justice*, the best Plaintiffs can muster is arguing that while their factual record is indeed "scant," *Defendants* must identify some "uncertainty" in Plaintiffs' proposed conduct that prevents the Court from fashioning a facial remedy based on those as-applied allegations. MTD

Opp. 8. Respectfully, that is a gross misapprehension of Fifth Circuit precedent. Just look to *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020), *as revised* (Oct. 30, 2020), which Plaintiffs cite approvingly. The panel there stressed that "[t]he distinction between facial and as-applied challenges bears legal significance" for standing purposes. *Id.* at 335 (quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019) ("The distinction between facial and as-applied challenges bears legal significance when assessing standing.")). Only for the plaintiffs' "facial challenge" did they have standing in a pre-enforcement suit. *Id.* at 330, 334–35. The same could not be said for an as-applied claim because "a party cannot challenge a statute as-applied unless the statute has been applied…." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006) (citing *Adams v. Askew*, 511 F.2d 700, 704 (5th Cir. 1975)); *accord Justice*, 771 F.3d at 292–93 (collecting cases). That is precisely the problem with Plaintiffs' as-applied claim here.

### 2. Plaintiffs Do Not Have Standing For Their Facial Overbreadth Claim (Count II).

Plaintiffs also cannot sustain their facial challenge. As detailed before, MTD Mem. 9–10, alleging "subjective chill" is not enough, *see Couhig v. Brown*, 538 F. Supp. 1086, 1088 (E.D. La. 1982). Even for a facial challenge, Plaintiffs must be "seriously interested in disobeying," and Defendants must be "seriously intent on enforcing, the challenged measure." *Justice*, 771 F.3d at 291 (citation and internal quotation omitted). That is because "facial challenges 'rest on speculation,' 'short circuit the democratic process,' and sit uncomfortably with Article III." *NetChoice, L.L.C. v. Paxton*, No. 21-51178, 2024 WL 4704574, at *1 (5th Cir. 2024); *see Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2428 (2024) (Alito, J., concurring) (facial challenges "strain the limits of the federal courts' constitutional authority to decide only actual 'Cases' and 'Controversies'"). Of course, facial challenges to "statutes that *facially restrict expressive activity* by the class to which the plaintiff belongs" can trigger an Article III injury. *Speech First*, 979 F.3d at 335 (emphasis added).

But the problem is Plaintiffs have yet to explain how Act 259 facially restricts expressive activity by newsgatherers. As Plaintiffs agree, MTD Opp. 4, "[o]n a facial challenge," courts "do not look beyond the text." *Freedom Path, Inc. v. Internal Rev. Serv.*, 913 F.3d 503, 508 (5th Cir. 2019). That is so because "[a] 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Id.* And the relevant portion of Act 259 here says only that "No person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A). No one can reasonably read Act 259 to "arguably facially restrict[]" newsgathering—recording, photographing, interviewing, monitoring, or otherwise observing peace officers. *Speech First,* 979 F.3d at 335. And so Act 259 simply does not facially proscribe any expressive activity—much less that conduct. *See* MTD Mem. 15–17. That means Plaintiffs lack standing for their facial challenge.

Unable to overcome that conclusion, Plaintiffs retreat to an incredibly narrow version of the purported "infringement" on newsgathering. On their newest telling, Act 259 does not prevent *all* (or even most) newsgathering. It, instead, only proscribes "approaching the scene of newsworthy events" for "newsgathering within 25 feet of law enforcement officers." MTD Opp. 6–7 (quoting Compl. ¶¶ 49, 59). But *Freedom Path* rejected that same sort of reliance on as-applied speculation for facial-challenge standing purposes because it "leaves the facial terms of the [statute] behind and moves into the arena of an as-applied challenge." 913 F.3d at 507. Whatever "chilled-speech injury" may exist in the as-applied hypothetical cannot be "traceable to the text of" Act 259, "meaning [Plaintiffs] do[] not have standing to bring this facial challenge." *Id.* at 508.

### 3. Plaintiffs Do Not Have Standing For Their Due Process Claim (Count III).

Binding Fifth Circuit precedent also forecloses Plaintiffs' void-for-vagueness standing theory. The precedent could not be clearer: A plaintiff who has "never been arrested or prosecuted for

violating" a criminal statute "lack[s] standing to preemptively challenge [it] under the Due Process Clause." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024), *cert. denied sub nom. Nat'l Press Photographers v. Higgins*, No. 23-1105, 2024 WL 4426550 (U.S. Oct. 7, 2024). In other words, when "the available evidence suggests that Defendants have never enforced [the statute] against Plaintiffs (or anybody else)," "[t]he issue of whether the [challenged] provisions are unlawfully vague in their proscriptions is therefore a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id.* Again, Plaintiffs wholly agree they (and their employees) have never been subject to an Act 259 order, arrest, or prosecution. *See* MTD Opp. 3; Burns Decl. at ¶¶ 9–10; Moore Decl. at ¶ 8. So, under *National Press Photographers*, Plaintiffs plainly cannot press their vagueness claim.

Nor does it matter that Plaintiffs "should not be required to await and undergo a criminal prosecution" for a vagueness challenge. MTD Opp. 9. That is why *National Press Photographers* considered and rejected that same argument. *See* Br. for Plaintiffs-Appellees/Cross-Appellants, *Nat'l Press Photographers Ass'n*, 2022 WL 17217876, at *20 ("A plaintiff need not 'first expose himself to actual arrest or prosecution' to have standing."). All told, Plaintiffs simply lack standing for a vagueness claim when "the available evidence suggests that Defendants have never enforced [Act 259] against Plaintiffs (or anybody else)." *Nat'l Press Photographers*, 90 F.4th at 782.

Bound by *National Press Photographers*, Plaintiffs attempt to distinguish it as dealing with a "moribund" statute rather than a "recent" statute, like here. MTD Opp. 9. But, perhaps unsurprisingly, that moribund-versus-recent distinction is nowhere to be found across the 29-paragraph standing analysis in *National Press Photographers*, 90 F.4th at 781–85. And the last place Plaintiffs claim to find it is 50-plus-years ago in the companion case to *Roe v. Wade* premised on standing for a since-abrogated right to abortion. *See Doe v. Bolton*, 410 U.S. 179, 189 (1973), *abrogated by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). But as *Dobbs* made clear, "abortion cases ha[d] diluted the strict standard

for facial constitutional challenges," so there is no reason resuscitate *Doe* or *Roe* for the standing analysis here. 597 U.S. at 286.

### C. Attorney General Murrill and Colonel Hodges Are Entitled to Sovereign Immunity.

The claims against Attorney General Murrill and Colonel Hodges also must be dismissed because both are entitled to sovereign immunity. Plaintiffs still do not identify any ongoing violation of federal law. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ("It is true that a complaint must allege that the defendant *is violating* federal law."). And they still fail to allege that Attorney General Murrill and Colonel Hodges have the requisite authority to enforce Act 259 and have demonstrated a willingness to act on that supposed authority. *See Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022); *accord Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024).

Plaintiffs' return to the well of the Attorney General's and State Police's generalized duties to enforce the laws is not enough under settled Fifth Circuit precedent. MTD Opp. 10–13. It must be a "particular *duty* to enforce" *this* Act through "compulsion or constraint." *Scott*, 28 F.4th at 671. Recognizing they fall short of the Fifth Circuit's well-trodden compulsion-constraint and willingness-to-enforce standards, Plaintiffs claim they need only show "a refusal to 'disavow[] enforcement'" in litigation—never mind that they cite zero Fifth Circuit cases holding that Plaintiffs can duck the *Ex Parte Young* inquiry that way. MTD Opp. 11 (quoting *Comput. & Commc'ns Indus. Ass'n v. Paxton (CCIA)*, 2024 WL 4051786, at *6 (W.D. Tex. Aug. 30, 2024)). For good reason: It is entirely circular to suggest that Defendants by virtue of defending themselves in a lawsuit are subjecting themselves to that lawsuit via *Ex parte Young*. That is nonsensical—and, more importantly, not the law.

II.    **The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6) For Failure To State A Claim For Relief.**

A.    **Plaintiffs' First Amendment As-Applied Claim Fails (Count I).**

**1.** Act 259 explicitly regulates conduct, not speech. That laws "regulating conduct often have incidental effects on speech" "does not require courts to treat them as if they were regulations of speech." *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020). To be subject to First Amendment scrutiny, the law must be "specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003). This is where Plaintiffs' as-applied claim comes up short: Plaintiffs *concede* that nothing in Act 259's text is directed toward their speech. MTD Opp. 18 ("Plaintiffs never argued that" "Act does [] mention[s] 'newsgathering, recording, photographing, or documenting.'"). And because Act 259 has "nothing to do with speech or even expressive activity," it does "not implicate the First Amendment" at all. *Nat'l Press Photographers* Ass'n, 90 F.4th at 788. That should spell the end of Plaintiffs' as-applied claim.

Resisting that conclusion, Plaintiffs claim (at 16) "[e]very court … agrees that police orders to move directly implicate the First Amendment even when they make no reference to speech or recording." That is an overstatement—not least because the star Supreme Court case they cite for that proposition did not even resolve a First Amendment claim. *See Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 95 (1965) ("violation of due process to convict and punish him without evidence of his guilt"). And their back-up non-precedential Fifth Circuit case, which concerns a largely free-exercise-based *retaliation* claim—if it offers anything relevant—only underscores Plaintiffs' ripeness and standing issues detailed above. *See supra* Sections I.A, I.B; *World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 344 (5th Cir. 2007) ("Columbia's police officers threatened to arrest Plaintiffs if they did not leave the demonstration."); *see also Jordan v. Jenkins*, 73 F.4th 1162, 1168 (10th Cir. 2023) (discussing Fourth Amendment unlawful arrest claim based on First Amendment *retaliation*). In other

word, no court agrees that a statute facially restricting movement is a speech restriction. And that is precisely what the Fifth Circuit said in *National Press Photographers Association*, 90 F.4th at 788.

Plaintiffs also continue to insist Act 259 excludes them from a traditional public forum for speech. MTD Opp. 17. But the text of the Act does not do that. It says only "No person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A). That is a far cry from expressly banning "access to 'public ways' and 'sidewalks'" outside abortion clinics, *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (cleaned up), or prohibiting "photographing and otherwise recording hunting," *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023).

**2.** If Act 259 regulates speech (and it does not), it is, at most, a facially generally applicable buffer zone law. Act 259's text "is agnostic as to content." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022). And "a facially neutral law" like Act 259 "does not become content based simply because it may disproportionately affect speech on certain topics." *McCullen*, 573 U.S at 480; *contra* MTD Opp. 18.

Against this settled law, Plaintiffs resort to an entirely different First Amendment context: cases regarding permitting and licensing policies for traditional public fora. MTD Opp. at 18; *Smith v. Exec. Dir. of Indiana War Memorials Comm'n*, 742 F.3d 282, 289 (7th Cir. 2014) ("a permit policy cannot invest 'unbridled discretion' in the person who decides whether a permit will issue" (citing *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129–30 (1992)). That is problematic for at least three reasons. *First*, an "unbridled discretion" claim is a separate claim—not alleged as such in the Complaint—with a separate test nowhere even close to satisfied here. *See Moore v. Brown*, 868 F.3d 398, 406 (5th Cir. 2017) ("Moore's unbridled discretion claim fails."). *Second*, such an unbridled discretion claim can be brought only in a facial posture—not in an as-applied posture as pressed here. *See Freedom*

10

*From Religion Found. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020) (It "creates proof problems in as-applied challenges"). *Third*, and most fundamentally, that doctrine concerns only public and limited-public fora permits and licensing schemes that otherwise operate as prior restraints on speech, and it has never been extended beyond that context. *See id.* (collecting cases). It has no application here.

**3.** In all events, the Act satisfies intermediate scrutiny. It need only "further[] an important or substantial governmental interest" that is "unrelated to the suppression of free expression" and that incidentally burdens First Amendment speech "no greater than is essential to the furtherance of that interest." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994) (cleaned up). As always, Act 259 "need not be the least speech-restrictive means of advancing the Government's interests." *Id.* (cleaned up). As detailed at length, the Act furthers a host of significant government interests, from protecting peace officers to ensuring efficient administration of justice. *See* MTD Mem 18–20. And compared to that mountain of significant government interests behind Act 259, Plaintiffs' supposed burden of potentially need to record from 25 feet away in some hypothetical circumstance that has never yet occurred is minimal. *See id.* The Act thus satisfies intermediate scrutiny.

Plaintiffs do not (and could not) dispute that Act 259 furthers governmental interests like public safety that are, of course, important and substantial. Instead, they wrongly assume intermediate scrutiny includes a "narrow tailoring" component. *See* MTD Opp. 20. To conjure that requirement, Plaintiffs cite several cases—not one even claiming to apply intermediate scrutiny. *See Serafine v. Branaman*, 810 F.3d 354, 361 (5th Cir. 2016) (applying "exacting scrutiny"); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 27–28 (2010) (applying "more rigorous scrutiny" than "intermediate scrutiny"); *In re Express-News Corp.*, 695 F.2d 807, 808–09 (5th Cir. 1982) (describing strict scrutiny); *Reed v. Lieurance*, 863 F.3d 1196, 1211 (9th Cir. 2017) (describing Ninth Circuit's test for reasonableness of time, place, manner restriction).

Finally, Plaintiffs' continued reliance on *Perkins v. Hart*, 2023 WL 8274477, at *7 (5th Cir. Nov. 30, 2023), is confounding. MTD Opp. 21. It remains irrelevant, as the Fifth Circuit panel there said nothing about a maximum perimeter for buffer zones. MTD Mem. 20. And Plaintiffs' highlighting of Judge Ho's dissent is especially puzzling given that he rejects the entire premise of their case: "[t]he Constitution does not compel police officers to affirmatively help a citizen secure the ideal camera angle…." *Id.* at *8.

### B. Plaintiffs' Facial Overbreadth Claim Fails (Count II).

The facial challenge to Act 259 also fails. "[F]acial challenges to state laws are difficult to successfully mount." *NetChoice*, 2024 WL 4704574, at *1 (remand order from *Moody*). "[T]he question is whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody*, 144 S. Ct. at 2397 (cleaned up). That "require[s] a court to 'explore the law['s] *full range* of applications—the constitutionally impermissible and permissible both—and compare the two sets.'" *Id.* at *1 (quoting *Moody*, 144 S. Ct. at 2398 and adding emphasis). And "Plaintiffs can meet this burden 'only if the law's unconstitutional applications substantially outweigh its constitutional ones.'" *Id.* (quoting *Moody*, 144 S. Ct. at 2397). "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case." *United States v. Hansen*, 599 U.S. 762, 770 (2023).

In response, Plaintiffs just shuck *Moody* to the side. *See* MTD Opp. 22–24. They first attempt to dodge it altogether. On their telling, their challenge is not "one of overbreadth," MTD Opp. 22 n.8—though their Complaint differs on that score, Compl. at 16 ("COUNT II: Violation of the First Amendment (Facial Overbreadth)"). Instead, they say, their claim concerns the "unbridled discretion" vested by the Act. MTD Opp. 22. But as explained above, *supra* Section II.A, that test has no application beyond permitting and licensing schemes, so it gets them nowhere.

Plaintiffs next attempt to engage *Moody*'s first step by listing just four possible applications of a "list" that "could go on" "infinit[ly]." MTD Opp. 22–23. But that comes nowhere close to identifying the "'what actors' are covered by" Act 259 and "'[w]hat activities' by those actors are covered by" Act 259. *NetChoice*, 2024 WL 4704574, at *2. As the Supreme Court admonished, "focusing on [Act 259]'s 'heartland applications'" is not enough. *Id.* So naming just a few "'examples' [is] only the tip of the iceberg." *Id.* "'[T]here is much work to do []' on the first step." *NetChoice*, 2024 WL 4704574, at *2. And Plaintiffs have not done it.

Nor did they meaningfully engage step two of *Moody*. For that step, too, "[t]here is a serious need for factual development." *Id.* Plaintiffs must explain "how each covered actor" will be regulated by the law "asking, again as to each thing covered, whether the [Act 259] unduly burden[s] expression." *Id.* at *3. That starts by proving "whether each covered actor … is even engaging in expressive activity at all." *Id.* "Then for each covered [actor] engaging in expressive activity," the question becomes "how much the requirement [of the Act] burdens the actor's expression." *Id.* At best, Plaintiffs offer their take on the very last question as applied to them. MTD Opp. 23. ("nothing in its plain text asks whether an individual's presence within 25 feet 'risk[s] substantial harm or if dispersal is otherwise necessary' to serve any legitimate interest"). But that falls well short of what *Moody* demands.

Despite their burden, Plaintiffs are silent as to nearly all of these threshold questions. *See id.* ("It is plaintiffs' burden…."). Without answering them, it is impossible to decide whether Act 259 "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *Moody*, 144 S. Ct. at 2409. And that failure to carry their burden warrants dismissal.

### C. Plaintiffs' Void-for-Vagueness Claim Fails (Count III).

Act 259 is not unconstitutionally vague, even if Plaintiffs' standing for such a claim were not so clearly foreclosed. *See supra* Section I.C. Much like Covid-19 social-distancing mandates, "there is nothing vague about what the [buffer] provision requires—[25] feet of separation." *Case v. Ivey*, 542 F.

Supp. 3d 1245, 1271 (M.D. Ala. 2021), *aff'd,* 2022 WL 2441578 (11th Cir. July 5, 2022). Indeed, Plaintiffs altogether abandon any confusion they had about the statute that would create a notice issue. *See* MTD Opp. 13–16. That alone is enough to dismiss their vagueness claim on the merits.

Plaintiffs gesture at the alleged chilling of their speech based on the "vagueness" of Act 259's enforcement—as articulated by an Indiana district court enjoining Indiana's buffer law on vagueness grounds. *See* MTD Opp. 13–16; *Reps. Comm. for Freedom of the Press v. Rokita*, No. 1:23-CV-1805-JRS-MG, 2024 WL 4333137 (S.D. Ind. Sept. 27, 2024). That argument and that decision are woefully wrong under Fifth Circuit and the Supreme Court's precedents.

In fact, Plaintiffs' bootstrapping their vagueness claims to First Amendment interests is foreclosed by one of the very cases on which they principally rely. *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), teaches that Plaintiffs cannot "merge[] [their] vagueness challenge with their First Amendment claims." *Id.* at 20. In other words, Plaintiffs "cannot raise a successful vagueness claim" on the premise that "speech is clearly proscribed" (however flawed). *Id.* They "may have a valid overbreadth claim under the First Amendment," as Plaintiffs have tried to assert here. *Id.* But the Supreme Court's "precedents make clear that a [] vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." *Id.* "Otherwise the doctrines would be substantially redundant." *Id.*; *see Grayned v. City of Rockford*, 408 U.S. 104, 114–115 (1972) (rejecting a vagueness challenge to a criminal law for implicating First Amendment activities); *Scales v. United States*, 367 U.S. 203, 223 (1961).

So vagueness must be assessed on its own merits. "[T]o be unconstitutionally vague, a statute must be impermissibly vague in all its applications, including its application to the party bringing the vagueness challenge." *United States v. Rafoi*, 60 F.4th 982, 996 (5th Cir. 2023). A statute need only "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory

enforcement.'" *Id.* Plaintiffs complain solely about an officer's discretion in issuing an order, but no one violates the law or is subject to arrest simply for being ordered to stand back while an officer executes his lawful duties. *See* La. R.S. 14:109(A). More, the initial order from a peace officer is itself a built-in notice-provision: Officers have to first vocalize to a bystander both (1) what they cannot do—"knowingly or intentionally approach within twenty-five feet"—and (2) who they cannot approach—"a peace officer who is lawfully engaged in the execution of his official duties." La. R.S. 14:109(A). So it is hard to envision how Act 259 could give reasonable bystanders any more express notice "that their conduct is at risk" of violating the law. *Rafoi*, 60 F.4th at 996.

## PRAYER FOR RELIEF

Defendants respectfully request that this Court grant Defendants' motion to dismiss and dismiss Counts I, II, and III of Plaintiffs' Complaint.

Dated: November 27, 2024                    Respectfully submitted,

                                          */s/ Caitlin Huettemann*
                                          CAITLIN HUETTEMANN (La #40402)
                                           *Assistant Solicitor General*
                                          ZACHARY FAIRCLOTH (La #39875)
                                           *Principal Deputy Solicitor General*
                                          OFFICE OF THE LOUISIANA ATTORNEY GENERAL
                                          1885 North Third Street
                                          Baton Rouge, LA 70804
                                          Telephone: (225) 326-6766
                                          Facsimile:  (225) 326-6795
                                          huettemannc@ag.louisiana.gov
                                          fairclothz@ag.louisiana.gov

                                          *Counsel for Defendants Liz Murrill, in her official capacity*
                                          *as Attorney General of Louisiana, Robert P. Hodges, in his*
                                          *official capacity as Superintendent of the Louisiana State*
                                          *Police, and Hillar C. Moore, III, in his official capacity as*
                                          *District Attorney of East Baton Rouge Parish*