UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEEP SOUTH TODAY, *d/b/a* VERITE NEWS, GANNETT CO., INC., GRAY LOCAL MEDIA, INC., NEXSTAR MEDIA, INC., SCRIPPS MEDIA INC., and TEGNA INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> LIZ MURRILL, *in her official capacity as Attorney General of Louisiana*, ROBERT P. HODGES, *in his official capacity as Superintendent of the Louisiana State Police*, and HILLAR C. MOORE, III, *in his official capacity as District Attorney of East Baton Rouge Parish*, <br><br> *Defendants*. | CASE NO. 3:24-cv-00623 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

Pursuant to this Court's order of December 11, 2024 (ECF No. 24), Plaintiffs respectfully submit the below supplemental authorities to address the question whether the First Amendment prohibits delegating unbridled discretion to law-enforcement officers as well as licensors.

"Although the [unbridled-discretion] doctrine originated with cases involving grants of power to executive officials to determine whether or not to grant licenses to engage in expression at all, it has subsequently been held to a apply to a wider range of burdens on expression," *Bourgeois v. Peters*, 387 F.3d 1303, 1317 (11th Cir. 2004) (invalidating standardless policy of police searches of demonstrators), including police orders like the ones authorized by Act 256, *see Wheelock v. United States*, 552 A.2d 503, 510 (D.C. 1988) (law-enforcement order to demonstrators to leave Capitol Rotunda was "precisely the kind of *ad hoc* exercise of unbridled

1

discretion that is constitutionally prohibited"). Both Supreme Court and Fifth Circuit precedent make that conclusion—and the Act's facial invalidity under the First Amendment—clear.

As relevant here, the Supreme Court has repeatedly held that it is "clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups *either* by use of a statute providing a system of broad discretionary licensing power *or, as in this case*, the equivalent of such a system by selective enforcement of an extremely broad prohibitory statute." *Cox v. Louisiana*, 379 U.S. 536, 557–58 (1965) (emphasis added). And in *Thornhill v. Alabama*, the Court made express that the same principles favoring facial challenges to a discretionary licensing regime without waiting for "proof of an abuse of power in the particular case" also govern the "threat [that] is inherent in a penal statute" that "readily lends itself to harsh and discriminatory enforcement." 310 U.S. 88, 97 (1940). The Fifth Circuit applies the same rule. *See Int'l Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 823 (5th Cir. 1979) (noting that, "in the First Amendment area, the Court will invalidate an excessively broad grant of discretion on its face" in finding a facial challenge to a vague criminal statute justiciable).

The Supreme Court's decision in *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), on which Defendants relied at argument, says nothing to undermine—let alone overrule—that line of precedent. *Ward* suggested that it was "open to question" whether the same considerations would favor a facial challenge to a regulation that only allegedly gave city officials discretion "to provide inadequate sound" to groups using its bandshell, not "unguided discretion to deny the right to speak altogether." *Id.* at 794. Setting aside that the Court ultimately made no holding on that question, *see id.*, on its own terms the point would be irrelevant here. Plaintiffs' unchallenged evidence establishes that the discretion the Act confers will, in practice, allow

2

officers to prevent Plaintiffs from documenting certain matters of public concern altogether. *See, e.g.*, Decl. of Jazmin Thibodeaux Chretien ¶ 5 (impossible to conduct interviews at 25 feet); Decl. of Richard Erbach ¶ 8 (impossible to hear or record audio at 25 feet). And nowhere, it bears underlining, did *Ward* draw Defendants' preferred distinction between licensors and other officials, noting only as a descriptive matter that unbridled-discretion cases "have generally"— but not exclusively, as *Thornhill* makes clear—"involved licensing schemes." 491 U.S. at 793.[1]

No wonder, then, that other courts have applied the unbridled-discretion doctrine to discretionary law enforcement powers post-*Ward*. *See Bourgeois*, 387 F.3d at 1317. That result is consistent with the doctrine's core logic: Unbridled discretion "intimidates parties into censoring their own speech, even if the discretion and power are never actually abused," a risk as acute when discretion belongs to the police as when it rests with licensing or permitting officials. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). And Plaintiffs' uncontested evidence establishes that the statute challenged here has already had just that effect. Even before an order issues, officers' unbridled discretion encourages self-censorship because Plaintiffs' reporters, who cannot know whether they will be given permission to approach within 25 feet, are deterred from attempting to document events that would require authorization that might be denied. *See* Decl. of Katherine Jean Fernelius at ¶ 16 (journalists already forced to "second-guess if [they] can gather news in certain spaces," including locations like the French Quarter where compliance would be impossible because not enough space is available). On that

---

[1] The same is true of Defendants' reliance on *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020), which describes the doctrine's application in the licensing context but nowhere suggests—let alone holds—that it is limited to that context, a question that was not presented in that case.

3

footing, the unbridled-discretion doctrine makes clear, "courts must entertain an immediate facial attack on the law." *Plain Dealer Publ'g Co.*, 486 U.S. at 759.  That rule squarely applies here.

## CONCLUSION

For the reasons set forth above and in their motion for a preliminary injunction, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss and issue a preliminary injunction prohibiting Defendants from enforcing the Act against Plaintiffs.

Dated: December 13, 2024				Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend (*pro hac vice*)
ktownsend@rcfp.org
Grayson Clary (*pro hac vice*)
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Fax: 202.795.9310

*/s/ Scott L. Sternberg*
**STERNBERG NACCARI & WHITE LLC**
Scott L. Sternberg, La. Bar No. 33390
M. Suzanne Montero, La. Bar No. 21361
935 Gravier Street, Suite 2020
New Orleans, LA 70112
Phone: (504) 324-1887
Fax: (504) 534-8961
scott@snw.law | suzy@snw.law

*Attorneys for Plaintiffs Deep South Today,* d/b/a *Verite News*, *Gannett Co., Inc., Gray Local Media, Inc., Nexstar Media, Inc.*, *Scripps Media Inc., and TEGNA Inc.*