## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DEEP SOUTH TODAY,** *d/b/a*
**VERITE NEWS, ET AL**

**VERSUS**

**LIZ MURRILL, ET AL**

**CIVIL ACTION**

**NO. 24-623-JWD-SDJ**

## RULING AND ORDER

This matter is before the Court on two motions. The first is the *Motion for Preliminary Injunction* (Doc. 19) ("*MPI*") brought by Plaintiffs Deep South Today, *d/b/a* Verite News, Gannet Co., Inc., Gray Local Media, Inc., Nexstar Media, Inc., Scripps Media Inc., and Tegna Inc. (collectively "Plaintiffs"). In response, Defendants Attorney General Elizabeth Murrill ("AG Murrill"), Colonel Robert Hodges ("Colonel Hodges"), and District Attorney Hillar Moore, III, ("DA Moore") (collectively "Defendants") filed a *Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction* (Doc. 30) ("*MTD*"). Plaintiffs filed a combined opposition to the *MTD* and reply to the *MPI* (Doc. 35). Defendants filed a reply to the *MTD* (Doc. 39). Oral argument on these motions was heard on December 11, 2024. (Doc. 40.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *MPI* is granted, and the *MTD* is granted in part and denied in part.

## I.    INTRODUCTION

This case concerns the constitutionality of House Bill 173, Act 259, Louisiana Revised Statutes § 14:109 ("Act 259" or the "Act"). This law provides in relevant part:

> No person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat.

La. R.S. § 14:109(A).

Plaintiffs are news organizations claiming that the Act violates their First Amendment right to gather and report the news. (Doc. 1 at 4.) They argue the Act violates the First Amendment as applied to Plaintiffs and on its face and is void for vagueness under the Fourteenth Amendment. (*Id.* at 14–18.)

First, they claim that Plaintiffs' proposed course of conduct, peaceful and unobstructive newsgathering, is proscribed by the Act. (*Id.* at 15.) Plaintiffs say the Act is not narrowly tailored because it "is far broader than necessary to protect any legitimate interest." (*Id.* at 16.) The Act does not allow for "alternative observation opportunities." (*Id.* (quoting *Reed v. Lieurance*, 863 F.3d 1196, 1212 (9th Cir. 2017)) (internal quotation marks omitted).) Therefore, Plaintiffs allege, the Act is unconstitutional as applied to their peaceful, unobstructive newsgathering. (*Id.*)

Second, Plaintiffs claim that the Act is facially unconstitutional because it "'restricts access to traditional public fora' and authorizes officers to regulate a sweeping volume of First Amendment activity, including lawful newsgathering." (*Id.* (quoting *McCullen v. Coakley*, 573 U.S. 464, 476 (2014)).) They argue the Act is a content-based restriction that is not narrowly tailored to a compelling governmental interest. (*Id.* at 17.) Plaintiffs say the Act grants officers discretion with no standards and covers a wide reach of "protected speech and newsgathering." (*Id.*)

Finally, Plaintiffs allege that the Act does not give sufficient notice of what activity is prohibited and "encourage[s] arbitrary and discriminatory enforcement." (*Id.* at 18 (citing *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)) (internal quotation marks omitted).)

## II.    MOTION TO DISMISS

### A.  12(b)(1)

#### i.  Legal Standard

In a Rule 12(b)(1) motion, a party may raise the defense of lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). But, "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010; *see also Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc.* with approval).

There are two forms of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Relevant here, "[a] facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche v. Consulate Gen. of the State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. 2018) (citing *Paterson*, 644 F.2d at 523). In considering a "facial attack," the court "is required merely to look to the

sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Paterson*, 644 F.2d at 523. Whereas, "[a] factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings—such as testimony and affidavits—may be considered." *Harmouche*, 313 F. Supp. 3d at 819 (citing *Paterson*, 644 F.2d at 523). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citation omitted). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* When a factual attack is made, the plaintiff, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

### ii. Discussion

#### 1. Ripeness

##### a. Parties' Arguments

###### i. *MTD* (Doc. 30)

Defendants first argue that Plaintiffs' claims should be dismissed because they are not ripe. (Doc. 30-1 at 14.) Plaintiffs' claims are dependent on a number of contingencies, say Defendants, making them unfit for judicial decision at this time. (*Id.*) Defendants contend that the Act has not been enforced against Plaintiffs or their employees, and it is "entirely speculative that Act 259 would ever result in a prosecution." (*Id.*) They say that the contingencies particularly apply to Plaintiffs' as-applied claim, because as-applied claims necessarily require fact intensive analysis. (*Id.*)

Additionally, Defendants argue that Plaintiffs will face no hardship if the case is dismissed. (*Id.* at 15.) "Act 259 indisputably creates no legal rights or obligations, nor does it force anyone to modify behavior absent a specific, yet-issued order to do so. Until then, Plaintiffs' only articulated harm is a self-imposed newsgathering chilling effect." (*Id.*) Defendants say this is not enough to show that Plaintiffs will face hardship, especially because the Act has been in effect since August 1, 2024, and Plaintiffs' employees have yet to receive an order to retreat. (*Id.*) They argue that Plaintiffs will not face any impediment to bringing this suit again "if and when an officer issues an Act 259 order to one of their employees." (*Id.*)

### ii.  *Opposition* (Doc. 35)

Plaintiffs respond that their claims are ripe, because if they must wait for review until after they are ordered to retreat, "they will be 'forc[ed] to choose between refraining from core political speech on the one hand[]' by obeying an unconstitutional order that prevents them from gathering the news, or 'risking . . . criminal prosecution on the other[.]" (Doc. 35 at 9 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 168 (2014)).) They say that Supreme Court and Fifth Circuit precedent allow judicial review for a statute that regulates behavior by its terms, even if the statute has not been applied. (*Id.*) Plaintiffs argue that even if their journalists have not received an order to retreat, the Act has a chilling effect by discouraging them from attempting to cover events that the journalists are only able to see if they are within 25 feet of a peace officer. (*Id.* at 10.)

Plaintiffs maintain that their claims are purely legal, thus further factual development is not necessary. (*Id.*) Their facial challenge and void for vagueness claims do not require a factual inquiry. (*Id.*) As to Plaintiffs' as-applied claim, they argue that factual development is not necessary "to determine that the government has no legitimate interest in prohibiting proposed

5

newsgathering" that is otherwise lawful. (*Id.* at 11 (citing *American C.L. Union Of Ill. v. Alvarez*, 679 F.3d 583, 606 (7th Cir. 2012)).)

iii.   <u>*Reply*</u> (Doc. 39)

Defendants reply that Plaintiffs' claims are clearly unripe because Plaintiffs cannot prove that they face imminent hardship, particularly because the Act has not been applied since it went into effect in August 2024. (Doc. 39 at 8.) They contend that Plaintiffs only argue that a pre-enforcement suit *can* be fit for judicial review, not that *these* claims are fit. (*Id.* at 9.)

Defendants aver that the vagueness and facial overbreadth claims are "plainly unripe" as there has been no enforcement of the Act. (*Id.*) Likewise, they assert that the as-applied claim fails because the Act has not been applied to any of Plaintiffs' specific actions, and it is speculative whether any violations of the Act will ever be prosecuted. (*Id.* at 10.) Thus, Defendants argue that Plaintiffs' claims are unripe. (*Id.*)

**b.  Applicable Law**

"Under Article III of the Constitution, federal courts are confined to adjudicating 'cases' and 'controversies.'" *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922 (5th Cir. 2017) (quoting *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)). "And to be a case or controversy for Article III jurisdictional purposes, the litigation 'must be ripe for decision,' meaning that it must not be premature or speculative.'" *Id.* (first quoting *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002); and then citing *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) ("The justiciability doctrines of standing, mootness, political question, and ripeness 'all originate in Article III's "case" or "controversy" language. . . .'" (omission in original) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)))). *See also Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) ("[The] basic rationale"

6

of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977))). "In other words, 'ripeness is a constitutional prerequisite to the exercise of jurisdiction.'" *Lower Colo.*, 858 F.3d at 922 (quoting *Shields*, 289 F.3d at 835).

"[R]ipeness is peculiarly a question of timing." *Thomas*, 473 U.S. at 580 (quoting *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)). "[A] court must look at two factors to determine ripeness: (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 930 (5th Cir. 2023) (quoting *Abbott Lab'ys*, 387 U.S. at 149).

"First, a claim is 'fit for judicial decision' if it presents a pure question of law that needs no further factual development." *Id.* (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586–87 (5th Cir. 1987)). "So, if a claim is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe." *Id.* at 930–31 (quoting *Thomas*, 473 U.S. at 580–81 (quotation omitted)). But, "[i]ssues have been deemed ripe when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (quoting *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003). "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Thomas*, 473 U.S. at 581 (quoting *Reg'l Rail*, 419 U.S. at 143 (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923))).

Second, the Court must evaluate if Plaintiffs have "shown that hardship will result if court consideration is withheld at this time." *Choice Inc.*, 691 F.3d at 715. The question is whether "the

impact of the law upon the [Plaintiffs] is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Lab'ys*, 387 U.S. at 152. "An assessment of hardship often turns on a straight-forward prediction of the course events are likely to take." 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3532.3 (3d ed. 2024). "Although it often is difficult to make secure predictions of the probable occurrence or severity of future injury in any particular case, there is nothing complicated about the process." *Id.* Thus, for instance, in a case involving an abortion statute, the Fifth Circuit stated generally that "hardship . . . inhere[s] in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences.'" *Choice Inc.*, 691 F.3d at 715 (quoting *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting *Ohio Forestry Ass'n Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998))).

"The assessment of hardship may be complicated, however, by the fact that some rights are more jealously protected than others." Wright & Miller, *supra*, at § 3532.3. "When such rights are at issue, ripeness may require a lower probability and gravity of any predicted intrusion." *Id.* First Amendment rights have been identified as one of those "accorded special ripeness treatment":

> First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss. In a wide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill. Of course, not all First Amendment claims are ripe; at some point, claims of subjective chilling effect are put aside as too fanciful. Ripeness likewise may be denied if the plaintiff seems able to comply with a challenged regulation without significant cost, if the plaintiff has been able to defy the regulation without apparent loss, or if the desire to protect First Amendment values is offset by the risk that factual ignorance may jeopardize other important values.

*Id.*

### c.  Analysis

The Court finds that Plaintiffs' claims are ripe. First, the Court must determine whether the case is "fit for judicial decision." *Braidwood Mgmt., Inc.*, 70 F.4th at 930 (citing *New Orleans Pub. Serv., Inc.*, 833 F.2d at 586–87). In this case, although the Act has not yet been enforced, further factual development is not necessary. Plaintiffs' facial and vagueness challenges simply require the Court to look to the text of the statute and do not require a factual inquiry. An as-applied challenge typically requires enforcement, but Plaintiffs' injury is "certainly impending." *Thomas*, 473 U.S. at 581. Plaintiffs have alleged that their journalists are in regular contact with law enforcement and routinely receive orders to back away. (Doc. 1 at 8–11.) The threat of having the Act enforced against them is present and looming over Plaintiffs and their journalists.

Second, the Court will determine whether Plaintiffs have "shown that hardship will result if court consideration is withheld at this time." *Choice Inc.*, 691 F.3d at 715. Plaintiffs have met this burden. Plaintiffs' journalists face a chilling effect in the field, where they face arrest if they do not comply with the Act. As these claims center around the First Amendment, the threshold for ripeness is lowered. Wright & Miller, *supra*, at § 3532.3. The chilling effect on Plaintiffs' First Amendment rights is not "fanciful," as journalists are regularly in contact with law enforcement and are likely to receive an order to retreat.

Defendants point to the lack of enforcement of the Act in the six months since it went into effect, saying that the contacts cited by Plaintiffs that occurred before the Act was in effect should not be taken into account. The Court disagrees.

While the Act has not been enforced since it went into effect, Plaintiffs have shown that journalists have routine contact with law enforcement officers in circumstances where they must choose between exercising their First Amendment right to cover newsworthy events or suffer the

risk of arrest and prosecution. (Doc. 1 at ¶¶ 8–11, 49.) This chilling effect is sufficient to meet the ripeness requirement. *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, at 660 (5th Cir. 2006) ("Controlling precedent thus establishes that a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing."); *see also Schelske v. Austin*, 649 F. Supp. 3d 254, 278 (N.D. Tex. 2022) ("The standard for constitutional ripeness mirrors the injury-in-fact requirement for standing.") (citing *Driehaus*, 573 U.S. at 157–58, n.5).

Plaintiffs' claims are fit for judicial decision, and they have shown that they will face hardship if the Court does not consider the case now. Therefore, the Court finds that Plaintiffs' claims are ripe.

### 2. Standing

#### a. Parties' Arguments

##### i. *MTD* (Doc. 30)

Defendants next argue the same factors that weigh against Plaintiffs as to the ripeness of their claims also weigh against standing. (Doc. 30-1 at 15.)

First, Defendants address Plaintiffs' as-applied claim. (*Id.* at 16.) They contend that because Plaintiffs cannot allege that the Act has been enforced against them, they have failed to plead a concrete, particularized, and actual or imminent injury. (*Id.*) Defendants argue that the Court should decline to rule on the as-applied challenge because the absence of facts in the record makes it impossible to issue a traditional as-applied remedy with a limited scope. (*Id.*) Further, Plaintiffs cannot allege a concrete link between their injuries and Defendants' actions because they have not alleged an injury-in-fact. (*Id.*) Defendants look to Plaintiffs' factual allegations in the *Complaint* and say that none of these facts mention any Defendants or actions taken by them. (*Id.* at 17.) They

maintain that the causal link between Plaintiffs' injuries and Defendants' actions is "even more attenuated by Plaintiffs' *only* theory of standing depending on the alleged injury of their journalist employees—third-parties to this suit." (*Id.* (citing *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017)).) Defendants argue that the Court cannot redress Plaintiffs' harm because there is no injury-in-fact and no injury traceable to any particular Defendant. (*Id.*)

Second, Defendants say that the same standing problems apply to Plaintiffs' facial challenge. (*Id.*) They contend that to have standing for First Amendment facial challenges, Plaintiffs must prove that they intend to engage in conduct that is constitutionally protected but proscribed by the statute. (*Id.* at 17–18 (quoting *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008)).) Defendants aver that because the Act does not proscribe newsgathering, a general chilling effect cannot be linked to Defendants' actions. (*Id.* at 18.)

Finally, Defendants argue that Plaintiffs may not bring a void for vagueness claim under the Due Process clause because they have not been arrested or prosecuted for violating the Act. (*Id.* (citing *National Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024), *cert. denied sub nom. National Press Photographers v. Higgins*, No. 23-1105, --- S.Ct. ---, 2024 WL 4426550 (U.S. Oct. 7, 2024)).) They say that because there has been no enforcement, whether the statute is unconstitutionally vague is a hypothetical dispute and Plaintiffs lack standing to assert the claim. (*Id.* at 19.)

### ii.  *Opposition* (Doc. 35)

Plaintiffs argue they have standing to bring their facial First Amendment claim because the claim is within "the highly sensitive area of public regulations governing bedrock political speech." (Doc. 35 at 12 (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020)).) The standing requirement is relaxed in these cases; "no history of enforcement against *anyone* is

required, *see* [*Speech First*, 979 F.3d at 336]; and 'the mere existence of an allegedly vague and broad [law] can be sufficient injury to support standing.'" (*Id.* (quoting *Speech First*, 979 F.3d at 336).) Plaintiffs say that Defendants have the burden to "identify 'compelling contrary evidence' that the Act will not be enforced if its plain text even arguably covers Plaintiffs' proposed course of conduct—which [its] plain text does." (*Id.* (quoting *Speech First*, 979 F.3d at 336).) They argue that Defendants have not said that Plaintiffs will not be prosecuted if the buffer is violated, only that prosecutions under the Act will not be prioritized in East Baton Rouge Parish. (*Id.* (citing Moore Decl., ¶ 11, Doc. 30-3).) Plaintiffs say that their journalists have often received orders akin to those described in the Act, and those orders now carry the possibility of arrest, giving them standing to challenge the law. (*Id.* at 13 (citing *Reporters Comm. for Freedom of the Press v. Rokita*, No. 23-1805, --- F. Supp. 3d ---, 2024 WL 4333137, at *4 (S.D. Ind. Sept. 27, 2024)).)

Next Plaintiffs argue they have standing to bring their as-applied First Amendment claim by pointing out that "news organizations have standing in their own right to challenge burdens on their journalists." (*Id.* at n.2 (citing *In re Express News-Corp.*, 695 F.2d 807, 808 & n.1 (5th Cir. 1982)).) Plaintiffs say they have standing to bring an as-applied pre-enforcement challenge because their proposed course of conduct—"peaceful, nonobstructive newsgathering"—is not uncertain and thus, the Court would face no difficulty in issuing an as-applied injunction. (*Id.* at 14.) There is no need, argue Plaintiffs, for more factual development because their proposed course of conduct is protected by the First Amendment and cannot be prohibited. (*Id.* at 14–15.)

Finally, Plaintiffs cite to *Reporters Committee* to support their argument that they need not have been arrested or prosecuted for violating the Act to challenge it for vagueness. (*Id.* at 15 (citing *Reporters Comm.*, 2024 WL 4333137, at *3).) They dispute Defendants' citation to *National Press Photographers*, saying that it does not prohibit one who has not been arrested or

prosecuted under a statute from challenging it on vagueness grounds, and to do so "would flatly violate Supreme Court precedent." (*Id.* (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15–18 (2010)).) Plaintiffs say that in *National Press Photographers*, there was no evidence that the statute in question had been enforced against anyone in the decade after it was enacted, so "the statute was moribund." (*Id.* (citing *National Press Photographers*, 90 F.4th at 782).) This is not the case here, because the Act is recent. (*Id.* (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)).)

### iii.  *Reply* (Doc. 39)

Defendants argue that Plaintiffs do not have standing to assert their as-applied claim because the Act has not been applied to them. (Doc. 39 at 10.) They repeat their argument that without a more developed factual record, the Court cannot issue a dependable, limited remedy. (*Id.*) They stress that the standing requirement for as-applied challenges requires that the statute must have been applied. (*Id.* at 11 (citing *Carmouche*, 449 F.3d at 659).)

Turning to Plaintiffs' facial overbreadth claim, Defendants argue that "Plaintiffs have yet to explain how Act 259 facially restricts expressive activity by newsgatherers." (*Id.* at 12.) They say that, on its face, the Act does not prohibit—or even address—newsgathering. (*Id.* (citing *Speech First*, 979 F.3d at 335).) Defendants contend that Plaintiffs may not argue that the Act proscribes approaching a newsworthy event as a facial challenge because it moves the challenge into as-applied territory. (*Id.*)

Finally, Defendants argue that Plaintiffs lack standing for their void for vagueness claim because Fifth Circuit precedent requires an individual to have been "'arrested or prosecuted for violating' a criminal statute" to challenge it on vagueness grounds. (*Id.* at 12–13 (quoting *National Press Photographers*, 90 F.4th at 782).) They say that the Fifth Circuit in *National Press*

*Photographers* rejected Plaintiffs' argument that they do not need to wait for a prosecution to challenge a statute for vagueness. (*Id.* at 13.) Plaintiffs cannot rely on the distinction between a moribund law and a recent law because the case used, *Bolton*, was a companion case to *Roe v. Wade*, and the standard for facial challenges had been relaxed for abortion cases. (*Id.* at 13–14 (citing *Bolton*, 410 U.S. at 189; *Dobbs*, 597 U.S. 215).)

### b. Law and Analysis

"A proper case or controversy exists only when at least one plaintiff 'establish[es] that [she] ha[s] standing to sue.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019)). A plaintiff "must show that [he or] she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted)). "These requirements help ensure that the plaintiff has 'such a personal stake in the outcome of the controversy as to warrant [his or her] invocation of federal-court jurisdiction.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

"The plaintiff 'bears the burden of establishing standing as of the time [he or she] brought th[e] lawsuit and maintaining it thereafter.'" *Id.* at 58. (first alterations by this Court; second by *Murthy*) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)). The plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 195

14

(5th Cir. 2012) (quoting *Lujan*, 504 U.S. at 561 (internal quotation marks and alterations omitted)). "At the preliminary injunction stage, then, the plaintiff must make a 'clear showing' that [he or] she is 'likely' to establish each element of standing." *Murthy*, 603 U.S. at 58 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis deleted)). "Where . . . the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence." *Id.* (quoting *Lujan*, 504 U.S. at 561 (internal quotation marks omitted)).

Additionally, "standing is not dispensed in gross." *Id.* at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). "That is, 'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Id.* (quoting *TransUnion*, 594 U.S. at 431). Thus, "for every defendant, there must be at least one plaintiff with standing to seek an injunction." *Id.*

### i.  First Amendment Claims

> [The Fifth Circuit] has repeatedly held, in the pre-enforcement context, that "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007). *See also Freedom Path, Inc. v. I.R.S.*, 913 F.3d 503, 507 (5th Cir. 2019) (same); *Fairchild v. Liberty ISD*, 597 F.3d 747, 754–55 (5th Cir. 2010) (same); *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) (same) ("As the district court noted, '[t]he First Amendment challenge has unique standing issues because of the chilling effect, self-censorship, and in fact the very special nature of political speech itself.' "). It is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech.

*Speech First*, 979 F.3d at 330–31.

The first inquiry the Court must make to determine standing is whether there is a "concrete, particularized, and actual or imminent" injury. *Murthy*, 603 U.S. at 57, (quoting *Clapper*, 568 U.S. at 409 (internal quotation marks omitted)). Regarding their as-applied claim, Plaintiffs have alleged a chilling effect on newsgathering, a protected First Amendment right. *See In re Express-*

*News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982). The Act need not have already been enforced against Plaintiffs, as the harm is imminent: Plaintiffs and their journalists are in contact with law enforcement regularly. As in the ripeness analysis, Plaintiffs face a chilling effect because of the threat of arrest if the Act is enforced.

Plaintiffs' facial challenge likewise meets the injury-in-fact requirement. "Controlling precedent thus establishes that a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing." *Carmouche*, 449 F.3d at 660. Again, Plaintiffs have alleged a chilling effect on newsgathering because of the Act. Therefore, Plaintiffs have alleged an injury-in-fact.

The second inquiry is whether the injury is "fairly traceable to the challenged action." *Murthy*, 603 U.S. at 57 (quoting *Clapper*, 568 U.S. at 409 (internal quotation marks omitted)). To establish traceability, a plaintiff must show "that there is 'a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court[.]'" *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). "Standing exists where the purported injury is connected to allegedly unlawful government conduct." *Id.* (citing *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 (5th Cir. 2014)). Further, "[c]ausation . . . isn't precluded where the defendant's actions produce a 'determinative or coercive effect upon the action of someone else,' resulting in injury." *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Bennett*, 520 U.S. at 169). "Even though Article III requires a causal connection between the plaintiff's injury and the defendant's challenged conduct, it doesn't require a showing of proximate cause or that

'the defendant's actions are the very last step in the chain of causation.'" *Id.* (quoting *Bennett*, 520 U.S. at 169).

Here, Defendants argue that there is no injury-in-fact, thus no traceability, and that Defendants did not cause the Act to be applied. (Doc. 30-1 at 16–17.) The Court disagrees. Peace officers, including State Police Troopers, are empowered to give an order under the Act. La. R.S. §§ 14:109(B); 112.4(B)(2). Thus, Colonel Hodges and the State Police have the authority to issue an order under the Act, potentially violating Plaintiffs' First Amendment rights. Therefore, the injury is traceable to Colonel Hodges.

AG Murrill has been given the authority to prosecute any matters "that stem from an investigation or arrest made by (or with the assistance of) the Louisiana State Police . . . ." in Orleans Parish. Louisiana Attorney General, *Attorney General Liz Murrill and Orleans Parish District Attorney Jason Williams execute historic agreement on New Orleans*, https://www.ag.state.la.us/Article/18 (last accessed 1/28/2025). DA Moore has "charge of every criminal prosecution by the state in his district . . . ." La. R.S. § 16:1. Thus, AG Murrill and DA Moore have the authority to prosecute offenders of the Act. The injury is fairly traceable to both.

The final inquiry is whether the injury is capable of being redressed by this Court. *Murthy*, 603 U.S. at 57 (quoting *Clapper*, 568 U.S. at 409 (internal quotation marks omitted)). "'To satisfy redressability, a plaintiff must show that "it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision."'" *Reule*, 114 F.4th at 368 (quoting *Inclusive Cmtys.*, 946 F.3d at 655 (emphasis in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000))). But, Plaintiffs are "not required to show that their requested relief would *certainly* redress their injuries; rather, they [are] required to show that their requested relief would *likely* (or substantially likely) redress their injuries." *Hancock Cnty.*, 487 F.

App'x at 197 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Lujan*, 504 U.S. at 561).

"Moreover, the proper focus of the redressability inquiry is not whether the relief is likely to be granted; rather, the focus is whether, assuming that the requested relief is granted, that relief will likely redress the plaintiffs' injuries." *Id.* (citing *Adar v. Smith*, 639 F.3d 146, 150 (5th Cir. 2011) (en banc); *Rogers v. Brockette*, 588 F.2d 1057, 1063 (5th Cir. 1979) ("There must be a substantial probability that, if the court affords the relief requested, the plaintiffs' legal injuries will be remedied.") (internal quotation marks and ellipses omitted)). Moreover, "[t]he relief sought needn't completely cure the injury, however; it's enough if the desired relief would lessen it." *Inclusive Cmtys.*, 946 F.3d at 655 (citing *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014)). But, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

If this Court finds that the Act violates the First Amendment, it may issue an injunction that prevents Defendants from taking any action under the Act. If Defendants are unable to issue orders under the Act or prosecute offenders of the Act, the injury to Plaintiffs' First Amendment rights will likely be avoided. Therefore, the injury is redressable by this Court.

After careful consideration, the Court finds that Plaintiffs have satisfied the three elements of standing on their First Amendment claims, and the *MTD* will be denied in that respect.

## ii.  Void for Vagueness Claim

Although Defendants, in briefing and at oral argument, assert that one who has not been arrested or prosecuted pursuant to a statute may not challenge it on vagueness grounds, the Court finds that Plaintiffs have standing for this claim. Defendants cite *National Press Photographers* to support their position but have taken the holding of the case out of context.

In *National Press Photographers*, the Fifth Circuit found that plaintiff media organizations and photojournalists "lack[ed] standing to bring their Due Process claims[]" because "[t]hey have never been arrested or prosecuted for violating" the challenged the statute and "the available evidence suggests that the Defendants have never enforced [the statute] against Plaintiffs (or anybody else)." *National Press Photographers*, 90 F.4th at 782. The Fifth Circuit found that the question of unlawful vagueness was "a mere hypothetical dispute lacking the concreteness or imminence required by Article III." *Id.* (citing *Driehaus*, 573 U.S. at 158).

The holding in *National Press Photographers* was based on a number of factors not present here. First, the Fifth Circuit followed the above-quoted statement by noting that such lack of standing depended on "the absence of any imminent or even credible threat of prosecution." *Id.* Second, the statute in question had been in effect for roughly a decade at the time of the plaintiffs' challenge. *Id.* at 777 (citing Texas Privacy Act, 83d Leg., R.S., ch. 1390, §§ 1–2 (2013), Tex. Gen. Laws 3691-3694 (codified at Tex. Gov't Code §§ 423.001–423.008)). The Fifth Circuit stated that "neither [the Texas Department of Public Safety] nor [the Texas Highway Patrol] has ever arrested anybody for violating Chapter 423 specifically." *Id.* at 780. While there was evidence of a prosecution under the statute by a defendant district attorney in the case, it was not for media-related activities and was therefore unrelated to the plaintiffs' claims. *Id.* Despite the fact that the law had gone into effect a decade prior, the Fifth Circuit found that there was no evidence of any credible threat of prosecutions to the plaintiffs. *Id.* at 782. The plaintiffs' lack of standing, then, relied on plaintiffs' failure to show a concrete, particularized, actual, imminent injury-in-fact. *See id.*

The Fifth Circuit recognized that although the plaintiffs in *National Press Photographers* lacked standing, pre-enforcement vagueness challenges are not necessarily precluded for lack of

standing. "We note that vagueness may be grounds for a pre-enforcement challenge insofar as it chills protected speech under the First Amendment." *Id.* at 782 (citing *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546–47 (5th Cir. 2008) ("Many times void-for-vagueness challenges are successfully made when laws have the capacity to chill constitutionally protected conduct, especially conduct protected by the First Amendment." (internal quotation marks omitted))). Plaintiffs have alleged that the Act has the capacity to chill newsgathering due to the risk of arrest. Plaintiffs' journalists are regularly within 25 feet of peace officers, and now face the threat of arrest and prosecution if an order to retreat is given. (Doc. 1 at ¶¶ 38–39.) The distance required is likely to impede Plaintiffs' non-obstructive newsgathering, which, as explained in detail below, is protected by the First Amendment. (*Id.* ¶¶ 40–44.)

Therefore, the Act has a chilling effect on Plaintiffs' First Amendment rights, supporting a pre-enforcement vagueness challenge. It is not necessary for Plaintiffs to have been arrested or prosecuted pursuant to the Act to have standing to challenge it for vagueness. Traceability and redressability are met for the same reasons as the First Amendment claims. The *MTD* will be denied regarding Defendants' challenge to Plaintiffs' standing for their void for vagueness claim.

### iii.  Associational Standing

Defendants make a one sentence argument that Plaintiffs lack standing to assert the rights of their journalists. (Doc. 30-1 at 17.) Plaintiffs respond that they do have standing to assert these rights. (Doc. 35 at 13, n.2.) The Court finds that Plaintiffs have associational standing on behalf of their members.

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Board*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)) (alteration in *Ass'n of Am. Physicians & Surgeons*).

Here, the journalists would have the right to assert their own First and Fourteenth Amendment rights to challenge the statute, because they gather the news and would be adversely affected by the Act. The First and Fourteenth Amendment challenges are germane to Plaintiffs' purposes, as they are news organizations that rely on the freedom of the press and the freedom of their members to gather the news. Finally, this suit does not involve fact intensive inquiries or monetary damages, so individual members are not required to be parties here. *See id.* at 552–53. Thus, Plaintiffs have associational standing to assert the rights of their journalists.

### 3. Sovereign Immunity

#### a. Parties' Arguments

##### i. *MTD* (Doc. 30)

Defendants' final 12(b)(1) argument is that AG Murrill and Colonel Hodges, sued in their official capacities, are entitled to sovereign immunity because Plaintiffs' claims are essentially suits against the state. (Doc. 30-1 at 19.) Defendants argue that the *Ex parte Young* exception does not apply because Plaintiffs have failed to allege an ongoing violation of federal law. (*Id.* (quoting *Tex. All. For Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022)).) They aver that because Plaintiffs sued before the Act was effective and only allege that it *will* violate their rights, there is no ongoing violation of federal law. (*Id.* at 19–20.)

Next, Defendants say that Plaintiffs have not alleged "that [AG] Murrill and Colonel Hodges have the requisite authority to enforce Act 259." (*Id.* at 20.) They argue that AG Murrill only has a general duty to oversee the implementation of laws and to step into state court

prosecutions at the request of a district attorney or the court. (*Id.* at 20–21.) This is not enough to qualify for the *Ex parte Young* exception to sovereign immunity. (*Id.* at 20.) Defendants say that the agreement between the AG and the Orleans Parish District Attorney that the AG's office would handle any criminal matters stemming from arrests or investigations done by the Louisiana State Police does not give AG Murrill the "'the particular *duty* to enforce' *this* Act through 'compulsion or constraint.'" (*Id.* at 21 (quoting *Scott*, 28 F.4th at 672).) Defendants apply the same reasoning to Colonel Hodges, saying that his duties as Superintendent of the Louisiana State Police do not include the specific duty to implement the Act through compulsion or constraint. (*Id.* (quoting *Scott*, 28 F.4th at 672) (internal quotation marks omitted).)

Finally, Defendants argue that AG Murrill and Colonel Hodges have not expressed "'a demonstrated willingness' to exercise any duty to enforce Act 259." (*Id.* at 22.) They say that there is no allegation that AG Murrill and Colonel Hodges have attempted to enforce the Act or prosecute anyone for violating the Act, which defeats Plaintiffs' argument for the application of *Ex parte Young*. (*Id.*)

ii. *Opposition* (Doc. 35)

Plaintiffs respond that AG Murrill and Colonel Hodges are proper parties to this suit because the *Complaint* includes several allegations of journalists coming within 25 feet of State Police, where AG Murrill would be responsible for prosecuting the violation. (Doc. 35 at 16.) They argue that because AG Murrill and Colonel Hodges can enforce the Act against them, "[a]n injunction prohibiting each Defendant from enforcing the Act against Plaintiffs would directly redress that injury and relieve the Act's chilling effect on Plaintiffs' newsgathering." (*Id.* at 17 (citing *National Press Photographers*, 90 F.4th at 785).)

22

Plaintiffs maintain that AG Murrill and Colonel Hodges are not covered by sovereign immunity because *Ex parte Young* applies. (*Id.*) Contrary to Defendants' position, prior enforcement is not a requirement, only that Defendants have a duty and willingness to enforce the Act, have refused to disavow enforcement, and have the power to enforce the law. (*Id.*)

Plaintiffs contend that Colonel Hodges has "a specific statutory 'dut[y]' to 'enforce the criminal and traffic laws of the state,' La. R.S. § 40:1379(A)" because the State Police and Colonel Hodges are authorized by the Act to give the order to retreat when one is within 25 feet. (*Id.* at 18 (citing *National Press Photographers*, 90 F.4th at 786).) Further, Plaintiffs argue that Colonel Hodges has shown a willingness to enforce the Act by not disavowing enforcement. (*Id.*) Plaintiffs aver that because Louisiana State Troopers can arrest people for violating the law, Colonel Hodges has the right to exercise compulsion or restraint to enforce the Act against bystanders. (*Id.*)

Regarding AG Murrill, Plaintiffs argue that she has stepped into the role of a district attorney in Orleans Parish for cases involving the Louisiana State Police, meaning she now has a duty to prosecute individuals who violate the Act. (*Id.* at 18–19.) Like Colonel Hodges, AG Murrill has not disavowed enforcement, so she has shown a willingness to enforce the Act. (*Id.* at 19.) Plaintiffs say that there are "'specific actions' of hers 'that this Court can enjoin' to prevent a violation of the Constitution . . . ." (*Id.* (quoting *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024)).)

iii.   <u>*Reply* (Doc. 39)</u>

Defendants reiterate their claim that AG Murrill and Colonel Hodges are entitled to sovereign immunity because they do not have the requisite authority to enforce the Act and Plaintiffs have not alleged an ongoing violation of federal law. (Doc. 39 at 14.) They argue that

there must be a particular duty to enforce the Act through compulsion or constraint, and a refusal to disavow enforcement is of no consequence. (*Id.*)

### b. Applicable Law

"Generally, 'sovereign immunity bars private suits against nonconsenting states in federal court.'" *Book People*, 91 F.4th at 334 (quoting *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019)). "This bar also applies to suits like this one 'against state officials or agencies that are effectively suits against a state.'" *Id.* (quoting *Paxton*, 943 F.3d at 997). "Under the *Ex parte Young* exception to sovereign immunity, however, a plaintiff can seek prospective injunctive relief 'against individual state officials acting in violation of federal law.'" *Id.* (quoting *Paxton*, 943 F.3d at 997 (citation omitted)). "These state officials must 'have some connection with the enforcement of the allegedly unconstitutional law.'" *Id.* (quoting *United States v. Abbott*, 85 F.4th 328, 337 (5th Cir. 2023) (internal quotation marks and citation omitted)).

"To satisfy the required enforcement connection, the state official must have a duty beyond 'the general duty to see that the laws of the state are implemented.'" *Id.* at 335 (quoting *Paxton*, 943 F.3d at 999–1000 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014))). "Rather, the official must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *Paxton*, 943 F.3d at 1000 (quoting *Morris*, 739 F.3d at 746)). "This analysis is '"provision-by-provision"': The officer must enforce "the particular statutory provision that is the subject of the litigation."'" *Id.* (quoting *Tex. All. for Retired Ams. v. Scott*, 28 F.4th at 672 (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020))). "We have defined 'enforcement' as 'compulsion or constraint,' so if the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.* (cleaned up).

24

"Plaintiffs need only show a 'scintilla of enforcement by the relevant state official.'" *Id.* (quoting *Tex. Democratic Party,* 978 F.3d at 179 (internal quotation marks and citation omitted)). The Fifth Circuit has "noted that the Article III standing analysis and *Ex parte Young* analysis significantly overlap, such that a finding of standing tends toward a finding that a plaintiff may sue the official under the *Ex parte Young* exception." *Id.* (cleaned up).

Additionally, "the inquiry into whether a suit is subject to the *Young* exception does not require an analysis of the merits of the claim." *Paxton*, 943 F.3d at 998 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002)). "Rather, 'a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"" *Id.* (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (alteration in original) (quoting *Verizon*, 535 U.S. at 645)). As one leading treatise explained:

> The ongoing violation requirement is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if that threat is not yet imminent. [*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329–340 (4th Cir. 2001).] A threat that is sufficient to confer Article III standing . . . satisfies this element of *Ex parte Young*. [*Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (state attorney general's threat of enforcement of no-political-speech buffer zone around polling locations satisfied *Ex parte Young*).] An Indian tribe's challenge to the state's application of Title VII against the tribe was cognizable under the *Ex parte Young* doctrine because the threats to tribal sovereignty, self-governance, and sovereign immunity posed by the investigations themselves were sufficiently imminent even if enforcement was uncertain. [*Aroostook Band of Micmacs v. Ryan*, 404 F.3d 48, 56–66 (1st Cir. 2005).]

17A *Moore's Federal Practice - Civil* § 123.40 (Matthew Bender 3d ed. 2024).

Thus, for instance, in *Summit*, the Eleventh Circuit found:

> *Ex parte Young* requires the allegation of an ongoing and continuous violation of federal law. This requirement does not mean that the enforcement of the allegedly unconstitutional state statute actually must be in progress against the particular plaintiffs initiating suit. Rather, . . . ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, *i.e.,*

designed to prevent injury that will occur in the future, and cases where relief is retrospective. . . . Thus, where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied.

180 F.3d at 1338 (citations omitted).

The Fifth Circuit recognized the balance here in *United States v. Abbott*. There, the appellate court found that *Ex parte Young* did not apply to allow an action against the governor because the order at issue "plainly delegate[d] all remaining enforcement discretion to DPS," not the governor, who had "no ongoing authority over DPS." *Abbott*, 85 F.4th at 336. In doing so, the Fifth Circuit explained:

> True, plaintiffs need not show that the Governor, like Attorney General Young, is so intent on bringing enforcement proceedings that he has, in violation of a court-issued injunction, obtained and served upon an individual plaintiff a court order mandating compliance with an allegedly unconstitutional state law; and only a stint in federal prison in contempt of court can stop him from instituting enforcement proceedings. *See Ex parte Young*, 209 U.S. at 126–27 [ ]; [*Stewart*, 563 U.S. at 254]. But plaintiffs do need to identify at least some enforcement action that the Governor will initiate for this court to enjoin. *See* [*Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021)]. After all, we can only "enjoin named defendants from taking *specified* unlawful actions." *See id.* at 44 [ ] (emphasis added).

*Id.*

### c. Analysis

AG Murrill and Colonel Hodges, as state officials in their official capacity, are entitled to sovereign immunity, but the Court finds that Plaintiffs have adequately alleged that the *Ex parte Young* exception applies. *Book People*, 91 F.4th at 334 (quoting *Paxton*, 943 F.3d at 997). Defendants argue that Plaintiffs have not alleged an ongoing violation of federal law and that AG Murrill and Colonel Hodges do not have the authority to enforce the Act. (Doc. 30-1 at 19–20.) The Court disagrees.

26

First, for the same reasons that the Court analyzed in finding that Plaintiffs have satisfied Article III standing, they have met the requirements for *Ex parte Young*. Threatened violations of federal law, even if there has been no enforcement of the law yet, satisfy the "ongoing violations" element of *Ex parte Young*. *See Moore's, supra*, at §123.40. For the reasons given in the injury-in-fact section, the threatened constitutional violations here are both imminent and substantial, not hypothetical or speculative. *See Book People*, 91 F.4th at 334–36 (linking standing and sovereign immunity analysis). Thus, Defendants' argument here fails.

Second, Defendants do have the authority to enforce the Act. Defendants "must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* at 335 (quoting *Paxton*, 943 F.3d at 1000 (quoting *Morris*, 739 F.3d at 746)). Enforcement is defined as compulsion or constraint. *Id.* Again, the elements for *Ex parte Young* mirror the requirements for traceability. *Id.* Colonel Hodges and the State Police are given the specific authority to enforce the Act. La. R.S. § 14:109(B). A state police trooper may compel a bystander to stay back 25 feet, and arrest those who do not obey the order.

AG Murrill has the authority to enforce the Act, pursuant to the agreement with the Orleans Parish District Attorney's Office. Louisiana Attorney General, *Attorney General Liz Murrill and Orleans Parish District Attorney Jason Williams execute historic agreement on New Orleans*, *supra*. Because AG Murrill and the Attorney General's office may prosecute criminal matters involving the State Police in Orleans Parish, the Court may "identif[y] specific actions that this [C]ourt can enjoin . . . ." to prevent injury to Plaintiffs, *i.e.*, prohibiting AG Murrill from instituting prosecution for violations of the Act. *Book People*, 91 F.4th at 335.

To find that Defendants have shown a willingness to enforce the Act, Plaintiffs must show "a scintilla of enforcement by the relevant state official." *Id.* Plaintiffs have done so here. First,

27

AG Murrill has made multiple public statements endorsing the Act and commenting on its merits.

On August 1, 2024, the day the Act went into effect, AG Murrill made the following statement:

> The law is a reasonable time, place, and manner restriction that ensures law enforcement can do their jobs without threat or obstruction by others. We have had several incidents where police officers were injured while carrying out their lawful duties protecting the community and attempting to restore order. I look forward to defending this reasonable response to documented interference with law enforcement.

Drew Costley, *Case against Louisiana's 25-foot buffer law for police goes before federal judge*,

Louisiana Illuminator, December 7, 2024, https://lailluminator.com/2024/12/07/police-25-feet/.[1]

Furthermore, in an interview with Brian Haldane, a radio host for Talk 107.3 FM, AG Murrill discussed part of the reasoning behind the Act, including protecting law enforcement officers from those attempting to interfere with officers. Mornings with Brian Haldane, *Liz Murrill, 12-12-24*, https://talk1073.com/2024/12/12/mornings-with-brian-haldane-liz-murrill-12-12-24/ (last accessed 1/28/2025). AG Murrill has not disavowed enforcing the Act.

Colonel Hodges has not made any public statements about the Act, but in the declaration by Major Robert Burns of the Louisiana State Police, submitted to this Court, he speaks about the dangers facing law enforcement. Like AG Murrill, Colonel Hodges and the State Police have not disavowed enforcing the Act. (Burns Decl. Doc. 30-2, ¶¶ 6–7.)

From these actions by AG Murrill and Colonel Hodges, the Court concludes that there is at least a scintilla of willingness to enforce. There is an expressed interest in protecting police officers, and it is likely that, should the opportunity arise, the Act will be enforced. AG Murrill's

---

[1] The Court may take judicial notice of stories in newspapers and on Internet news sites. *See Ieradi v. Mylan Laboratories, Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000); *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 592 n.34 (E.D. Va. 2011); *Shell Oil Co. v. Kleppe*, 426 F. Supp. 894, 903 n.3 (D. Colo. 1977), *judgment aff'd*, 591 F.2d 597 (10th Cir. 1979), *judgment aff'd*, 446 U.S. 657 (1980).

and Colonel Hodges's failure to disavow further lends to this conclusion. *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018).[2]

Therefore, the Court finds that Colonel Hodges and AG Murrill may be sued under the *Ex parte Young* exception to sovereign immunity.

### B. 12(b)(6)

#### i. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court

---

[2] *Seals* addresses the failure to disavow in the context of Article III standing, and "the Article III standing analysis and *Ex parte Young* analysis significantly overlap, such that a finding of standing tends toward a finding that a plaintiff may sue the official under the *Ex parte Young* exception." *Book People*, 91 F.4th at 335 (cleaned up).

to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

### ii. Discussion

#### 1. First Amendment As-Applied Challenge

##### a. Parties' Arguments

###### i. <u>*MTD*</u> (Doc. 30)

Defendants argue that Plaintiffs have failed to state an as-applied claim against them because "(1) the Act does not regulate speech or expressive conduct; (2) if it did, the Act would still be a content-neutral reasonable time, place, and manner restriction; and (3) in all events, the Act survives even intermediate scrutiny." (Doc. 30-1 at 23.)

First, Defendants contend that the Act "regulates conduct, not speech." (*Id.*) They argue that while the First Amendment does protect some conduct, "that is only when 'a particular act constitutes protected speech, rather than unprotected conduct.'" (*Id.* (quoting *Hines v. Pardue*, 117 F.4th 769, 776 (5th Cir. Sept. 26, 2024)).) Defendants maintain that the Act is not targeted at speech or "conduct necessarily associated with speech." (*Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)) (internal quotation marks omitted).) They contend that the conduct being regulated is physical encroachment into a buffer zone, not speech of any kind. (*Id.* at 23–24.) They point to the plain language of the statute, saying that it does not prohibit "newsgathering, recording, photographing, or documenting," or other journalistic behaviors. (*Id.* at 24.) Further, the actions prohibited by the Act are not inherently expressive; thus, the Act is a movement restriction and does not implicate the First Amendment. (*Id.* (citing *National Press Photographers*, 90 F.4th at 788).) Defendants say that Plaintiffs' right to gather the news does not extend to being extremely close to a potential crime scene. (*Id.* at 24–25 (citing *Nicodemus v. City of S. Bend, Ind.*, 711 F. Supp. 3d 1015, 1026 (N.D. Ind. Jan. 12, 2024)).) They insist that Plaintiffs do not have special protections because of their status as newsgatherers. (*Id.* at 25.)

Next, Defendants maintain that even if the Act implicates the First Amendment, the regulation is content-neutral, with only incidental impacts on speech. (*Id.*) They again point to the plain language of the statute, arguing that whether someone violates the buffer "depends not on *what* [people] say, but simply on *where* they say it." (*Id.* (quoting *McCullen*, 573 U.S. at 479) (internal quotation marks omitted).)

Finally, Defendants argue that the Act passes intermediate scrutiny, the standard for a content-neutral regulation. (*Id.* at 25–26.) According to Defendants, the Act burdens the First Amendment only incidentally because citizens may still record police activity, just not within 25 feet, which is not a great distance. (*Id.* at 26.) Defendants claim this effect is small compared to the government interests that are furthered by the Act. (*Id.*) Defendants point to one of these governmental interests as "protect[ing] peace officers lawfully engaged in their duties." (*Id.* (citing *Association of Club Execs. of Dall. v. City of Dall.*, 83 F.4th 958, 966 (5th Cir. 2023).) Other interests the Act furthers are:

> (1) affords law enforcement officers the uninterrupted and unimpeded ability to do their jobs, including as examples the need to investigate, secure evidence and statements, and conduct other official police business safely; (2) protects the integrity of government processes as well as suspects, victims, witnesses, and other citizens interacting with law enforcement from harms; (3) promotes officer and public safety by ensuring that someone at a close distance cannot harm or hinder those charged with and engaged in their lawful duties; (4) protects arrestees, suspects, victims, informants, witnesses, and other citizens from harm and inappropriate disclosure of confidential investigative facts by dissipating the risk of exposure or marginalization of a victim who might be endangered or embarrassed from immediately adjacent recording and protecting the privacy interests of third-parties who might be targeted (but not charged) or who might be witnesses or informants; (5) mitigates impairing law enforcement's ability to acquire information effectively or endangering their safety by distracting them from their official duties with happenings in their immediate vicinity; and (6) aids in effectuating arrests and the like.

(*Id.* at 27 (quoting *Nicodemus*, 711 F. Supp. 3d at 1023) (internal quotation marks omitted).) Defendants conclude by saying that these interests are effectively achieved by the Act. (*Id.* at 28.)

32

ii. *Opposition* (Doc. 35)

Plaintiffs respond that "[e]very court to address the issue, including the Supreme Court, agrees that police orders to move directly implicate the First Amendment even when they make no reference to speech or recording." (Doc. 35 at 22 (citing *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90–91 (1965); *World Wide Street Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 341–342 (5th Cir. 2007)).) Even if, as Defendants argue, the Act is a movement restriction, it nonetheless "restrict[s] access to traditional public fora and [is] therefore subject to First Amendment scrutiny." (*Id.* at 23 (quoting *McCullen*, 573 U.S. at 476) (internal quotation marks omitted).)

Plaintiffs argue that the application of the First Amendment to the Act is common sense, because allowing police to stop filming through a dispersal order, "would allow the government to simply proceed upstream and dam the source of speech—*i.e.*, it would allow the government to bypass the Constitution." (*Id.* (quoting *Jordan v. Jenkins*, 73 F.4th 1162, 1170 (10th Cir. 2023)) (internal quotation marks omitted).) For this reason, "courts have consistently concluded that the First Amendment protects not just monitoring or recording as such but also 'approaching' a newsworthy event in order 'to carry out plaintiffs' protected monitoring and recording.'" (*Id.* (quoting *Brown v. Kemp*, 86 F.4th 745, 779 (7th Cir. 2023)).) The text of the Act, insist Plaintiffs, need not mention newsgathering directly to "threaten the exercise of First Amendment rights." (*Id.* at 24.)

Next, Plaintiffs argue that the Act can never be content-neutral because it allows peace officers "standardless discretion to regulate First Amendment activity . . . ." (*Id.* at 24 (citing *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 133, n.10 (1992); *Smith v. Exec. Dir. Of Ind. War Mem'ls Comm'n*, 742 F.3d 282, 289 (7th Cir. 2014)).) Plaintiffs say that the lack of

constraints in the Act allows officers to apply the Act "in a content based manner." (*Id.* (quoting *Forsyth Cnty.*, 505 U.S. at 133, n.10).) This would mean that strict scrutiny applies to the Act. (*Id.* at 25.)

Plaintiffs maintain that "[t]he Act also has 'a content-based purpose or justification . . . .'" (*Id.* (quoting *City of Austin v. Reagan Nat'l Advert. Of Austin, LLC*, 596 U.S. 61, 69 (2022)).) They liken this case to *Brown v. Kemp*, where the Seventh Circuit found that a ban on approaching hunters was content-based and viewpoint-based because the goal of the law was "'to expand [liability] to reach expressive activity that does not involve physical interference' and thereby discourage observing certain subjects." (*Id.* (quoting *Brown*, 86 F.4th at 782).) Plaintiffs argue that because obstruction of lawful processes is covered by existing law, the only purpose of the Act is "to suppress observation of law enforcement." (*Id.*)

Plaintiffs contend that the Act does not pass any levels of First Amendment scrutiny, thus it must fail. (*Id.* at 26.) Under intermediate scrutiny, Plaintiffs say that Defendants have not shown that the Act is narrowly tailored to a significant governmental interest, as they have not addressed how the government interests cited are furthered by restricting peaceful and unobstructive newsgathering, Plaintiffs' proposed course of conduct. (*Id.*) They argue "[t]here is no legitimate interest in criminalizing journalism that is 'not disruptive of public order or safety, and carried out by people who have a legal right to be in a particular public location and to watch and listen to what is going on around them.'" (*Id.* (quoting *Alvarez*, 679 F.3d at 606).) Further, they say that Defendants have not established that being within 25 feet of an officer "amounts to obstruction." (*Id.* at 27.) Plaintiffs cite to a Fifth Circuit decision where a bystander standing a few feet away from officers was protected by the First Amendment. (*Id.* citing *Perkins v. Hart*, No. 22-30456, 2023 WL 8274477, at *7 (5th Cir. Nov. 30, 2023) (per curiam)).) Plaintiffs say that the Act is not

narrowly tailored because Defendants have not established why the buffer zone is 25 feet and why a smaller buffer would not have worked. (*Id.*)

Finally, Plaintiffs argue that the 25-foot buffer is too large "to reliably record audio or conduct interviews . . . ," and the Act has not allowed an alternative channel of communication, thus failing intermediate scrutiny. (*Id.* (citing *Schenck v. Pro-Choice Network of W.N.Y.*, 519 U.S. 357, 377–78 (1997)).) Therefore, Plaintiffs say "Defendants have failed to carry their burden to demonstrate that the Act can survive any degree of First Amendment scrutiny." (*Id.* at 27–28.)

### iii. *Reply* (Doc. 39)

In reply, Defendants say that "Act 259 explicitly regulates conduct, not speech." (Doc. 39 at 15.) They argue that Plaintiffs have conceded that the Act's text is not directed at speech, thus Plaintiffs' as-applied claim must fail. (*Id.*) They address Plaintiffs' citation to *Shuttlesworth*, saying that it did not resolve a First Amendment claim. (*Id.* (citing 382 U.S. at 95).) According to Defendants, the Act does not restrict access to public fora, and "is a far cry from expressly banning 'access to "public ways" and "sidewalks"' outside abortion clinics [*McCullen*, 573 U.S. at 476], or prohibiting 'photographing and otherwise recording hunting.' [*Brown*, 86 F.4th 745]." (*Id.* at 16.)

Even if the Act regulates speech, Defendants contend "it is, at most, a facially generally applicable buffer zone law." (*Id.*) It is content-neutral and "does not become content based simply because it may disproportionately affect speech on certain topics." (*Id.* (citing *McCullen*, 573 U.S. at 480) (internal quotation marks omitted).) They say that Plaintiffs' cases regarding the restriction of access to public fora and unbridled discretion are cases about licensing and permitting that have not been applied outside of that context and are therefore not applicable here. (*Id.* at 16–17.)

Defendants argue that the Act does satisfy intermediate scrutiny because "the Act furthers a host of significant government interests, from protecting peace officers to ensuring efficient administration of justice." (*Id.* at 17.) Compared to the numerous significant government interests, the burden on Plaintiffs "to record from 25 feet away in some hypothetical circumstance that has never yet occurred is minimal." (*Id.*) They say that the Act does not need to be narrowly tailored, distinguishing the cases cited by Plaintiffs as not applying intermediate scrutiny. (*Id.*) Defendants finally say that Plaintiffs' reliance on *Perkins* is misplaced, as the Fifth Circuit did not give a maximum perimeter for buffer laws. (*Id.* at 18.)

### b. Law and Analysis

The First Amendment, as made applicable to the states by the Fourteenth Amendment, prohibits states from making laws "abridging the freedom of speech, or of the press . . . ." U.S. Const. amend. I. The Fifth Circuit has recognized that the First Amendment provides protection for newsgathering. *In re Express-News Corp.*, 695 F.2d at 808 (citing *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). Further, the Fifth Circuit has said "the First Amendment protects the act of making film, as 'there is no fixed First Amendment line between the act of creating speech and the speech itself.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) (quoting *Alvarez*, 679 F.3d at 596). The court there held that there was a right to film police, underscored by the First Amendment's safeguard of "the right of the people to hold government officials accountable— filming them in the course of their duties being one way to do that." *National Press Photographers*, 90 F.4th at 789. Plaintiffs' proposed course of conduct, peaceful and unobstructive newsgathering, includes recording interactions with police. (Doc. 1 at 15.) Even though the Act does not directly address newsgathering, newsgathering may be inhibited by an order to retreat.

36

The right to gather the news is not unlimited. In *National Press Photographers*, the Fifth Circuit applied intermediate scrutiny instead of strict scrutiny because the law in question was conduct-based, was not speaker-based, and only had incidental effects on First Amendment rights. *National Press Photographers*, 90 F.4th at 790–93.

While the First Amendment is implicated by the Act as-applied to Plaintiffs, there is only an incidental effect on activity protected by the First Amendment. "[G]enerally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Id.* at 792–93 (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991)) (internal quotation marks omitted). "It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg*, 408 U.S. at 684. The Act applies to all people within 25 feet of a peace officer, regardless of their status as journalists, and thus is generally applicable. La. R.S. § 14:109. Nothing in the language of the Act is directed at speech or newsgathering. *Id.* The application of the Act does not necessarily involve the regulation of speech or newsgathering; rather, the Act is directed at conduct. Therefore, the Court finds that any effect on Plaintiffs' First Amendment right of newsgathering is incidental to the conduct regulated by the Act. *See Hines*, 117 F.4th at 775 ("Still, neither the Supreme Court—nor our court—has suggested heightened protection for speech regulated only incidentally to a generally applicable regulation of conduct."). This weighs in favor of intermediate scrutiny. *See National Press Photographers*, 90 F.4th at 792–93.

To determine whether the Act is conduct-based or content-based, the Court must look to "what 'trigger[s] coverage under the statute.'" *Hines*, 117 F.4th at 777 (quoting *Humanitarian Law Project*, 561 U.S. at 28). If the Act is not aimed at expression, a "less stringent standard" applies.

*Humanitarian Law Project*, 561 U.S. at 28 (quoting *Texas v. Johnson*, 491 U.S. 397, 403 (1989)).

The Act prohibits approaching within 25 feet of a peace officer when an order to stay back has been issued. La. R.S. § 14:109. The Act is triggered when a person is within 25 feet of a peace officer and is ordered to retreat. *Id.* Again, this applies to journalists and the general public alike, based on where they are located. The Act regulates *where* the public may be in relation to law enforcement, not *what* they say. Therefore, the Act is conduct-based and content-neutral. This also weighs in favor of intermediate scrutiny. *See National Press Photographers*, 90 F.4th at 793.

> In an abundance of caution . . . we apply the intermediate scrutiny test articulated by the Supreme Court . . . which balances the individual's right to speak with the government's power to regulate. [*United States v. O'Brien*] rests on the principal that when "speech" and "non-speech" elements are united in a course of conduct, a valid governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

*Kleinman v. City of San Marcos*, 597 F.3d 323, 328 (5th Cir. 2010) (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

> Under intermediate scrutiny, [a] content-neutral regulation will be sustained if it furthers an important governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interests. Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. Narrow tailoring in this context requires, in other words, that the means chosen do not burden substantially more speech than is necessary to further the government's legitimate interests.

*National Press Photographers*, 90 F.4th at 793 (quoting *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994)) (cleaned up).

Defendants have articulated governmental interests that the Act furthers. At this stage, the Court need not determine whether these interests are important or related to the suppression of free expression because the Act is not narrowly tailored. "To meet the requirement of narrow tailoring,

the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 573 U.S. at 495. Or, using the words of the Fifth Circuit, the Defendants must show "that the means chosen do not burden substantially more speech than is necessary to further the government's legitimate interests." *National Press Photographers*, 90 F.4th at 793 (quoting *Turner Broadcasting Sys.*, 512 U.S. at 665) (internal quotation marks omitted).

Having carefully considered the matter, the Court finds that Plaintiffs have adequately pled an as-applied claim. Plaintiffs have alleged that the Act is not narrowly tailored because the government interests could be achieved by a smaller buffer zone, which would allow them to gather the news more easily. (Doc. 1 at 16.) They claim that their journalists are regularly within 25 feet of police officers and are often in situations where a 25-foot buffer would obstruct the any observation they might make. (*Id.* at 11.)

Further, the Act could be more narrowly tailored even if the 25-foot buffer remained. The Act contains no limiting provisions to attempt to burden a smaller amount or degree of expressive conduct or speech with the result that the Act "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *National Press Photographers*, 90 F.4th at 793; La. R.S. § 14:109. Examples of how the Act could be less restrictive while still achieving the governmental interests abound. The Act could provide that an officer may only give an order to retreat to those who attempt to interfere with the lawful execution of the officer's duties. *See* La. R.S. § 14:108. Or it could incorporate the requirements of another existing statute that prohibits obstruction of police, like resisting an officer or injuring an officer. *See e.g.* La. R.S. §§ 14:108; 108.2(A). Incorporating either set of limitations would continue to further the

39

government's legitimate interests while not burdening substantially more speech than is necessary to further those interests.

Taking the factual allegations of the *Complaint* as true and viewing the facts in a light most favorable to Plaintiffs, they have sufficiently alleged that the Act is not narrowly tailored. Although the Act does not need to be the least restrictive means necessary, a smaller buffer zone or limited circumstances in which an order can be given would likely achieve the same interests. It is plausible that a less restrictive law would achieve the same interests. Therefore, Plaintiffs' as-applied claim survives the motion to dismiss stage.

### 2.    First Amendment Facial Challenge

#### a.    Parties' Arguments

##### i.    *MTD* (Doc. 30)

Defendants argue that, to find the Act unconstitutional, a substantial number of the Act's applications must be unconstitutional, "judged in relation to the statute's plainly legitimate sweep." (Doc. 30-1 at 29 (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)) (internal quotation marks omitted).) Because the text of the Act only prohibits coming within 25 feet of a police officer after an order to retreat, it can apply to anyone. (*Id.* at 29–30.) Defendants contend that if individuals stay outside the 25-foot buffer zone, they are free to gather the news uninhibited. (*Id.* at 30.)

Defendants give several examples of how the Act may be applied, including ordering bystanders to stand back from a gas leak, setting a perimeter around an animal in a wildlife rescue, or keeping pedestrians away from a Mardi Gras float that has broken down. (*Id.* at 30.) They argue that these applications and "innumerable" others do not burden speech at all. (*Id.*)

40

Defendants say that the Court must look at the ratio of unconstitutional applications of the Act to all possible applications. (*Id.* at 30–31 (citing *Moody v. NetChoice, LLC*, 603 U.S. 707, 780 (2024) (Alito, J., concurring)).) "[T]he vast swath of the Act's applications have no First Amendment impact." (*Id.* at 31.) Rather, argue Defendants, there are few to no applications that do burden the First Amendment. (*Id.*) They look to Plaintiffs' statement in the *MPI* that the Act burdens a "narrow category of disfavored speech," saying this shows that even if the Act does encroach on this narrow category, the unconstitutional applications do not outweigh the constitutional applications. (*Id.* (citing Doc. 19-1 at 19).) Therefore, Defendants insist that Plaintiffs' facial overbreadth claim fails. (*Id.*)

Finally, Defendants dispute Plaintiffs' argument that obstruction laws already protect peace officers from interference, as there are some applications of the Act that would not be covered by obstruction laws, like in a wildlife rescue. (*Id.*) Further, they aver that whether the Act is necessary in light of other laws in place is relevant "to the wisdom of the law, not its constitutionality." (*Id.*)

ii.    *Opposition* (Doc. 35)

Plaintiffs argue that the Act is unconstitutional on its face because it gives peace officers "unbridled discretion" in deciding "whether to permit or deny expressive activity." (Doc. 35 at 28 (quoting *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755 (1988)) (internal quotation marks omitted).) This discretion is present in every application of the Act, Plaintiffs say, and facial challenges are favored in this context "because the chilling effect of standardless discretion 'risks self-censorship and creates proof problems in as-applied challenges,'" (*Id.* (quoting *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020)).) Plaintiffs argue that there are infinite unconstitutional applications because there are no standards for the peace officer to consider in ordering the buffer zone. (*Id.* at 28–29.)

41

Next, Plaintiffs say that the Act is not narrowly tailored because Defendants have not shown that other less restrictive means would not have advanced the cited government interests. (*Id.* at 29.) They note that Defendants have not shown that Louisiana tried to make the law less restrictive or shown other jurisdictions where a 25-foot buffer zone law was successfully implemented. (*Id.* (citing *Randall v. Sorrell*, 548 U.S. 230, 253 (2006)).) Likewise, they argue that Defendants have not shown why the criminal statutes already in place do not sufficiently further the governmental interests served by the Act. (*Id.*) They say that the situations offered by Defendants as constitutional applications of the Act are all covered by other statutes. (*Id.* at 29–30.)

### iii. *Reply* (Doc. 39)

Defendants argue that Plaintiffs cannot use the "unbridled discretion" standard because that standard is only used for permitting and licensing. (Doc. 39 at 18–19.) They say the only standard applicable here is set out in *Moody*. (*Id.* at 18–19 (citing 603 U.S. at 723).) According to Defendants, Plaintiffs only named four possible unconstitutional applications of the Act, and there are infinite ways to apply the Act. (*Id.* at 19.) Second, Defendants argue that the factual record should be better developed, and Plaintiffs must show that the covered actors are engaging in expressive activity. (*Id.* (citing *NetChoice, LLC v. Paxton*, 121 F.4th 494, 499 (5th Cir. 2024)).) They say that Plaintiffs have shown that they would be engaged in expressive activity, but do not address any other actors that would be covered by the Act. (*Id.*) Thus, Defendants conclude, Plaintiffs have not met their burden, and their facial overbreadth claim should be dismissed. (*Id.*)

### b. Law and Analysis

Although Plaintiffs labeled Count II of the *Complaint* as "Violation of the First Amendment (Facial Overbreadth)," at oral argument and in their briefing on the *MPI* and *MTD*, Plaintiffs seem

to characterize the claim as an unbridled discretion issue. The Court will address both claims in turn.

Facial challenges are "hard to win" because they "often rest on speculation" and "threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Moody*, 603 U.S. at 723 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450–51 (2008)) (internal quotation marks omitted). "That is true even when a facial suit is based on the First Amendment, although then a different standard applies." *Id.* The Supreme Court has lowered the usual high bar to facial challenges for First Amendment cases. *Id.* For a statute to be found facially unconstitutional under the First Amendment, "[t]he question is whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021). "So in this singular context, even a law with 'a plainly legitimate sweep' may be struck down in its entirety. But that is so only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 723–24.

i.  Facial Overbreadth

"The first step in the proper facial analysis is to assess the state [law's] scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" *Id.* at 724. Here, the Act prohibits any person from approaching within 25 feet of a peace officer who has given an order to retreat or to stop approaching. La. R.S. § 14:109(A). It is not limited to journalists or videoing law enforcement.

"The next order of business is to decide which of the [law's] applications violate the First Amendment, and to measure them against the rest." *Moody*, 603 U.S. at 725. As explained above,

the Court will apply intermediate scrutiny to the Act to determine unconstitutional applications. Because the Act applies to any bystander, journalist or not, the Act may be applied in a number of circumstances that do not encroach on the First Amendment. Plaintiffs have not alleged which applications of the Act would be unconstitutional; instead they simply allege that the Act "sweeps in an enormous breadth of protected speech and newsgathering." (Doc. 1 at 17.) Therefore, the Court finds that Plaintiffs have not sufficiently alleged a facial overbreadth claim and the *MTD* is therefore granted on this ground. However, the Court will grant leave to amend this claim because, (a) Plaintiffs could potentially supplement their allegations in a plausible manner to specify what specific "enormous breadth of protected speech" is burdened by the Act, and, (b) putting this aside, it is a "wise judicial practice" to allow at least one opportunity to amend, even when it is unlikely that the deficiency could be cured. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

### ii.   Unbridled Discretion

At oral argument, the Court heard argument regarding whether the unbridled discretion doctrine should apply to any aspect of the issues before the Court. Plaintiffs maintained that unbridled discretion has been applied outside of the licensing context, while Defendants argued that no court has extended the unbridled discretion test to facial First Amendment challenges not involving licensing schemes. The Court ordered both parties to submit supplemental briefing on the unbridled discretion issue. (Doc. 40.)

> Unbridled discretion runs afoul of the First Amendment because it risks self-censorship and creates proof problems in as-applied challenges. [*City of Lakewood*, 486 U.S. at 757–59.] "[T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." [*Id.* at 757.] Moreover, even where self-censorship is avoided, "the absence of express standards makes it difficult to distinguish, 'as applied,' between a licensor's

legitimate denial of a permit and its illegitimate abuse of censorial power." [*Id.* at 758.] Any "eventual relief may be 'too little and too late.' " *Id.*

*Freedom from Religion Found.*, 955 F.3d at 427.

Plaintiffs argue that the unbridled discretion doctrine has been applied outside of the licensing context, including orders from police similar to those the Act allows. (Doc. 41 at 1 (citing *Bourgeois v. Peters*, 387 F.3d 1303, 1317 (11th Cir. 2004); *Wheelock v. United States*, 552 A.2d 503, 510 (D.C. 1988)).) They also cite *Cox v. Louisiana*, saying that the Supreme Court recognized the link between the unconstitutionality of allowing a public official to choose which expressions are permitted or denied either through broad licensing power or "selective enforcement of an extremely broad prohibitory statute." (*Id.* at 2 (quoting *Cox v. Louisiana*, 379 U.S. 536, 557–58 (1965) (internal quotation marks omitted)).) They further argue for this connection by citing to *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940), and *International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 823 (5th Cir. 1979). (*Id.*) Plaintiffs address *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), asserting that *Ward* did not decide whether unbridled discretion was applicable outside the realm of licensing schemes. (*Id.*) In closing, Plaintiffs argue that they have adequately pled that the unbridled discretion authorized by the Act "encourages self-censorship" and is therefore unconstitutional (*Id.* at 3.)

Defendants respond by first arguing that Plaintiffs' unbridled discretion claim must be a facial challenge, and the only facial challenge in the *Complaint* is one for overbreadth. (Doc. 42 at 1–2.) They argue that Plaintiffs cannot amend the *Complaint* by subsequent briefing and the claim should be dismissed. (*Id.* at 2.)

But even if Plaintiffs had alleged an unbridled discretion claim, Defendants maintain that the standard does not apply to the Act. (*Id.*) First, they say that the Act is not a prior restraint that requires approval for expressive conduct, and an unbridled discretion claim requires a prior

restraint. (*Id.* at 2–3 (citing *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 235 (5th Cir. 2012); *Baby Dolls Topless Saloons, Inc. v. City of Dall., Tex.*, 295 F.3d 471, 483 (5th Cir. 2002)).) Further, Defendants argue that the Supreme Court and the Fifth Circuit have not applied the unbridled discretion doctrine to cases other than permitting and licensing. (*Id.* at 3 (citing *Ward*, 491 U.S. at 794.) They point to a colloquy in the oral argument of the *Nicodemus* appeal before the Seventh Circuit, where one judge questioned the extension of this doctrine. (*Id.* at 4 (citing Oral Arg. Recording, *Nicodemus v. City of South Bend*, No. 24-1099 (7th Cir.) at 5:20).) Finally, Defendants maintain that the cases cited by Plaintiffs—*Bourgeois*, *Cox*, *Thornhill*, *City of Lakewood*, and *Eaves*—deal with prior restraints on speech, and are thus inapplicable here. (*Id.*)

After careful consideration, the Court will grant Defendants' *MTD* on this issue. Although Plaintiffs claimed that the Act grants unbridled discretion to peace officers, they provide no supporting factual allegations. Count II of the *Complaint* simply alleges the legal conclusion that the Act grants unbridled discretion. The Court must take all well pled allegations in the *Complaint* as true, but it need not accept legal conclusions as true. *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210. The unbridled discretion claim seems to be intertwined with the facial overbreadth claim, and neither meet the standard of a well pled complaint. The Court will allow Plaintiffs leave to amend, in accordance with "wise judicial practice" and because Plaintiffs may be able to adequately supplement this claim with an amendment. *See* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

### 3.  Fourteenth Amendment Void For Vagueness Challenge

#### a.  Parties' Arguments

##### i.  _MTD_ (Doc. 30)

Defendants first argue that the void for vagueness claim should be dismissed because the Act gives notice of the actions that it proscribes. (Doc. 30-1 at 32.) They say the Act does define what would prompt a dispersal order: "knowingly approaching within 25 feet of a law enforcement officer that has issued an order to stand back." (_Id._ (citing _Bell v. Keating_, 697 F.3d 445, 462 (7th Cir. 2012)).) Addressing Plaintiffs' contention that the 25 feet requirement is too vague, Defendants say that the Louisiana Legislature could not have been clearer, and minimum distance requirements were used for COVID-19 social distancing mandates with little trouble. (_Id._ at 32–33 (citing _Case v. Ivey_, 542 F. Supp. 3d 1245, 1271 (M.D. Ala. 2021), _aff'd_, 2022 WL 2441578 (11th Cir. July 5, 2022). Even if an individual were not able to approximate 25 feet, Defendants argue that the Act provides exceptions for those who did not know they were encroaching on the buffer zone. (_Id._ at 33.)

Defendants also claim that law enforcement officers have discretion to enforce every criminal statute, which does not make them void for vagueness, "[n]or does Act 259 contain some subjective call for an officer to make." (_Id._) The officers are not required to determine that behavior meets a certain standard before enforcing the Act. (_Id._) Defendants then argue that adding an exception for newsgathering would create the very subjectivity that Plaintiffs are trying to avoid. (_Id._)

##### ii.  _Opposition_ (Doc. 35)

Plaintiffs say that the void for vagueness argument is "the most straightforward basis for enjoining enforcement of the Act . . . ." (Doc. 35 at 19.) Regarding the discretion granted to officers,

they argue that Defendants' statement that all criminal statutes involve some level of discretion is "a concession that Defendants cannot find any 'guidance to the officer deciding whether such an order should issue' in the text of the Act itself." (*Id.* at 20 (citing *Morales*, 527 U.S. at 62).) Plaintiffs say that because there are no standards in the Act, peace officers must find a way to determine when to issue an order under the Act. (*Id.* (citing *Reporters Comm.*, 2024 WL 4333137).) There is no guidance given to these officers, which creates a Due Process violation. (*Id.* at 20–21.)

Further, argue Plaintiffs, the Act does not give fair notice as to what will prompt an order to retreat. (*Id.* at 21.) They say that the Act does not afford individuals the "ability to conduct themselves so as to avoid receiving an order backed by the threat of arrest and criminal prosecution." (*Id.*) Therefore, according to Plaintiffs, the Act violates the Fourteenth Amendment's Due Process Clause and is void for vagueness. (*Id.* at 21–22.)

### iii. *Reply* (Doc. 39)

Defendants reiterate that the Act is not unconstitutionally vague because it describes exactly what conduct is prohibited: coming within 25 feet of a peace officer who has given an order to retreat. (Doc. 39 at 19–20.) They argue that "Plaintiffs cannot 'merge[] [their] vagueness challenge with their First Amendment claims.'" (*Id.* at 20 (quoting *Humanitarian Law Project*, 561 U.S. at 20).) A law is not unconstitutionally vague simply because it applies to a large number of expressive activities. (*Id.*)

Defendants say no person is facing arrest simply by being told to stand back under the Act. (*Id.* at 21.)

> More, the initial order from a peace officer is itself a built-in notice-provision. Officers have to first vocalize to a bystander both (1) what they cannot do— "knowingly or intentionally approach within twenty-five feet"—and (2) who they cannot approach—"a peace officer who is lawfully engaged in the execution of his official duties."

(*Id.*) Thus, Defendants assert, the Act is not unconstitutionally vague. (*Id.*)

### b.   Law and Analysis

A statute is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304 (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). "The doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.'" *Smith v. Goguen*, 415 U.S. 566, 572–73 (1974) (internal citations omitted). "When a statute is capable of reaching first amendment freedoms, the doctrine of vagueness 'demands a greater degree of specificity than in other contexts.'" *Kramer v. Price*, 712 F.2d 174, 177 (5th Cir. 1983) (quoting *Goguen*, 415 U.S. at 573).

Here, while the Act clearly states that an officer can enforce a 25-foot buffer zone, it lacks any standard by which an officer may issue an order to stand back or retreat. La. R.S. § 14:109. This affects both prongs of the void for vagueness analysis, as it does not give the public notice of when an order may be issued and does nothing to prevent arbitrary or discriminatory enforcement.

In *Reporters Committee*, the Southern District of Indiana reviewed a law nearly identical to the Act. 2024 WL 4333137, at *8. The court there found that the plaintiffs were likely to prevail on their void for vagueness claim partially because the law did not provide a "'warning about the behavior' that will prompt that order." *Id.* (quoting *Bell*, 697 F.3d at 462). Similarly, in *Morales*, the Supreme Court addressed an ordinance that allowed Chicago police officers to issue a dispersal order to suspected gang members who were "loitering" in a public place; if the dispersal order was disobeyed, the person violated the ordinance. *Morales*, 527 U.S. at 47. The Court said,

49

> [a]lthough it is true that a loiterer is not subject to criminal sanctions unless he or she disobeys a dispersal order, the loitering is the conduct that the ordinance is designed to prohibit. If the loitering is in fact harmless and innocent, the dispersal order itself is an unjustified impairment of liberty. If the police are able to decide arbitrarily which members of the public they will order to disperse, then the Chicago ordinance becomes indistinguishable from the law we held invalid in [*Shuttlesworth*, 382 U.S. 87]. Because an officer may issue an order only after prohibited conduct has already occurred, it cannot provide the kind of advance notice that will protect the putative loiterer from being ordered to disperse. Such an order cannot retroactively give adequate warning of the boundary between the permissible and the impermissible applications of the law.

*Id.* at 58–59 (internal citations omitted).

The same is true in this case: when viewing the Act in the light most favorable to Plaintiffs, there is no language that indicates to the public when an order to retreat may be given, meaning that any person, at any time, partaking in any activity (or engaging in no activity) near law enforcement may be given an order to retreat, which places them in danger of arrest or prosecution. The Act is less clear than the ordinance in *Morales*, as the Act does limit those who may be given an order to retreat to persons loitering. *Id.* The public is not put on notice or given any warning about what activity, if any, they must be engaged in when they may be subject to such an order.

Turning to the second prong, the Supreme Court has recognized "that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Goguen*, 415 U.S. at 574). The Court in *Morales* found that the law "[did] not provide sufficiently specific limits on the enforcement discretion of the police 'to meet constitutional standards for definiteness and clarity.'" *Morales*, 527 U.S. at 64 (quoting *City of Chicago v. Morales*, 687 N.E.2d 53, 64 (Ill. 1997)). The law's lack of standards allowed officers a "vast amount of discretion" in determining who was loitering and who was a suspected gang member. *Id.* at 61–63.

50

At oral argument, Defendants drew a comparison between this case and *Kolender*, a Supreme Court case assessing the validity of a California stop and identify statute. Defendants argued that while the Supreme Court in *Kolender* found that the statute was unconstitutionally vague because an officer had to subjectively determine whether the person's identification was "credible and reliable," the discretion given in deciding whether to stop the person did not render the statute vague. *Kolender*, 461 U.S. 352. However, the statute in *Kolender* is distinguishable from the Act. In *Kolender*, the statute, like the ordinance in *Morales*, allowed police to stop those who were loitering. *Id.* at 353, n.1. Importantly, California courts had further limited an officer's discretion to stop a person by requiring the officer to have "reasonable suspicion of criminal activity sufficient to justify a *Terry* detention." *Id.* at 355–56 (citing *People v. Solomon*, 33 Cal.App.3d 429 (1973)) (referring to *Terry v. Ohio*, 392 U.S. 1 (1968)). There is no such language limiting the Act and no jurisprudence from state courts guiding officers as to when it is proper to issue an order to retreat.

"The absence of a determinate standard gives police officers, prosecutors, and the triers of fact unfettered discretion to apply the law, and thus there is a danger of arbitrary and discriminatory enforcement." *Kramer*, 712 F.2d at 176. "Arbitrary and discriminatory law enforcement cannot be prevented unless statutes provide definite standards for those who apply them. . . . Laws which vest public officials with unlimited discretion are void for vagueness." *Beckerman v. City of Tupelo, Miss.*, 664 F.2d 502, 511 (5th Cir. Unit A Dec. 1981).

Here, the Act not only lacks definite or determinate standards, it lacks *any* standards by which an officer, prosecutor, or trier of fact may evaluate a situation and determine if an order to retreat is appropriate. At oral argument, Defendants argued that both the requirement that a citizen know they are within 25 feet and the 25-foot limit itself are sufficient to limit enforcement. These

elements of the Act do nothing, however, to eliminate the discretion to *issue* the order to retreat. While officers are granted some discretion to make stops and arrests pursuant to criminal statutes, the statutes themselves provide a definition of the conduct that is criminal and therefore a standard regarding what behavior justifies an arrest. As the Court stated in *Reporters Committee*:

> A law "is susceptible to discriminatory or arbitrary enforcement" "if it impermissibly delegates to law enforcement the authority to arrest and prosecute on 'an ad hoc and subjective basis.'" *Bell*, 697 F.3d at 462 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 [] (1972)). Of course, law enforcement officers retain the authority to "exercise some degree of judgment" in the performance of their duties, but the discretion to carry out "arbitrary and erratic arrests" does not comport with due process. *Id*. (quoting *Wright v. New Jersey*, 469 U.S. 1146, 1151 [] (1985)).

*Reporters Comm.*, 2024 WL 4333137, at *8

It is not a crime to stand within 25 feet of a police officer, and yet the Act gives an officer unfettered and standardless discretion to make it a crime merely by ordering retreat even when there is no conduct that justifies such an order. The requirement that the officer must be engaged in his official duties to issue an order similarly does not save the Act from vagueness since the same limitless discretion is vested in the officer regardless of what particular activity he is engaged in at the time he gives the order, be it sitting at a desk, walking the beat, or engaged in hot pursuit. Nor does the Court credit the argument that the 25-foot limit and failure to heed the retreat order saves the Act since these "do[] nothing to define the predicate behavior that would prompt an order to move back." *Reporters Comm.*, 2024 WL 4333137 at *9.

An officer may give an order for a legitimate reason, *i.e.* to protect bystanders from hazards, but the officer may just as easily give an order for no reason at all. As the court in *Reporters Committee* said, "an officer can order reporters and others to move back simply because the officer does not want to be recorded, an unacceptable curtailment of First Amendment rights." *Id.* This

52

complete lack of guidance allows for arbitrary and discriminatory enforcement, which is the more important of the two vagueness prongs. *See Kolender*, 461 U.S. at 358.

Further, an officer in a situation like patrolling the New Orleans French Quarter during Mardi Gras would have to determine who "knowingly or intentionally" encroached on a buffer zone, which would be nearly impossible to do without further guidance. A bystander may not have heard the order issued, or may not have been aware of whether he was within 25 feet, or whether he was the one to whom the order was given. Because the Act includes a scienter requirement, this defense may prevent persons from being convicted under the Act, but will not prevent them from being arrested, possibly preventing the exercise of First Amendment rights, or simply subjecting them to the experience of being arrested and charged. With no standards, every person would be subject to the arbitrary and discriminatory enforcement of the Act.

The Court finds that, when construing the *Complaint* in the light most favorable to Plaintiffs, they have sufficiently pled a void for vagueness challenge of the Act. The *MTD* will be denied as to the vagueness claim.

### III.    LEAVE TO AMEND

Plaintiffs have not asked for leave to amend should the Court dismiss their claims, but considering that this is the first time the Court has ruled on a motion to dismiss the operative complaint, the Court will give them leave to amend under the circumstances.

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) (citations omitted). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a

case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Plaintiffs have not amended their *Complaint*. Thus, "the Court will act in accordance with the 'wise judicial practice' and general rule" and allow Plaintiffs to amend their First Amendment Facial Challenge. *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 641–42 (M.D. La. 2018) (deGravelles, J.); *see also Fetty v. Louisiana State Bd. of Private Sec. Examiners,* 611 F. Supp 3d 230, 239 (M.D. La. 2020) (deGravelles, J.) ("because Plaintiffs did not amend their complaint in response to a ruling by this Court, and because of the above 'wise judicial practice,' the Court will grant Plaintiffs one final opportunity to amend their complaint to state viable claims against the Board Members.") (citing *JMCB*, 336 F. Supp. 3d at 641–42); *Murphy v. Bos. Sci.*

*Corp.*, No. 18-31, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (reaching same result) (citing, *inter alia*, *JMCB*, 336 F. Supp. 3d at 641–42).

Failure to cure the deficiencies will likely result in the dismissal of Plaintiffs' facial constitutional claim from this Court. Specifically, if Plaintiffs fail to cure the deficiencies in the facial challenge outlined above, that claim will be dismissed with prejudice. The Court cautions Plaintiffs that, if they amend the *Complaint* to assert a facial constitutional challenge and the Court later determines that they did so frivolously, the Court will consider an award of sanctions against Plaintiff under Federal Rule of Civil Procedure 11 as well as an award of reasonable attorney's fees and costs to Defendant under La. R.S. § 51:1409(A).

IV.    **MOTION FOR PRELIMINARY INJUNCTION**

    **A. Discussion**

        **i. Parties' Arguments**

Plaintiffs move for a preliminary injunction "prohibiting Defendants from enforcing the Act." (Doc. 19-1 at 32.) They request that the requirement of posting a bond be waived because "Defendants are not likely 'to incur any significant monetary damages as a result of the preliminary injunction.'" (*Id.* at 32, n.7 (quoting *Thomas v. Varnado*, 511 F. Supp. 3d 761, 766 (E.D. La. 2020)).)

Plaintiffs argue that they satisfy the requirements for a preliminary injunction. (*Id.* at 17.) They say that they are likely to succeed on the merits, for the reasons given above. (*Id.* at 17–31.) Irreparable harm is likely because the Act has a chilling effect on First Amendment rights, which "unquestionably constitutes irreparable injury." (*Id.* at 31–32 (quoting *Book People*, 91 F.4th at 341) (internal quotation marks omitted).) Plaintiffs argue that because they are likely to succeed on the merits, the State and public will not be injured by an injunction on a statute that is likely

violative of the First Amendment. (*Id.* at 32 (quoting *Book People*, 91 F.4th at 341) (internal quotation marks omitted).)

Defendants oppose the motion. (Doc. 30-1 at 33.) They first argue that the Court should grant their 12(b)(1) motion and deny the *MPI* as moot. (*Id.* at 33–34.) If the Court reaches the merits, Defendants assert that Plaintiffs are not likely to succeed on the merits, for the reasons stated above. (*Id.* at 34.) Further, Defendants argue that Plaintiffs have not adequately argued that they would suffer irreparable harm without an injunction, which is underscored by the lack of enforcement of the Act since it went into effect. (*Id.*) The State and the public do face harm if the injunction is issued because the Act protects the public and law enforcement. (*Id.* at 34–35.)

Plaintiffs reply that the likelihood of success is the most important factor in determining whether a preliminary injunction should issue, and Plaintiffs have shown that they are likely to be successful on the merits. (Doc. 35 at 30.)

### ii.  Applicable Law

A plaintiff must demonstrate four requirements to obtain a preliminary injunction:

> 1) a substantial likelihood of success on the merits; 2) a substantial threat that he will suffer irreparable injury if the injunction is not issued; 3) that the threatened injury to him outweighs any damage the injunction might cause to the state and its citizens; and 4) that the injunction will not disserve the public interest.

*Ingebretsen on Behalf of Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996) (citing *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 163 (5th Cir. 1993) (citations omitted)).

### iii.  Analysis

In sum, the Court will grant Plaintiffs' *MPI* based on their void for vagueness challenge. Plaintiffs are likely to succeed in showing that the Act is unconstitutionally vague, thus the Court need not reach the issue of whether Plaintiffs are likely to succeed in proving First Amendment violations. *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 184 (1999)

("It is, however, an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground."). Plaintiffs have shown that they face irreparable harm if the Act is not enjoined and the balance of interests weigh in favor of issuing an injunction.

There is a substantial likelihood that Plaintiffs will be successful on the merits as to the void for vagueness claim. As detailed above, the Act does not provide fair notice to the public as to what will prompt an order to retreat and thus the public is not on notice of what behavior to avoid. *See Morales*, 527 U.S. at 58–59. Further, the Act contains no standards by which officers are to determine whether to issue an order to retreat, therefore providing no limits to arbitrary or discriminatory enforcement. *See Goguen*, 415 U.S. at 572–73. Not only have Plaintiffs met the pleading standard, this claim is likely to succeed. The threat of arbitrary and discriminatory enforcement is great because the Act contains no limiting or guiding principles to assist law enforcement in issuing the order. The Southern District of Illinois held the same in *Reporters Committee*. 2024 WL 4333137, at *8–10. The Act falls short on both prongs of the vagueness doctrine; thus, Plaintiffs are likely to prevail in proving that the Act is unconstitutionally vague.

"'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.' Indeed, the Supreme Court has said that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Book People*, 91 F.4th at 340–41 (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995))).

Plaintiffs' First Amendment right to gather the news is likely to be impaired if the Act is not enjoined. In declarations submitted in support of the *MPI*, several of Plaintiffs' employees

detail how they have been in close contact with law enforcement, where an order to retreat would have prevented the reporter from adequately reporting the news. (*See* Sprang Decl. ¶¶ 5–15, Doc. 19-2; Chretien Decl. ¶¶ 4–7, Doc. 19-3; Fernelius Decl. ¶¶ 4–15, Doc. 19-4; Thomas Decl. ¶¶ 4–17, Doc. 19-5; Erbach Decl. ¶¶ 4–19, Doc. 19-6; Waivers Decl. ¶¶ 8–22, Doc. 19-7.) Because the law lacks any standards for enforcement, officers that issue orders under the Act may impede Plaintiffs' First Amendment rights. Therefore, they have shown that there would be irreparable harm absent a preliminary injunction.

Finally, "Plaintiffs' risk of irreparable harm must be weighed against any injury the State would sustain." *Book People*, 91 F.4th at 341 On the one hand, "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Id.* (citations omitted). But "neither [the State] nor the public has any interest in enforcing a regulation that violates federal law." *Id.* (citation omitted). "Indeed, '[i]njunctions protecting First Amendment freedoms are always in the public interest.'" *Id.* (quoting *Opulent Life Church*, 697 F.3d at 298 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006))). *See also Ingebretsen*, 88 F.3d at 280 (holding that where a law violates the First Amendment, "the public interest was not disserved by an injunction preventing its implementation"). Thus, "[b]ecause Plaintiffs are likely to succeed on the merits of their First Amendment claim, the State and the public won't be injured by an injunction of a statute that likely violates the First Amendment." *Book People*, 91 F.4th at 341.

Therefore, all requirements for injunctive relief weigh in Plaintiffs' favor, and the Court will grant the *MPI* on vagueness grounds. Plaintiffs' leave to amend will not affect their void for vagueness claim and thus any amendment will not affect this Court's decision to issue the preliminary injunction.

Since the Court will issue the preliminary injunction, it must determine whether Plaintiffs must post bond. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

"[T]he amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court . . . .'" *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).

> Accordingly, the judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period the party is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained.

Wright, Miller, and Kane, *supra*, at § 2954.

"Indeed, it has been held that the court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant." *Id.* Likewise, the Fifth Circuit has ruled that "the court 'may elect to require no security at all.'" *Kaepa*, 76 F.3d at 628 (quoting *Corrigan Dispatch*, 569 F.2d at 303). And other courts have found that no security, or only nominal security, would be required for violations of First Amendment rights. *See Abdullah v. Cnty. of St. Louis*, 52 F. Supp. 3d 936, 948 (E.D. Mo. 2014) ("Given the constitutional issues at stake here[,] [including under the First Amendment,] and taking into account plaintiff's status as employee of a not-for-profit entity, I will set the bond in the amount of $100."); *United Food & Com. Workers Loc. 99 v. Brewer*, 817 F. Supp. 2d 1118, 1128 (D. Ariz. 2011) ("There is no realistic likelihood that Defendants will be harmed by being enjoined from enforcing a law that constitutes viewpoint discrimination in violation of the First Amendment on its face. No bond will be required.").

The Court finds that there is a lack of any real harm to Defendants by being unable to enforce an unconstitutional law and there are significant First Amendment issues successfully raised by Plaintiffs. The Court will require a nominal bond of $100.

## V.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction* (Doc. 30) brought by Defendants Attorney General Elizabeth Murrill, Colonel Robert Hodges, and District Attorney Hillar Moore, III, is **GRANTED IN PART** and **DENIED IN PART**. The *Motion to Dismiss* is **GRANTED** as to Plaintiffs' facial overbreadth and unbridled discretion challenges. The *Motion to Dismiss* is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiffs shall have twenty-eight (28) days from the Court's ruling on the *Motion to Dismiss* (Doc. 30) in which to cure the above deficiencies regarding the facial overbreadth and unbridled discretion challenges. If Plaintiffs fail to do so, Plaintiffs' facial challenge will be dismissed with prejudice.

**[*continued on next page*]**

**IT IS FURTHER ORDERED** that Plaintiffs' *Motion for Preliminary Injunction* (Doc. 19) is **GRANTED**. The Court finds that House Bill 173, Act 259, Louisiana Revised Statutes § 14:109, is **UNCONSTITUTIONALLY VOID FOR VAGUENESS IN VIOLATION OF THE FOURTEENTH AMENDMENT**. As a result, Defendants and their agents shall be prohibited from enforcing Louisiana Revised Statutes § 14:109.

**IT IS FURTHER ORDERED** that Plaintiffs shall post a bond in the amount of $100 within five (5) days of this ruling.

Signed in Baton Rouge, Louisiana, on <u>January 31, 2025</u>.

 

 

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**